**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Darren Turner on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BFI Waste Services, LLC d/b/a Republic Services; Republic Services of South Carolina, LLC d/b/a Republic Services; and Republic Services, Inc.,<br><br>　　　　　Defendants. | Civil Action No. 2:16-cv-02864-DCN |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REGULAR RATE CLAIM**

Defendants BFI Waste Services, LLC, (incorrectly named as "d/b/a Republic Services"),

Republic Services of South Carolina, LLC (incorrectly named as "d/b/a Republic Services"), and

Republic Services, Inc. (collectively "Defendants" or "Republic") submit this memorandum of

law in support of their partial motion for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure and Local Rule 7.01 as to the regular rate claim asserted by Plaintiff

Darren Turner ("Plaintiff" or "Turner").[1]

---

[1]　Republic moves for summary judgment on the regular rate claim only as to Darren Turner, the named/lead plaintiff in this case. In addition to his regular rate claim, Turner also brings a claim under the FLSA alleging that Republic improperly deducted 30 minutes for meal breaks that he and other waste disposal drivers did not take, and a claim under the South Carolina Payment of Wages Act, alleging that Republic made deductions or withheld wages related to safety awards without providing required advance notice of such deductions. (Compl. ¶¶ 78-90). Republic seeks summary judgment at this time only as to Turner's FLSA regular rate claim, not the FLSA off-the-clock claim or South Carolina Payment of Wages Act claim.

**Introduction**

Turner, a current residential waste disposal driver for Republic, brings this lawsuit under the Fair Labor Standards Act ("FLSA"), alleging that Republic failed to pay him overtime at a rate not less than one and one-half times his regular rate of pay (the "regular rate claim"). Turner does not dispute that he received overtime pay for hours worked in excess of 40 in a workweek. (Compl. ¶¶ 33, 47). Rather, Turner asserts—wrongly—that the formula Republic used to calculate his overtime payments did not result in him being paid overtime at a rate not less than one and one-half times his regular rate of pay in accordance with the FLSA and Department of Labor ("DOL") requirements. (Compl. ¶¶ 31-33, 45-50).

Generally speaking, the FLSA requires covered employers to pay non-exempt employees overtime compensation at a rate of one and one-half times their "regular rate" for all hours worked in excess of 40 per workweek. 29 U.S.C. § 207(a)(1). Seventy years ago, the United States Supreme Court established that an employee's "regular rate" for any workweek is determined by dividing his or her total weekly wages (except statutory exclusions) by the total number of hours worked. Because the total weekly wages provides compensation (at the employee's regular rate) for all hours worked (including hours over 40), the employer satisfies its obligation under the FLSA by paying an additional overtime premium equal to *one-half* of the calculated regular rate for all hours worked in excess of 40 in a workweek.

As a Residential Driver for Republic, Turner is paid primarily based on a fixed job/day rate for each shift or day of work. In addition, Turner occasionally was/is paid an hourly rate for time spent assisting on another driver's route after finishing his own work, attending safety and/or operations meetings, training new drivers, or for time during his route when his truck is inoperable or otherwise experiences a mechanical malfunction, and he is not able to continue on

his route. (Compl. ¶¶ 31, 35, 38, 40). Turner's total non-overtime pay for the week (regardless of whether through job/day rate only or a combination of job/day rate and hourly rate) compensated him for all hours that he worked in the week, not just the first 40 hours of work.

For overtime purposes, Republic computed Turner's regular rate by dividing his total compensation for the week by his total hours worked in the week. Republic then paid Turner an additional overtime premium equal to *one-half* that regular rate for each hour worked in excess of 40 hours that week. Stated another way, Republic paid Turner his regular hourly rate (computed by dividing total compensation by total hours worked in the week) for hours 1 through 40 in a week, and for each hour worked in excess of 40 in a week, that same regular rate plus an additional one-half times that regular rate.

Republic's "total wages divided by total hours compensated" approach to calculating regular rate and payment of overtime equal to *one-half* that regular rate is precisely the calculation required under the FLSA and is identical to the approach approved by the Supreme Court and the DOL interpretative regulations. Indeed, Republic's method of calculating Turner's overtime complies with the FLSA because it resulted in Turner receiving overtime at *one* (straight-time compensation at a regular rate based on a combination of job/day rate and hourly rate for all hours worked) and *one-half* (the half-time overtime premium) times his regular rate.[2]

---

[2]     Although not directly apparent from his Complaint, Turner appears to claim that Republic should have calculated his regular rate by dividing his total compensation for the workweek by 40 hours (instead of total hours worked), then calculated overtime compensation by multiplying that regular rate by 1.5 for every hour worked over 40 in a week, and then paid the overtime amount so calculated in addition to the compensation that he already received for all of the hours worked in the week (including overtime hours). Yet, there is no legal basis for dividing Turner's total compensation by 40 to arrive at the regular rate. That is simply contrary to settled case law and the FLSA regulations. Moreover, because Turner's total compensation for the week (whether by job/day rate only or a combination of job/day rate and hourly rate) compensated him for *all* hours he worked in the week, including hours worked over 40 (and thus constitute 1.0 toward the 1.5 overtime pay obligation), Turner's regular rate claim, which seeks

Nonetheless, Turner contends that Republic violated the FLSA because it allegedly failed to comply with 29 C.F.R. § 778.112, which sets out one of the examples provided in the DOL's interpretive bulletin for how to calculate the regular rate.  Specifically, Turner claims that because he was paid at least in part based on a job/day rate, Republic must have "attempt[ed] to categorize and compensate [Turner] under the pay provision permitted by 29 C.F.R. § 778.112"—the day rate provision—and that the inclusion of "other forms of compensation" in addition to the day rate is "not in compliance with the day and job rate provisions of 29 C.F.R. § 778.112 and ultimately result[s] in a miscalculation of [Turner's] regular rate and resulting overtime compensation."  (Compl. ¶ 31).

Turner's regular rate claim is entirely without merit.  The day rate provision—29 C.F.R. § 778.112—merely provides one *example* of how the regular rate should be calculated under the specific circumstances provided in that example (*i.e.*, when an employee is paid a day rate and no other form of compensation).  It does not foreclose other compensation arrangements (like combining job/day rates and hourly rates or piece rates, or even quarterly or annual bonuses), and it does not exclude other compensation arrangements from the standard "wages divided by hours worked" approach to determining the regular rate (which Republic followed in this case).  Indeed, Turner's claim that Republic's calculation of his regular rate and overtime payments violates the FLSA is not supported by the FLSA statute, its interpretive regulations, relevant case law, or common sense.  Accordingly, and because Turner was paid overtime compensation in

---

another 1.5 times his regular rate for every hour worked over 40, is actually asking the Court to award him **2.5 times** his regular rate for all overtime hours.  *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011) (rejecting argument "that the FLSA requires that [employees] receive the regular rate for all hours worked *and* the regular rate and one-half for overtime hours" as "without merit" because "[u]nder that scenario, the [e]mployees would receive two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires").

accordance with the FLSA as a matter of law, Republic's motion for partial summary judgment should be granted.

## Statement of Undisputed Material Facts[3]

Republic provides waste collection and disposal services to customers in or around Charlotte, North Carolina and Charleston, South Carolina. (Compl. ¶ 7; Declaration of Rob Carter ("R. Carter Decl."), attached to this Motion as Exhibit 1, ¶ 3; Declaration of James Torrey ("J. Torrey Decl."), attached to this Motion as Exhibit 2, ¶ 3). Turner worked for Republic in Charleston, South Carolina from August 2013 to May 2014. (Compl. ¶ 4; R. Carter Decl. ¶ 4). From May 2014 to the present, Turner has worked for Republic in Charlotte, North Carolina. (Compl. ¶ 4; J. Torrey Decl. 4).

At all times during his employment with Republic, Turner has worked as a Residential Driver, picking up waste from homes and transporting it to a transfer station or landfill. (Compl. ¶¶ 22-23; R. Carter Decl. ¶ 4; J. Torrey Decl. ¶ 4). As a Residential Driver, Turner has been paid primarily on a job/day rate basis, in which his fixed job/day rate has ranged from $135.00 to $175.93 for each shift or day of work. (R. Carter Decl. ¶ 6; J. Torrey Decl. ¶ 6).

In addition to his job/day rate, on occasion, Turner has been eligible to receive "help pay" at an hourly rate if he assists on another driver's route after finishing his own work. (R. Carter Decl. ¶ 7; J. Torrey Decl. ¶ 7). At times during his employment Turner has also been eligible to receive hourly pay for "downtime" — time during his route when his truck is inoperable or otherwise experiences a mechanical malfunction, and he is not able to continue on his route, or when he attends a safety or operations meeting. (R. Carter Decl. ¶¶ 8-9; J. Torrey Decl. ¶ 7). On

---

[3]     These facts are being treated as true and undisputed for purposes of summary judgment only, are not admissions by Republic, and may not be used for any purpose other than Republic's Partial Motion for Summary Judgment on Plaintiffs' Regular Rate Claim.

occasion, Turner has also been eligible to receive additional pay for time spent training a new driver, which primarily involves Turner "shadowing" new drivers inside the vehicle, and providing coaching and instruction while the new employee drives the truck through the assigned route.  (R. Carter Decl. ¶ 9; J. Torrey Decl. ¶ 8).

Turner's total non-overtime pay for the week (regardless of whether through job/day rate only or a combination of job/day rate and hourly rate) compensates Turner for all hours that he worked that week, not just the first 8 hours in a day or the first 40 hours of work in a week.  (R. Carter Decl. ¶ 10; J. Torrey Decl. ¶ 9).

If Turner works more than 40 hours in a workweek, Republic pays him overtime compensation at 1.5 times his regular rate for each overtime hour.  (R. Carter Decl. ¶ 11; J. Torrey Decl. ¶ 11).  The way Republic calculated Turner's regular rate and overtime pay as a Residential Driver in Charleston, South Carolina is outlined in his weekly pay sheet, as the following example (Figure 1) for the week ending April 26, 2014 shows:

PAYROLL PRODUCTION WORK SHEET

WEEK ENDING            04/26/14
NAME:  DARREN TURNER - DRIVER

| DAY | DATE | HOURS | | PAY PER DAY | EXTRA PAY | DAILY TOTAL | |
|---|---|---|---|---|---|---|---|
| M | 4/21 | 11.53 | | 152.13 | | 152.13 | 1 |
| T | 4/22 | 13.52 | | 152.13 | | 152.13 | 1 |
| W | 4/23 | 10.45 | | 152.13 | | 152.13 | 1 |
| TH | 4/24 | 7.97 | | 152.13 | | 152.13 | 1 |
| F | 4/25 | 9.43 | | 152.13 | | 152.13 | 1 |
| SA | 4/26 | 0.00 | | 0.00 | | 0.00 | 0 |
| SUBTOTALS | | 52.90 | | 152.13 | 0.00 | 760.65 | 5 |

Total Pay
853.39

| $760.65 | Total Earnings divided by | 52.90 | Clock Hours = | | $14.38 Hourly Rate |
|---|---|---|---|---|---|
| | | | | | $21.57 OT Rate |
| | 40.00 Regular Hours | x | 14.38 = | 575.16 | |
| | 12.90 OT hours | x | 21.57 = | 278.23 | |
| | Total Pay | | = | 853.39 | |

(R. Carter Decl. ¶ 5; Carter Decl. Ex. A).  During the week ending April 26, 2014, the pay sheet example at Figure 1 shows that Turner received a job/day rate of $152.13 for his work each day Monday through Friday, for a total of $760.65 ($152.13 job/day rate multiplied by 5 days worked) in straight-time compensation (*i.e.*, non-overtime compensation) for all hours worked during the week, including hours over 40.  (R. Carter Decl. ¶¶ 10, 12).  For the week ending April 26, 2014, Turner worked a total of 52.90 hours.  (Carter Decl. ¶ 13).

Republic paid Turner overtime as reflected in the example pay sheet at Figure 1 above. Republic calculated Turner's regular rate of pay for the week ending April 26, 2014, by adding up his total compensation for the week ($760.65) and dividing that total by his total hours worked (52.90) for a regular rate of $14.38 for the week.  (R. Carter Decl. ¶¶ 11, 14).  Republic paid Turner at his regular rate ($14.38) for the first 40 hours worked (for a total of $575.16) and

then multiplied Turner's regular rate by 1.5 and paid him at that overtime rate ($21.57) for all hours worked in excess of 40 in the week (12.90 hours) for a total of $278.23 in overtime pay. Republic added these numbers together to arrive at Turner's total compensation for the week ($853.39).[4]  (R. Carter Decl. ¶¶ 15-17).  This example illustrates how Republic calculated Turner's pay each week of his employment with Republic as a Residential Driver in North Charleston, South Carolina during the relevant time period.  (R. Carter Decl. ¶ 5).

The following weekly pay sheet (Figure 2) is an example of how Republic calculates Turner's regular rate and overtime as a Residential Driver in Charlotte, North Carolina:

| Week Ending | 1/9/2016 | | | Dayrate | DT/HT | | |
|---|---|---|---|---|---|---|---|
| Incentive Sheet | | | | $155.93 | $ 12.77 | | |
| 4784 Residential Trash | | | | | | | |
| 719055180 | | | | | | | |
| **Turner, Darren** | Day | HT | DT | Vac | Per | Hol | Brev |
| Sunday | | | | | | | |
| Monday | 1 | 4 | | | | | |
| Tuesday | 1 | 4 | | | | | |
| Wednesday | 1 | | 6.00 | | | | |
| Thursday | 1 | | 3.00 | | | | |
| Friday | 1 | 3 | | | | | |
| Saturday | | | | | | | |
| | | | | | | | Hrs Worked |
| Total | 5 | 11.00 | 9.00 | 0 | 0 | 0 | 0 | 42.15 |

| Day Pay: | $779.67 | | Regular Rate | $24.56 |
|---|---|---|---|---|
| HT & DT Pay: | $255.40 | | FLSA OT | $12.2784 |
| Extra Pay: | | | | |
| Training Pay: | | | | |
| **INTV Wage** | **$1,035.07** | | | |

(J. Torrey Decl. ¶ 5; J. Torrey Decl. Ex. A).  For the week ending January 9, 2016, this pay sheet example at Figure 2 shows that Turner received a job/day rate of $155.93 for his work each day Monday through Friday and hourly pay for 11 hours of help time ("HT") and 9 hours of downtime ("DT").  (J. Torrey Decl. ¶ 10)

---

[4]     Minor discrepancies in calculations are due to rounding.  (R. Carter Decl. ¶ 15 n.1; J. Torrey Decl. ¶ 15 n.1).

More specifically, for the week ending January 9, 2016, Turner earned $779.67 in "Day Pay" ($155.93 job/day rate multiplied by 5 days worked) and $255.40 in "HT & DT pay" ($12.77 hourly rate multiplied by 20 total help time and downtime hours) for a total of $1,035.07 in straight time compensation (*i.e.*, non-overtime compensation) for all hours worked during the week (identified on the pay sheet example as "INTV Wage"). (J. Torrey Decl. ¶ 12). For the entire week ending January 9, 2016, Turner worked 42.15 hours. (J. Torrey Decl. ¶ 13). In this example pay sheet at Figure 2, Turner's total incentive pay ("INTV Wage") — $1,035.07 payment composed of $779.67 in job/day rate pay for his work Monday through Friday combined with the $255.40 hourly pay for help time and downtime — covered his straight-time compensation for all 42.15 hours he worked that week (*i.e.*, the "1.0" component for hours 1-42.15). (J. Torrey Decl. ¶ 13).

Republic paid Turner overtime for the week ending January 9, 2016. In the example pay sheet at Figure 2 above, Republic calculated Turner's regular rate of pay for the week ending January 9, 2016, by adding up his total compensation for the week — including his job/day rates ($779.67) and hourly pay ($255.40) — and dividing that total compensation ($1,035.07) by his total hours worked (42.15), resulting in a regular rate of $24.56 for the week. (J. Torrey Decl. ¶ 14). Republic then paid Turner an overtime premium for all hours worked over 40 at 0.5 times his regular rate of pay ($12.2784 overtime rate, identified on the pay sheet example as "FLSA OT"). (J. Torrey Decl. ¶ 15). Turner's pay records show that Republic paid him 2.15 hours of overtime at $12.2784 per hour, for a total of $26.40 in overtime pay for the week ending January 9, 2016 (*i.e.*, the ".5" component for all hours worked over 40). (J. Torrey Decl. ¶ 15). Republic added this overtime premium to Turner's straight-time compensation to arrive at his total compensation for the week. (J. Torrey Decl. ¶ 16). This example illustrates how Republic

calculates Turner's pay each week of his employment with Republic as a Residential Driver at Charlotte, North Carolina during the relevant time period. (J. Torrey Decl. ¶ 5).

As the above examples in Figure 1 and Figure 2 demonstrate, Republic calculated Turner's overtime and depicted those calculations on his weekly pay sheets in two ways, both of which result in Republic paying Turner one and one-half times his regular rate of pay for hours worked in excess of 40 in a workweek. More specifically, in Figure 1 — an example of Turner's pay sheets from his time as a Residential Driver in Charleston, South Carolina — Republic computed Turner's regular rate by dividing his total compensation for the week (regardless of whether through a job/day rate only or a combination of job/day rate and hourly rate) by his total hours worked in the week. Republic paid Turner at his regular rate for the first 40 hours worked. Republic then multiplied Turner's regular rate by 1.5 and paid him at that overtime rate for all hours worked over 40 in the week. (R. Carter Decl. ¶ 11). In Figure 2 — an example of Turner's pay sheets from his time as a Residential Driver in Charlotte, North Carolina — Republic computed Turner's regular rate by dividing his total compensation for the week (regardless of whether through a job/day rate only or a combination of job/day rate and hourly rate) by his total hours worked in the week (the same as in Figure 1). Republic paid Turner at his regular rate for all hours worked (not just the first 40 hours). Republic then paid Turner an additional overtime premium equal to 0.5 that regular rate for each hour worked in excess of 40 hours that week. This overtime premium was then paid to Turner in addition to all other compensation paid for the week. (J. Torrey Decl. ¶ 11). In other words, in Figure 2, Republic first paid Turner his straight time (1.0) component for all hours over 40, and then paid him an additional half-time (0.5) component for all overtime hours, resulting in total payment of overtime at one and one-half times his regular rate of pay. (J. Torrey Decl. ¶¶ 10-16).

That these two different methods of calculating overtime result in the same overall weekly compensation (and compliant calculation of overtime) is demonstrated by analyzing Turner's pay sheet in Figure 1 above.  The overtime pay calculations set out in Figure 1 correspond to the "1.5" calculation method — *i.e.*, total compensation of $760.65 divided by 52.90 hours worked equals a regular hourly rate of $14.38, which, when multiplied by 40 hours, equals $575.16, plus overtime compensation of $14.38 multiplied by 1.5, which equals $21.57, multiplied by 12.90 overtime hours.  Using the "0.5" calculation method for the same week — total compensation of $760.65 divided by 52.90 hours worked equals a regular rate of $14.38 multiplied by 0.5, which equals $7.19, which is then multiplied by 12.90 overtime hours for additional 0.5 overtime pay of $92.74.  Both calculations result in the same gross compensation for the week ($853.39), including overtime pay:



**Argument**

**I.      Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, documents, declarations, and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once a movant meets its burden, the non-moving party must do more than raise "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or offer "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence," *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); instead, Turner must identify "specific facts showing that there is a genuine issue for trial" such that a factfinder could reasonably decide in his favor, *Dash*, 731 F.3d at 311.

Here, Republic seeks summary judgment on a pure question of law:  whether Republic's method of compensating Turner based on a combination of job/day rates and hourly rates, and its calculation of the regular rate for overtime purposes, complies with the FLSA.  As outlined below, Republic is entitled to judgment as a matter of law that its calculation of Turner's regular rate and overtime payments are lawful and do not violate the FLSA.

**II.     Turner Was Paid Overtime At One And One-Half Times His Regular Rate In Compliance With The FLSA**

Turner claims that Republic's "calculation of [Turner's] regular rate of pay . . . and resulting overtime compensation . . . did not comply with the FLSA."  (Compl. ¶¶ 29-50).  But Republic's method of compensating Turner (both calculating his regular rate and overtime compensation) fully complies with the FLSA and resulted in Turner receiving overtime at 1.5

times his regular rate.  Accordingly, Turner's regular rate claim fails as a matter of law and Republic's motion for partial summary judgment should be granted.

### A.    Calculation Of The Regular Rate Under The FLSA

The FLSA provides that, subject to certain exemptions not relevant here, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  In general, the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e).

Seventy years ago, the Supreme Court recognized that as long as employers comply with the minimum wage provision of the FLSA, they are "free to establish [the] regular rate at any point and in any manner they see fit.  They may agree to pay compensation according to any time or work measurement they desire."  *Walling v. Youngerman Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).  "It was not the purpose of Congress in enacting the [FLSA] to impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement."  *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203-04 (1947); *Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 7 (1st Cir. 2016) (recognizing the FLSA's "inherently flexible nature").  Thus, as long as they pay overtime at not less than one and one-half times the regular rate, employers like Republic have the flexibility to choose from a virtually infinite array of compensation arrangements designed to incentivize and reward employees, consistent with the needs and realities of their businesses and the modern workplace.

Although employers are free to establish compensation arrangements in any manner they choose, that choice will impact the "regular rate" used in overtime calculations:

> Contracts for pay take many forms. The rate of pay may be by the hour, by piecework, by the week, month or year, and with or without a guarantee that earnings for a period of time shall be at least a stated sum. The regular rate may vary from week to week. . . . The employee's hours may be regular or irregular. From all such wages the regularly hourly rate must be extracted.

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460-61 (1948). The regular rate is derived from whatever compensation arrangement the parties establish:

> The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is . . . an actual fact. Once the parties have decided upon the amount of wages . . . the determination of the regular rate becomes a matter of mathematical computation.

*Walling*, 325 U.S. at 424-25; *see Bay Ridge*, 334 U.S. at 461 (the regular rate is determined by looking to the employment arrangement because "every contract of employment, written or oral, explicitly or implicitly includes a regular rate of pay for the person employed").

In *Overnight Transp. Co. v. Missel*, the Supreme Court explained the "mathematical computation" that must be used to determine an employee's regular rate: "Wage[s] divided by hours equals regular rate." 316 U.S. 572, 580 n.16 (1942). Section 778.109 of the FLSA's interpretative regulations echoes *Missel* and likewise explains that the regular hourly rate of pay "is determined by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

Although the FLSA regulations state that the "regular rate" under the FLSA "is a rate per hour," the regulations are clear that the FLSA "does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, *or other basis*," provided that "the overtime compensation due to [the] employee[] must be computed on the basis of the hourly rate derived therefrom." 29 C.F.R. § 778.109 (emphasis added). The Supreme Court likewise has recognized that an employment relationship

- 14 -

may provide for any number of compensation arrangements. *Missel*, 316 U.S. at 579-80 (citing, by way of example, hourly and piece rates). Despite the almost limitless variations on compensation plans, however, the "same method of computation produces the regular rate for each week"—*i.e.*, total wages divided by total number of hours compensated by those wages. *Id.* at 580; *Bay Ridge*, 334 U.S. at 461; *Chavez*, 630 F.3d at 1311-13 (holding that "the first step in calculating the regular rate over a particular week is to total the week's straight time pay and add-ons" and this total should then be divided by the "actual hours worked by the employee" to obtain the regular rate; in short, "the FLSA hourly regular rate is calculated by dividing the relevant weekly compensation by the actual hours worked").

### B.     The Overtime Premium Is An Additional One-Half Times The Regular Rate

If, as here, an employee's total wages provide compensation for all hours worked in a workweek (including hours worked over 40) at a regular rate of at least the minimum wage, the employer's only remaining obligation under the FLSA's overtime provision is to pay an additional *one-half* of that regular rate for each overtime hour worked, thereby providing the required "one and one-half times the regular rate" for all overtime hours. *Chavez*, 630 F.3d at 1313. Turner's non-overtime wages (in the form of a job/day rate and hourly rate) provide the "one . . . times the regular rate" component of the overtime compensation for hours worked (even those over 40), while the additional overtime premium paid by Republic provides the "one-half times the regular rate" component. *See Walling*, 325 U.S. at 426 (regular rate is for all hours worked, so compliance with "time and one-half" obligation requires only an additional 50% premium for hours worked above 40).

In short, the FLSA's overtime rule is simple:  (a) total wages for any workweek divided by the total number of hours compensated by those wages equals the employee's regular rate;

and (b) where the wages provide compensation (at the calculated regular rate) for all hours worked, the payment of an additional one-half of that regular rate for all overtime hours worked satisfies the FLSA's "time and one-half" requirement. Stated differently, the "time" component of Turner's overtime compensation is already paid (by the contractual wages) for all hours worked (including overtime hours), leaving only the "and one-half" component as the additional overtime premium obligation. Thus, where, as here, an employee's pay provides compensation (at the regular rate) for all hours worked, paying an overtime premium equal to one-half that regular rate is all that is required by the FLSA. *See, e.g.*, *Flood v. New Hanover Cnty.*, 125 F.3d 249, 252 (4th Cir. 1997) ("Since the employer has already paid the employee a regular rate of pay for all of the hours that the employee worked, including the overtime hours, it only has to pay an additional one-half time pay premium for the overtime hours."); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 634 (5th Cir. 2001) ("[S]ince the employee already receives 100% of his regular rate of pay for each overtime hour worked, the time and one-half overtime provision of 29 U.S.C. § 207(a)(1) requires that the employee receive only an addition 50 % of his regular rate for each overtime hour."); *Zumerling v. Devine,* 769 F.2d 745, 753 (Fed. Cir. 1985) (noting that Sections 778.111 and 778.112 "reflect that one-half pay when added to straight time pay totals the one and one-half time rate mandated by law").

This is precisely the formula Republic followed—because Turner's total compensation for the workweek (in the form of a job/day rate only or a combination of a job/day rate and an hourly rate) provided compensation (at the regular rate) for all hours worked (not just the first 40), Republic paid an overtime premium equal to one-half the regular rate for each overtime hour. For example, for the week ending January 9, 2016, Turner earned $779.67 in "day pay" ($155.93 job/day rate multiplied by 5 days worked) and $255.40 in "HT & DT pay" ($12.77

hourly rate multiplied by 20 total help time and downtime hours) for a total of $1,035.07 in straight time pay (*i.e.*, non-overtime compensation) for all hours worked during the week. (J. Torrey Decl.¶¶ 12-13). Republic calculated Turner's regular rate of pay by adding his total compensation for the week (job/day rates and hourly rates) and dividing that total compensation ($1,035.07) by his total hours worked (42.15), resulting in a regular rate for Turner of $24.56 that week. (J. Torrey Decl.¶ 14). Republic then paid Turner for all hours worked over 40 (2.15 hours) at 0.5 times his regular rate of pay ($12.2784), resulting in an overtime premium of $26.40, which, when added to his incentive compensation, resulted in a total weekly pay of $1,061.47 for all hours worked, including overtime. (J. Torrey Decl.¶¶ 15-16).

What Turner essentially urges the Court to adopt is a rule that he should receive straight-time compensation for each hour of work in excess of 40 in a week, and then *an additional* time and one-half on top of that. As the Tenth Circuit has recognized, Turner's argument "that the FLSA requires that [he] receive the regular rate for all hours worked and the regular rate and one-half for overtime hours . . . is without merit. Under that scenario, [Turner] would receive **two and one-half times** the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires." *Chavez*, 630 F.3d at 1313 (emphasis added).

C.     **The DOL's Interpretive Bulletin Provides Examples Of The "Wages Divided By Hours Compensated" Approach**

In 1968, the DOL issued an interpretive bulletin[5] announcing its agreement with the "wages divided by hours compensated" approach adopted by the Supreme Court:

---

[5]     The interpretive bulletin was not issued pursuant to notice and comment rulemaking procedures required for formal regulations. 33 Fed. Reg. 986 (1968) (preamble). As such, courts have held that the interpretive bulletins "do not command formal deference." *See, e.g.*, *Lupien v. City of Marlborough*, 387 F.3d 83, 88 n.3 (1st Cir. 2004); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 356 n.2 (4th Cir. 2011) ("A DOL interpretive bulletin (such as the one contained in 29 C.F.R. pt. 778) is different than a DOL regulation promulgated in

> [T]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.108 (relying on the Supreme Court's decisions in *Bay Ridge* and *Walling* as foundation of "wages divided by hours compensated" approach).  The DOL's adoption of the Supreme Court's longstanding view that regular rate is determined by dividing total wages by total hours worked that were compensated by those wages "is consistent with the statutory language" of the FLSA.  *Chavez*, 630 F.3d at 1313.

In the sections following § 778.109, the interpretive bulletin provides examples of "different employment arrangements and the proper method for complying with the FLSA for each type of arrangement."  *Allen v. Bd of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see Bailey v. Cnty of Georgetown*, 94 F.3d 152, 154 n.3 n.5 (4th Cir. 1996) (recognizing that "section 778.114 and other sections" following 29 C.F.R. § 778.109 "give some examples" and "means by which" regular rate may be determined in particular instances). The examples for regular rate and overtime calculations include hourly, piecework, day rate, job rate, salary for fixed hours, salary for fluctuating hours, and commission arrangements.  29 C.F.R. §§ 778.110-.122.

The DOL made clear, however, that the examples provided in the interpretive bulletin are neither exhaustive nor limiting:  "The following sections give *some examples* of the proper method of determining the regular rate of pay in particular instances."  29 C.F.R. § 778.109 (emphasis added); *see also Allen*, 495 F.3d at 1313 ("Following section 778.109 is a list of different employment arrangements and the proper method for complying with the FLSA for

---

accordance with notice and comment rulemaking."); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 678-79, 681 (7th Cir. 2010).

each type of arrangement"; although each example "exemplifies one way that a regular rate may be determined," it is not a blanket rule that prohibits employers from other compensation arrangements.); *Bailey*, 94 F.3d at 154 n.5 (noting that "section 778.114 simply provides one means by which" an employee's regular rate may be determined); *Kornbau v. Frito Lay N. Am., Inc.*, No. 4:11CV02630, 2012 WL 3778977, at *3 (N.D. Ohio Aug. 30, 2012) (noting that "the regulations make it clear that the FLSA allows employers to pay non-overtime compensation in a variety of ways, and provides examples for overtime calculations depending upon different non-overtime wage schemes," including compensation based on completion of a job or "day rate").

For example, under Section 778.110, when an employee "is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate,'" and the overtime rate is one and one-half times this "regular rate." 29 C.F.R. § 778.110(a). Stated differently, the overtime premium is simply one-half the "regular rate"; multiplying this overtime premium by the number of overtime hours worked yields the overtime amount that is due (the regular rate or 1.0 rate already having been paid for the overtime hours). *See id.*

Another example, provided at 29 C.F.R. § 778.111, applies to a "pieceworker" and states:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week. . . . Only additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked.

Another example, provided at 29 C.F.R. § 778.112, involves an employee who is paid only a day rate or job rate:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

In *Allen*, the Court of Appeals for the Eleventh Circuit recognized that employers are not required to conform their compensation plans to the precise terms of one of the examples in the interpretive bulletin in order to use the "wages divided by hours compensated" and one-half multiplier approach. *Allen* involved § 778.115, which provides:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay . . . have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings . . . are . . . divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115. The employees in *Allen* argued that their employer did not comply with § 778.115 because it used different rates of pay for the *same* (not different) types of work. *Allen*, 495 F.3d at 1312. Even though § 778.115—by its own terms—applies only when "different types of work" are performed, the Eleventh Circuit rejected the employee's argument, recognizing that § 778.115 was merely *an example* of a type of pay plan showing how the regular rate would be calculated for that type of plan:

> [R]eading section 778.115 in the context of section 778.109, it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases. While it exemplifies one way that a regular rate may be determined, it does not mandate that differing rates of pay are only permitted when different types of work are performed.

*Id.* at 1313. Thus, even though the employer used different rates of pay for the *same* type of work, the employer complied with the FLSA because it adhered to the "wages divided by hours compensated" and one-half multiplier approach, which is all that is required. *Id.*

More recently, the Court of Appeals for the First Circuit rejected an argument similar to the one Turner makes here. In *Lalli*, the plaintiff employees were paid a guaranteed weekly

- 20 -

salary regardless of the hours worked plus a non-discretionary sales commission that varied based upon the amount of eligible sales attributed to him/her for that week. 814 F.3d at 2. To calculate overtime, the employer (1) added together both the guaranteed salary for the week and the commissions earned that week to get the total wages; (2) divided the total wages by the number of hours the employee worked that week; and (3) paid an additional one-half of the resulting per hour rate for any hour worked in excess of 40 hours that week. *Id.* As the First Circuit recognized:

> Defendants employed a pay structure that combines the example set out in section 778.114 (a fixed weekly salary regardless of hours worked) with the example set out in section 778.118 (commissions paid weekly). Because each element [of Defendants' pay structure] reflects a permissible compensation scheme, one might suspect Defendants to be on solid footing. Instead, Plaintiff contends that two rights make a wrong, and that the commission component of the pay arrangement takes the pay scheme as a whole outside the example provided in section 778.114.

*Id.* at 4. The First Circuit rejected the plaintiffs' theory, concluding that the employer's "pay scheme epitomizes the compensation arrangements illustrated in sections 778.114 and 778.118, and the mere combination of these two permissible methods does not render the former inapplicable." *Id.* at 10.

> **D.     Turner's Regular Rate Claim Fails Because Republic Was Not Required To Comply With 29 C.R.F. § 778.112 Or Any Other Example Provided In The DOL's Interpretive Bulletin**

Turner's regular rate claim is based on his incorrect assumption that, because Republic's compensation plan included a job/day rate, Republic "attempt[ed] to categorize and compensate [him] under the pay provision permitted by 29 C.F.R. § 778.112." (Compl. ¶ 31). Turner then argues that the following language in the day rate provision—"if he receives no other form of compensation for services"—is a prerequisite for Republic to use the half-time overtime calculation and prohibits compensation plans that combine day rates and other forms of compensation. (Compl. ¶¶ 31-51). Put simply, Turner contends that an employer violates 29

C.F.R. § 778.112 by paying employees based on a compensation plan that includes "a job/day rate as well as other forms of compensation" such as hourly rates.  (Compl. ¶¶ 31-50).  This argument is without merit and should be rejected.

Turner's premise is flawed.  An employer is not required to comply with § 778.112 or comport with *any* of the examples in the interpretive bulletin.  *See Lalli*, 814 F.3d at 10 n.11 ("We do not mean to imply, however, that a pay scheme must fall within a regulatory example in order to comply with the [FLSA].").  Like the other examples set forth in the interpretive bulletin, the day rate provision—29 C.F.R. § 778.112—merely provides an example of how the regular rate may be calculated under the circumstances described—*i.e.*, when an employee is paid a day rate and "no other form of compensation for services."[6]  While § 778.112 describes how the regular rate and overtime pay may be calculated when an employee is paid only a day rate, it does not impose restrictions, conditions, or limitations on an employer's flexibility to establish other compensation arrangements consistent with the needs and realities of its business, so long as the compensation arrangement adheres to the standard "wages divided by hours compensated" approach to determining the regular rate and the employer pays an additional half-time measure for all overtime hours.  *Lalli*, 814 F.3d at 10 n.11; *Allen*, 495 F.3d at 1313.

Indeed, § 778.112—like all of the examples in the interpretive bulletin—must be read in context as but one *example* of the application of the overarching rule that an employee's regular rate is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked in that workweek for which such compensation was paid.

---

[6]     The "no other form of compensation" qualifier in § 778.112 is meant to distinguish that example from the immediately preceding example outlined in § 778.111, which calculates the regular rate and overtime payments using a hypothetical pay plan that includes piece rates *and* other forms of compensation (including "waiting time" paid at an hourly rate and "production bonuses").  Instead of being a legal requirement, the qualifier in § 778.112 is simply a rhetorical device meant to contrast the example in the previous section.

29 C.F.R. § 778.109; *see Missel*, 361 U.S. at 580 n.16; *Bailey*, 94 F.3d at 154, 154 n.5 (rejecting the argument that "because the requirements of section 778.114 had not been met . . . the plan therefore violated the FLSA," stating that a belief that "section 778.114 represents an exception to the FLSA, rather than an elaboration upon it . . . [is] mistaken [because] section 778.114 simply provides one means by which . . . regular rate of pay may be determined"); *Allen*, 495 F.3d at 1312-13 (recognizing that language in § 778.115 "[w]here an employee . . . works at two or more different types of work for which different nonovertime rates of pay . . . have been established" is provided as an example of how regular rate may be calculated in a certain situation but "does not mandate that differing rates of pay are only permitted when different types of work are performed"); *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 596 n.11 (2d Cir. 2007) (plaintiffs' argument that payment of two different rates for the *same* work violates the FLSA because § 778.115 assumes that the two rates of pay are a result of *different* work "misapprehends the purpose of the regulation, which is simply to provide an example of a means of calculating the regular rate").

If it is determined that § 778.112 is inapplicable because Turner occasionally received "other forms of compensation" in addition to his job/day rate under Republic's compensation plan, then the most that can be said is that § 778.112 does not apply. That does not mean that Republic violated the FLSA. Rather, the rule of *Missel*, *Walling*, *Chavez*, *Allen*, and § 778.109 would still apply—that is: (a) total wages divided by the total number of hours equals the regular rate, and (b) one-half of that regular rate must be paid as an overtime premium for all hours worked in excess of 40 in the workweek.

In fact, the DOL has previously approved this method of calculating regular rate and overtime where an employee receives a day rate *and* additional compensation. In DOL Opinion

Letter FLSA-953, the U.S. Secretary of Labor was asked to weigh in on a compensation plan that

paid bus drivers (who also worked as custodians) a fixed $10 per day rate and $2.00 per hour for

extra bus trips. *See* Dep't of Labor Opinion Letter FLSA-953 (June 22, 1967) at 1, attached to

this Motion as Exhibit 3. The DOL recognized and explained that:

> Section 778.112 states that if an employee is paid a flat sum for a day's work
> without regard to the number of hours worked in the day, and if he receives no
> other form of compensation for services, his regular rate is determined by totaling
> all of the sums received at such day rates in the workweek and dividing by the
> total hours actually worked. He is then entitled to extra half-time pay at this rate
> for all hours worked in excess of the applicable maximum workweek. **In those
> workweeks when he makes 'extra trips' at $2.00 per hour, the hours worked
> and the wages received must be added to the total hours worked and the total
> earnings received. The total wages at both day rates and hourly rates are
> added together and divided by the total hours worked to determine the
> regular rate for that week. Additional half-time must then be paid on the
> new regular rate.**

*Id.* (emphasis added). Thus, in Opinion Letter FLSA-953, the DOL approved of a compensation

structure identical to the plans at issue in this case: (1) day rates and "other form[s] of

compensation"; (2) combining "both day rates and hourly rates" or other forms of compensation

to arrive at the regular rate of pay; and (3) calculating overtime by using the half-time method.

*See id.*

Nearly 35 years after this Opinion Letter, the United States District Court for the Eastern

District of Michigan reached the same conclusion in a case involving garbage truck drivers with

compensation plans very similar to the ones at issue in this case. In *Sexton v. BFI Waste Systems

of North America*, truck drivers were paid on a day rate basis and also received "additional

compensation in the form of special pay on the same day they received a day rate." No. 00-CV-

73473, 2002 U.S. Dist. LEXIS 26129, at *16 (E.D. Mich. Dec. 3. 2002). The summary

judgment record in *Sexton* reveals that the "special pay" or "extra pay" was given to drivers on a

flat rate to compensate them for additional tasks they performed beyond their regular routes. *See*

Affidavit of Carol Webber ¶ 7, attached to this Motion as Exhibit 4 ("[C]ertain Plaintiffs have also performed specific tasks on occasion for which they received a specified sum. Such payments are known as extra pay. To the extent that a Plaintiff who received extra pay during a week worked more than 40 hours during the week that he received extra pay, the monies received as extra pay were included in the total pay received for purposes of determining overtime pay.").

Just like Turner, the plaintiff in *Sexton* argued that this extra compensation in addition to his day rates prevented the employer from paying overtime at half of the employee's regular rate. *Id*. ("Plaintiff contends that because he has received another 'form of compensation for services,' his pay should not be calculated according to [Section 778.112]."). The court rejected this argument; relying on and giving deference to Opinion Letter FLSA-953 (described by the court as "a permissible interpretation of the FLSA by the [DOL])," the *Sexton* court found that "the special/extra pay . . . is analogous to the $2.00 per hour for extra trips paid to bus drivers in that (Opinion Letter)," and consequently upheld the company's calculation of overtime on a half-time basis when the employees received a day-rate in conjunction with additional compensation. *Id*. at *18. The same result is warranted here.

Indeed, just last year, a district court rejected the argument that an employer can "violate" the examples set forth in the DOL's interpretive bulletin at §§ 778.110-.122:

> Although some courts do speak of "violating" [29 C.F.R. § 778.114], the term is misleading because no employer is obligated to compensate its employees using this (or any other) particular pay arrangement. . . . The regulations provide several examples of the proper method of determining the regular hourly rate in particular instances, and § 778.114 is merely one of those examples. If the employer's compensation scheme does not fit the scenario described in § 778.114, then that section does not apply by its own terms. But it does not follow that there has been a "violation" of § 778.114, any more than there has been a "violation" of the piece rate method (§ 778.111), or the day rate method (§ 778.112), or the deferred commission method (§ 778.119). Those types of pay arrangements are

simply inapplicable by their own terms, just like the fluctuating workweek. So, we must turn elsewhere to compute the regular rate.

*Hanson v. Camin Cargo Control, Inc.*, No. H-13-0027, 2015 WL 1737394, at *6 (S.D. Tex. Apr. 16, 2015). The *Hanson* court explained that even if the examples provided in the DOL's interpretive bulletin do not apply, the "traditional method of computing the regular rate"—*i.e.*, the regular rate is determined by dividing the employee's total wages for the week by the total number of hours worked in that workweek for which such compensation was paid—still applies.[7] *Id.* (citing *Missel*, 361 U.S. at 580 n.16 and 29 C.F.R. § 778.109). Because the employees in *Hanson* were already paid their regular rate for all hours worked, they were only entitled to an additional "half-time" overtime premium for hours worked in excess of 40 in the week. *Id.* at *8.

The same conclusion must be reached here. Even if Turner is correct (which he is not) that Republic's method of compensating him with a job/day rate and "other forms of compensation" such as hourly rates has the "overall effect of invalidating Defendants' attempt to categorize and compensate [Turner] . . . under the pay provision permitted by 29 C.F.R. § 778.112" (Compl. ¶ 31), all it means is that the example set out in § 778.112 "does not apply by its own terms." *See Hanson*, 2015 WL 1737394, at *6. "[I]t does not follow that there has been a 'violation' of [§ 778.112]" or that Republic's compensation plan runs afoul of the FLSA's

---

[7]   The *Hanson* court explicitly rejected Turner's argument that the regular rate should be determined by dividing total compensation by 40 hours (rather than all hours worked), stating that "nothing in the [FLSA] or the DOL regulations mention such a" rule. 2015 WL 1737394, at *6 (holding that the regular rate is determined by dividing total compensation for the week by the total number of hours actually worked in that workweek for which such compensation was paid); *see also Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988) (stating that the regular rate is determined "by dividing the actual hours worked each workweek into the" total compensation for the workweek, and "overtime payment for that week is then determined by multiplying all hours over 40 in the workweek by 1/2 the regular rate for that workweek"); *Givens v. Will Do, Inc. Houston*, No. 4:10-CV-02846, 2012 WL 1597309, at **4-6 (S.D. Tex. May 4, 2012) (recognizing that calculating regular rate by dividing total compensation by 40 hours—not all hours worked—is "contrary to tradition" and finds no support in the FLSA, any regulation, or case law).

regular rate and overtime calculation requirements. *See id.* Rather, the "traditional method of computing the regular rate" still applies—*i.e.*, the regular rate is determined by dividing Turner's total wages for the week by the total number of hours worked in that workweek for which such compensation was paid. *Id.* That is precisely the calculation Republic used to determine Turner's regular rate. Turner's total compensation for the week compensated Turner for all hours he worked that week, not just the first 8 hours he worked in a day or the first 40 hours of work in a week; accordingly, Republic determined Turner's regular rate by dividing the total compensation for the workweek (including job/day rates and hourly rates) by his total hours worked for the workweek.

"For each hour of overtime worked in a given week, an employee is entitled to one and one-half times his regular rate of pay for that workweek." *Hanson*, 2015 WL 1737394, at *8 (citing 29 U.S.C. § 207(a)). Such overtime payments include two basic components—one portion that is straight-time compensation for all hours worked and another that represents one-half of the employee's regular rate paid for overtime hours. Because Turner—by way of job/day rates and hourly rates—has "already received straight-time pay for all hours worked . . . [he is] entitled only to additional half-time pay for each overtime hour," which he has already received under Republic's compensation plan. *Id.* Indeed, this additional half-time compensation for all overtime hours, when added to Turner's straight-time compensation for hours over 40, resulted in Turner receiving overtime at 1.5 times his regular rate in accordance with the FLSA, its regulations, and Supreme Court cases.

For example, for the week ending January 9, 2016, Republic calculated Turner's overtime by first dividing his total compensation ($1,035.07) — including his job/day rate compensation ($779.67) and his hourly compensation ($255.40) — by his total hours worked

(42.15), resulting in a regular rate of $24.56 for the week.  (J. Torrey Decl.¶ 14).  Because, and as indicated on his pay sheet, Turner's job/day rate and hourly rate compensated him for all his straight time hours, including for hours worked in excess of 40 in a week, Republic paid Turner an additional overtime premium equal to *one-half* of his regular rate ($12.2784) for all hours worked in excess of 40 in that workweek (2.15 hours), totaling $26.40.  (J. Torrey Decl.¶ 15).  Republic then added Turner's overtime premium ($26.40) to his straight time pay ($1,035.07) for a total weekly compensation of $1,061.47.  (J. Torrey Decl.¶ 16).  This example demonstrates that Republic's method of calculating Turner's overtime complies with the FLSA because it resulted in Turner receiving overtime at *one* (straight-time compensation at regular rate based on combination of job/day rates and hourly rates for all hours worked) *and one-half* (half-time overtime premium) times his regular rate.

Turner's argument that a job/day rate cannot be combined with any other form of compensation makes little sense.  The piece-rate provision (29 C.F.R. § 778.111(a)) for instance, includes no such qualifying language and, to the contrary, *specifically* endorses a compensation structure that includes payments on a piece-rate basis as well as "other sources" of compensation such as payments on an hourly basis. *See also id.* (describing a pay plan combining piece rates for "productive work" and hourly pay for "waiting time" and explaining that "[o]nly additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked.").

In addition, under Turner's flawed argument, if an employee is paid predominantly by piece rates but also receives one nominal job/day rate during the week, that would constitute a violation of the FLSA because the employee received a job/day rate as well as other forms of compensation.  Yet such a result is nonsensical.  In other words, because overtime under both a

day-rate plan or a piece-rate plan is calculated on a 0.5 basis, Turner's argument that if an employer combines the two plans it must then pay an overtime premium at 1.5 times the regular rate (which in this case would result in overtime payments at 2.5 the regular rate) makes no sense whatsoever. *See Lalli*, 2016 WL 563071, at *8 (concluding that "the mere combination of these two permissible methods does not render the former inapplicable"); *see also Chavez*, 630 F.3d at 1313 ("Under that scenario, [the plaintiffs] would receive two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires.").

Furthermore, Turner's argument, taken to its logical conclusion, would upend how overtime on bonuses or commissions are calculated for employees paid, in whole or in part, by a job/day rate. Overtime for an employee paid by a job/day rate is calculated by adding all day rates in the workweek and dividing by total hours worked, and then by providing the employee with extra half-time pay for each hour worked in excess of 40 in the week. 29 C.F.R. § 778.112. Overtime on commissions is calculated the same way: the total of all commissions earned in the workweek are divided by all hours worked, and then the employee "must then be paid extra compensation at one-half that rate for each worked in excess of" 40 that week. 29 C.F.R. § 778.118. And the same goes for overtime on bonuses: an "employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week." 29 C.F.R. § 778.209(b). But under Turner's logic, an employee who receives a day rate cannot receive commissions for sales he or she makes without invaliding the half-time calculation method, and such an employee cannot receive a safety or attendance bonus without transforming the half-time calculation

method into a time and one-half method.  Turner thus asks the Court to provide employers with a disincentive to pay job/date rate employees with additional compensation that other employees could and do typically earn.

Because Republic's method of compensating Turner (both calculating his regular rate and overtime compensation) fully complies with the FLSA and resulted in Turner receiving overtime at 1.5 times his regular rate, Turner's regular rate claim fails as a matter of law.

### E.  *Rodriguez v. Republic Services, Inc.* Is Inapplicable And Should Not Be Followed

Turner may rely on *Rodriguez v. Republic Services, Inc.*, No. SA-13-CV-20-XR, 2013 U.S. Dist. LEXIS 112955 (W.D. Tex. Aug. 12, 2013) and 2013 U.S. Dist. LEXIS 147921 (W.D. Tex. Oct. 15, 2013), to argue that the day rate example in the interpretive bulletin prohibits the use of Republic's compensation plan.  *Rodriguez* involved residential drivers who worked in Republic's San Antonio, Texas facility.  Those drivers were paid a flat day rate for their regularly-scheduled work days, Monday through Friday.  On occasion, when they were required to work an additional sixth day on the weekends, Republic paid them an hourly rate for that day. *Rodriguez*, 2013 U.S. Dist. LEXIS 112955 at *1-4.  Republic sought summary judgment on the validity under the FLSA of this compensation plan and its calculation of the regular rate for overtime purposes.  But the Court denied summary judgment.  The premise of the Court's decision in *Rodriguez* is that, for a compensation plan that combines day rates and hourly rates to be lawful, the work for which a day rate is paid and the work for which an hourly rate is paid must be different. *Id.* at *13 ("The Court does not find that the DOL regulations provide support for the possibility of a compensation scheme awarding both day and hourly rates for the completion of the same type of work.  The only regulation which explicitly covers employment

arrangements involving two different rates being paid to an employee is section 778.115, and this section expressly requires that the employee undertake 'different kinds of work.'").

Rodriguez should not be followed here because, to the extent Turner's job/day rates are combined with hourly rates, the hourly compensation is paid for different kinds of work (*i.e.*, work that is different from the Turner's primary duty involving hauling waste on his assigned route), and thus falls outside of the hourly pay which the *Rodriguez* court found impermissible (because it was for the same type of work, but on a different day). Indeed, the reasoning of *Rodriguez* is simply inapplicable because in the workweeks in which Turner received hourly pay combined with job/day rates, the hourly pay compensated Turner for different work, such as downtime (a period of non-productive time when Turner is unable to proceed on his route because of a vehicle accident or truck malfunction, for example), help pay (when Turner—after completing his route for the day—assists another driver to complete the other driver's route and earns additional pay for the additional work), or training time ("shadowing" new drivers inside the vehicle, and providing coaching and instruction while the new employee drives the truck through the assigned route.).

Moreover, *Rodriguez* should not be followed because it was wrongly decided. It ignored the undeniable fact that the day rate provision—29 C.F.R. § 778.112—was provided by the DOL merely as one of several "examples" to illustrate the proper calculation of the regular rate in the "particular instance[]" described—*i.e.*, when an employee is paid *only* a day rate, *see* 29 C.F.R. § 778.109. The *Rodriguez* court also refused to consider Opinion Letter FLSA-953 based on its misinterpretation that the facts involved employees who received different pay for two different types of work—whereas the Opinion Letter explains clearly that the hourly pay given to the bus drivers in addition to their day rates were intended to cover "extra bus trips" (*i.e.*, additional

compensation on top of their "regular" bus trips and custodial duties). In addition, *Rodriguez*'s conclusion that the inclusion of hourly compensation in the compensation plan precludes the half-time method of calculating overtime conflicts with the Tenth Circuit's *Chavez* decision. *See Chavez*, 630 F.3d at 1312-13 (stating that "a fixed and hourly component to an employee's compensation . . . does not violate the FLSA"; calculating regular rate by dividing total weekly compensation by actual hours worked and approving use of one-half multiplier to calculate overtime). Finally, the *Rodriguez* court failed to grasp the fundamental principle that even when Republic combines job/day rates and hourly pay, and calculates overtime at half-time, the employees still receive overtime at 1.5 times their regular rate as required under the FLSA.[8] With regard to the hourly pay component, for example, the drivers receive 1.0 of the hourly rate in accordance with the terms of the applicable pay plans (for each hour of downtime or help pay, for instance), plus an extra 0.5 of their regular rate for all overtime hours. When combined, these two rates result in payment of overtime at 1.5 times the regular rate. To do otherwise as Turner suggests would result in overtime payments at 2.5 their regular rate.

To the extent the *Rodriguez* case can be construed as holding that anytime an employee is paid a day rate and receives any "other form of compensation" regardless of type—*e.g.*, piece-rate, hourly, salary, commission, bonus—the employee must receive overtime compensation at 2.5 times the regular rate, it was wrongly decided and should not be followed. As detailed above, such a reading is not supported by the FLSA, its interpretive regulations, case law, or common sense. Because Republic's compensation plan fully complies with the FLSA and

---

[8]     *See Rodriguez*, 2013 U.S. Dist. LEXIS 147921 at *6 ("Defendants' argument (and the *Allen* decision) flips the general rule onto its head allowing for any number of payroll methods to be employed in order to pay overtime at only the half-rate, rather than one and one-half times.").

Turner was paid overtime at 1.5 times his regular rate, Republic's Partial Motion for Summary Judgment on Turner's Regular Rate Claim should be granted.

**Conclusion**

For the reasons set forth above, Republic respectfully requests that the Court grant its Partial Motion for Summary Judgment and dismiss Plaintiff Darren Turner's regular rate claim under the FLSA.

DATED:  October 19, 2016                        Respectfully submitted,

                                                OGLETREE, DEAKINS, NASH, SMOAK,
                                                AND STEWART, P.C.

                                                By:  *s/ Benjamin P. Glass*
                                                     Benjamin P. Glass (Federal I.D. No. 6522)
                                                     Piper R. Byzet (Federal I.D. No. 11393)
                                                     211 King Street, Suite 200
                                                     Charleston, SC 29401
                                                     843.853.1300
                                                     843.853.9992
                                                     ben.glass@ogletreedeakins.com
                                                     piper.byzet@ogletreedeakins.com

                                                     SEYFARTH SHAW LLP
                                                     Noah A. Finkel
                                                     nfinkel@seyfarth.com
                                                     Kara L. Goodwin
                                                     kgoodwin@seyfarth.com
                                                     131 S. Dearborn Street, Suite 2400
                                                     Chicago, IL  60603-5803
                                                     (312) 460-5000

                                                     Esteban Shardonofsky
                                                     sshardonofsky@seyfarth.com
                                                     700 Milam Street, Suite 1400
                                                     Houston, TX  77002-2812
                                                     (713) 225-2300

                                                     ATTORNEYS FOR DEFENDANTS BFI WASTE
                                                     SERVICES, LLC, REPUBLIC SERVICES OF
                                                     SOUTH CAROLINA, LLC, AND REPUBLIC
                                                     SERVICES, INC.