IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Darren Turner, on behalf of himself and all others similarly situated, | ) ) ) | Civil Action No. 2:16-cv-02864-DCN |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| BFI Waste Services, LLC d/b/a Republic Services; Republic Services of South Carolina, LLC d/b/a Republic Services; and Republic Services, Inc., | ) ) ) ) ) | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | ) ) ) | |

Plaintiff, Darren Turner ("Plaintiff" or "Turner"), on behalf of himself and on behalf of all employees similarly situated, including all Opt-In Plaintiffs (either "Opt-In" or "Opt-Ins"), (all collectively, "Plaintiffs"), by and through the undersigned counsel, files this Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment as to Plaintiff's Regular Rate claim brought pursuant to the Fair Labor Standards Act ("FLSA"). *See* ECF No. 22 (Mot. Summ. J.).

## FACTS

Plaintiff Darren Turner is a non-exempt residential waste disposal driver currently employed by Defendants. (Compl. ¶ 4). On August 12, 2013, Plaintiff signed a document entitled "New Hire Wage Statement" at the time of his initial hire in North Charleston, South Carolina. (Ex. 1; D. Turner Decl. ¶ 5;). The "New Hire Wage Statement" indicated that Turner was hired as a full-time employee and would be paid $135.00 *per day*. (Ex. 1-A – New Hire Wage Statement). The document contained a line for Defendant to indicate the "Normal Hours

of Work" (i.e. number or range of hours per week, day, other, etc.), but this line was left blank. *Id*. However, Turner specifically recalls that Defendants' employee Donna Duncan (Human Resources) verbally told him at the time of hire that the day rate would cover only up to the first 40 hours in a week. (Compl. ¶ 41; D. Turner Decl. ¶ 8). On or about April 22, 2014, Turner transferred to Republic's Concord, North Carolina location. (Compl. ¶ 4). Turner received a transfer offer letter indicating that he would be paid $152.13 *per day*. (Ex. 1-B – Transfer Offer Letter). The offer letter did not indicate how many hours the day rate was intended to compensate. *Id*. Likewise, Turner also received a new "Transfer Hire Wage Statement" indicating that he would be paid $152.13 per day. (Ex. 1-C – Transfer Hire Wage Statement). Like his Charleston form, the Concord form contained a line for Republic to indicate the "Normal Hours of Work." *Id.* The line was left blank once again. *Id.*

Opt-in Jeronica Brown, another residential driver for Defendants, also received a New Hire Wage Statement at the time of her initial hire in North Charleston. (Ex. 2; J. Brown Decl. ¶ 4). Brown's New Hire form, completed by Republic, indicated that she would be paid $135.00 per day for <u>*40 hours per week*</u>. (Ex. 2-A – New Hire Wage Statement). Neither Turner nor Brown's New Hire forms indicate that the day rate would cover any *range* of hours or hours *over* 40 in a workweek. (Ex. 1-A; 2-A).

After Turner began his employment at the North Charleston facility, he was regularly required to work more than 40 hours per week and subject to potential disciplinary action for refusing to do so. (Compl. ¶ 29). Rather than receive overtime pay at the rate of 1.5 times his **fixed** regular rate (based on a 40-hour workweek), Turner and the other residential drivers received only half-time pay for hours over 40. (Compl. ¶ 33). In paying half-time overtime, Republic would divide employees' total wages for the week by the *total number of hours worked*

to arrive at the regular rate of pay (and would then pay 1/2 the regular rate of pay for all hours over 40). (Compl. ¶ 45). Immediately after his hire and many times during his employment, Turner and other employees questioned and complained about overtime pay and were told by managers that the company utilized "Chinese overtime." (Compl. ¶¶ 53, 54; D. Turner Decl. ¶¶ 10, 11; J. Brown Decl. ¶¶ 11, 12). Specifically, Turner regularly complained to managers Carlos Ellerby, Gary Rhodes, Leon Davis, and Evan Jones about overtime pay with the complaints beginning as early as several weeks following his initial hire and continuing up to the present. (D. Turner Decl. ¶ 11). These complaints addressed the manner in which Republic was failing to pay overtime at the rate of time and one half and using the day rate to count towards overtime hours. (D. Turner Decl. ¶ 10). Likewise, Jeronica Brown and other coworkers complained to management in both group and individual settings about overtime pay and its calculation and were provided the same response; the company utilized "Chinese overtime." (J. Brown Decl. ¶ 10).

During Turner's employment, there were times when he worked less than an 8-hour day, such as during inclement weather. (Compl. ¶ 37; D. Turner Decl. ¶ 16). On certain of those occasions, Republic did not compensate Plaintiff with a flat "day rate." *Id.* Instead, Republic chose to compensate Plaintiff and others on an hourly basis. *Id.* The hourly rate was computed by dividing the flat day rate **by eight** to arrive at an hourly rate, which was then multiplied by the number of hours actually worked in the day. (Ex. 5; Defs.' Interrogs. 1). For example, on February 12, 2014, Plaintiff worked 4 hours but was only paid $71.00 rather than his day rate at the time, $142.00. *Id.* Defendants admit that they did not pay Plaintiff his day rate on February 12 but allege it was because it was an "ice/snow day." (Ex. 4; Defs.' Req. Admis. 5). Likewise, on October 16, 2013, Defendant paid Plaintiff only $13.16 instead of his day rate at the time,

$135.00, for a partial day of work. *See* (Ex. 3-D).  As recently as January 10, 2017, Turner and others were informed by management in a group meeting that the company would not pay the full day rate for partial day work.  (D. Turner Decl. ¶ 16).

Likewise, Jeronica Brown was subject to the same payment scheme.  (Ex. 2; J. Brown Decl. ¶ 14).  On April 24, 2013, Brown worked 4.87 hours and was paid $85.23 rather than her day rate at the time, $140.00 per day.  (Ex. 2-B). On March 15, 2014, Brown worked 2.28 hours and was paid $45.41 rather than her day rate at the time, $159.69.  *Id.*  On January 18, 2014, Brown worked 2.32 hours and was paid $45.63 rather than her day rate at the time, $157.33.  *Id.* More recently, on December 12, 2015, Defendant failed to pay her day rate of $168.96 and, instead, paid only $37.59 for a partial day of work.  *Id.*

In addition to completing their trash collection route for an alleged "day rate," Turner and his coworkers were required to assist other drivers on their routes collecting trash, when necessary.  (Compl. ¶ 35).  Time spent collecting trash on another employee's route was called "help pay" and paid at an hourly rate.  *Id.*  Additionally, Turner received hourly pay for "downtime" (when his truck was inoperable), when he attended a safety meeting, or when he was training another driver.  (Compl. ¶¶ 38, 40).  These hourly rates, if applicable for the week, (termed "incentive pay") were added together with the "day rate" to arrive at Turner's total "non-overtime wages" for the week, which were divided by the *total number of hours* worked during the week to arrive at his regular rate of pay.  (ECF No. 22 at 16-17).  In order to track the time Plaintiff spent on his own route (allegedly paid by the day) versus the time spent on a help route or other incentive task (allegedly paid by the hour), Turner was required to complete an Operator

Activity Sheet while he was in the truck.[1]  (Ex. 3-E; D. Turner Decl. ¶ 22). The activity sheets were necessary because Turner did not return to the "yard" or have access to the computerized time clock while driving his truck.  *Id.* The Operator Activity Sheets provided space for Turner to document his load and disposal times, his breaks, and his incentive time hours, if applicable. *Id.*

Throughout Turner's employment, he received incremental raises from time to time. (D. Turner Decl. ¶ 4).  When Turner was given any raise, Republic completed an official "Personnel Action Form." (Ex. 3-A)  For example, on April 21, 2014, a Personnel Action Form was completed for a pay rate adjustment.  *Id.* The form noted that Turner's pay rate increased from "$18.02 per hour" to "$19.02 per hour."  *Id.*  Additionally, his salary class was described as "hourly."  *Id.*  Turner's annual performance reviews also consistently classify him as an "hourly employee" rather than a "day rate" or "hybrid" employee. ("[u]se this performance review form for field Operations hourly roles…") (Ex. 3-B).  Furthermore, Republic's annual Paid Time-Off (PTO)/Tardy Standards policy classifies drivers as "hourly employees."  ("Hourly employees are not eligible to take vacation or personal days until after they have worked 60 days from their hire date.")  (Ex. 3-C).

## STANDARD OF REVIEW

A court should only grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] Defendants have only produced Turner's Operator Activity Sheets for the period of time from May 19, 2014, through September 29, 2014.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. *Id.* at 255.

## SUMMARY OF LAW

Generally, the FLSA requires employers to pay an employee one and one half times the employee's regular rate for all hours worked in excess of 40 hours. *See* 29 U.S.C. §207(a)(1). The "regular rate" is the "keystone" of the FLSA's overtime requirements. *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945). As the Supreme Court has made clear, the regular rate is the hourly rate at which the employer pays the employee for **normal non-overtime hours in a 40-hour workweek.** *Id.* Indeed, while the FLSA contains no definition of the phrase "regular rate," as early as 1944, the Supreme Court explained the words "obviously mean the hourly rate actually paid *for the normal **non-overtime** workweek.*" *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944) (emphasis provided); *Flood v. New Hanover Cnty.,* 125 F.3d 249, 251 (4th Cir. 1997). As the Supreme Court noted in *Walling v. Youngerman-Reynolds*:

> The regular rate by its very nature must reflect all payments which the *parties have agreed* shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen *by the parties*; it is an actual fact. *Once the parties have decided upon the amount of wages and the mode of payment* the determination of the regular rate becomes a matter of mathematical computation . . .

> 325 U.S. at 461 (emphasis provided); *See also 149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199 (1947).

Thus, under *Walling v. Youngerman-Reynolds* a central component of calculating the

6

proper regular rate for the normal non-overtime workweek is an *agreement* between the parties as to the non-overtime pay.  Assuming the parties have a clear understanding and agreement as to the normal non-overtime wages and what they are intended to compensate an employee for, the regular rate of pay is a simple mathematical calculation.  Of course, the calculation of the regular rate for an employee paid exclusively on an hourly basis is simple; the hourly rate *is* the regular rate (i.e. an employee paid $10.00 per hour has a regular rate of $10.00 and 1.5 times $10.00 is $15.00 for all overtime hours).  29 C.F.R. § 778.110(a).  The calculation becomes more complicated when an employee is paid other than on an hourly basis; however, §778.109 states that the regular rate is determined by dividing total remuneration in any workweek by the total number of hours actually worked *for which such compensation was paid.  Id.*  The "for which such compensation was paid" component of 778.109 again dictates that an agreement is needed between the parties as to what hours or work the total remuneration was intended to cover before calculating the regular rate.

The Department of Labor has promulgated an interpretive bulletin that provides for alternative ways of calculating the regular rate of pay, and corresponding overtime, for certain employees.  For example, the DOL's regulations provide for an alternative means of calculating the compensation of certain salaried employees - the fluctuating workweek method.  29 C.F.R. §778.114.  Likewise, the DOL's day rate regulation provides a method of calculating an employee's regular rate of pay based on a flat sum paid to the employee.  29 C.F.R. §778.112.  The day rate regulation allows employers to pay overtime hours at half-time, rather than time and one half.  However, the day rate regulation applies only "if the employee is paid a **flat sum for a day's work**…**without regard to the number of hours worked in the day**…and if he receives **no other form of compensation for services**."  *Id.*  (emphasis provided)  Lastly, the DOL

provides an alternative means of calculating the regular rate and corresponding overtime pay for piece rate workers. 29 C.F.R. §778.111. Under the piece rate scheme, the regular rate may be calculated by adding together total earnings for the workweek from piece rates and all other sources and dividing the total earnings in the week **for which such compensation was paid** by the total number of hours worked for the week. *Id.* The employee is then entitled to one-half of this regular rate of pay for all hours worked in excess of 40. However, an employer is only permitted to pay half-time overtime under the piece-rate scheme if the employer and employee reach an *agreement* that the piece rate will compensate the employee for all hours worked, including non-productive hours. 29 C.F.R. §778.318(c). In the absence of such an agreement, the employee is owed compensation "at a rate at least one and one-half times the [regular] rate for hours in excess of 40." 29 C.F.R. §778.318(b); 29 U.S.C. §207(a)(1).

## ARGUMENT

I.     **A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER THERE WAS AN AGREEMENT THAT THE "DAY RATE" WAS INTENDED TO COVER ONLY UP TO 40 HOURS PER WEEK OR WHETHER IT WAS INTENDED TO COVER ALL HOURS WORKED, INCLUDING OVERTIME HOURS.**

Defendants' entire argument for paying half-time overtime rests on one basic assumption – that the pay Plaintiff received in the form of a "day rate" (or non-overtime wages) compensated him as straight time pay **for all hours worked during the workweek**, including those over 40. In other words, Republic claims that it has already paid Plaintiff the "one" (or straight time) portion of the 1.5 owed for overtime hours under the FLSA through the day rate (or non-overtime wages). In arguing that it is free to establish a hybrid compensation plan of its own choosing, Defendants cite to *Walling v. Youngerman* for the proposition that employers "may *agree* to pay compensation according to any time or work

8

measurement they desire." *Id.* (ECF No. 22 at 13) *citing Walling* at 424 (1945) (emphasis

provided). Defendants continue by stating "the regular rate is derived from whatever

compensation arrangement **the parties** establish." (ECF No. 22 at 14) (emphasis provided).

Lastly they cite *Walling* for the proposition that:

> The regular rate by its very nature must reflect all payments **which the parties
> have _agreed_** shall be received regularly during the workweek, **exclusive of
> overtime payments**. It is [not an arbitrary label chosen by the parties;] it is **an
> actual fact**. **Once the parties have decided upon the amount of wages** [and the
> mode of payment] the determination of the regular rate becomes a matter of
> mathematical computation.

> (ECF No. 22 at 14) *citing Walling* at 424-425 (emphasis provided) (omissions in
> original where indicated); *See also 149 Madison Ave. Corp. v. Asselta*, 331 U.S.
> 199 (1947).

Defendants' reliance on *Walling* is not entirely misplaced. However, their interpretation

of *Walling* wholly ignores the unmistakable requirement of an *agreement* between the parties

as to both the amount and mode of payment for non-overtime hours *before* calculation of the

regular rate. The requirement of an *agreement* between the parties before making the regular

rate computation makes logical sense when employers choose to use unconventional payment

schemes, even if they are free to "choose from a virtually infinite array of compensation

arrangements designed to incentivize and reward employees, consistent with the needs and

realities of their business and the modern workplace." (ECF No. 22 at 13). An *agreement*

between the parties as to both the amount and *mode* of payment for non-overtime hours

necessarily entails an agreement relating to what *hours* the non-overtime compensation was

intended to cover, particularly when the mode of payment an employer chooses to pay an

employee is primarily on a "day rate" basis.[2]  The definition of the mode of payment (or "day") is of paramount importance. This is also underscored where, as here, the employer pays only a portion of the "day rate" when an employee works less than what the employer contends is a "full day" (*See Section IIA)*, or when an employer pays an extra sum when an employee works more than what the employer contends is a "full day." (*See Section IIB)*.

"As a matter of law, a *daily* or a weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week, unless there is evidence that the parties intended such an arrangement and that an explicit agreement was made." *Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012) citing *Chan v. Sung Yue Tung Corp.,* 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007).  Although there are cases that suggest an agreement is not required when an employer properly utilizes the "day rate" regulation, those cases involve an employer *actually* paying a valid day rate (a flat sum *without regard to the number of hours worked*) that complies with the requirements set forth in §778.112.  For example, in the case *Hartsell v. Dr. Pepper Bottling Co.,* the Fifth Circuit concluded that an agreement between employer and employee as to the regular rate of pay is not specifically required by the plain language of §778.112 but, rather, the requirement is only that the employee be, *in fact*, paid a day rate consistent with §778.112.  207 F.3d 269 (5th Cir. 2000).  *See also Dufrene v. Browning-Ferris, Inc.,* 207 F.3d 264 (5th Cir. 2000) (§778.112 applies where parties *stipulated* that employees were guaranteed a day's pay regardless of hours worked).  *Hartsell* has no application here. There were no allegations made in *Hartsell* (or *Dufrene)* that the employee was not *actually* paid a valid day rate that conformed with

---

[2] Of course, the South Carolina Payment of Wages Act ("SCPWA") also requires notification, *in writing*, as to wages and *hours* agreed upon *at the time of hire*.  *See* S.C. Code Ann. §41-10-30(A).  Neither Party has moved for summary judgment as to this claim at the present time.

§778.112.  For example, there was no allegation that employees' pay was docked when they worked partial days, an allegation in this case described further below.  Likewise, there was no allegation that employees were paid any "other form of compensation" in addition to the "day rate," another allegation in this case described further below.  In the event Defendants attempt to rely upon the plain language of §778.112 and *Hartsell* to argue that no agreement is specifically required under the *day rate regulation*, they are estopped from making such an argument as they have admittedly stated their payment scheme is a "hybrid payment scheme," *not* a day rate scheme, and that they are "not required to comply with §778.112 or comport with *any* of examples in the interpretive bulletin."  (ECF No. 22 at 22).  Here, the requirement of an "agreement" between the Parties does *not* derive from the day rate regulation but from the general rule (which Defendants ask this Court to apply) enunciated in *Walling* and its progeny.

Courts may look to many different facts in determining whether there was a clear mutual understanding between the parties.  While continuing employment over an extended period of time in which the employee receives the same salary each week no matter how many hours he or she works can constitute a mutual understanding between the parties in certain circumstances, courts have continuously held that contemporaneous complaint, protest, or questioning of pay practices is sufficient to combat any implied agreement.  *Zoltek v Safelite Glass Corp.,* 884 F. Supp. 283, 286 (N.D. Ill. 1995) (If an employee contemporaneously protests, there is no implied agreement despite continued employment.); *Grant v. The Shaw Group, Inc.,* 2012 WL 124399, at *11 (E.D. Tenn. Jan. 17, 2012) (plaintiff's questioning of his exempt status and his manner of compensation within three months of starting employment precluded a clear mutual understanding necessary for fluctuating workweek); *Perez v.*

*Radioshack Corp.*, 2005 WL 3750320, at *8 (N.D. Ill. Dec. 14, 2005) ("As long as the employee has agreed, without contemporaneous objection, to receive a fixed salary for fluctuating hours of work …").

Defendants have failed to provide any evidence or facts to support their contention that an *agreement* existed as to whether the Plaintiff's day rate was intended to compensate him for all hours worked, including those over 40. For example, Defendants loosely state with no factual support the following: "Turner's non-overtime wages (in the form of a job/day rate and hourly rate) provide the 'one . . . times the regular rate' component of the overtime compensation for hours worked (even those over 40)…" (ECF No. 22 at 15). However, the facts before the Court indicate directly the opposite - that the day rate was only intended to cover straight-time hours **up to 40 per week**. Jeronica Brown's New Hire Wage Statement, completed by Republic itself, unquestionably affirms that her day rate was intended to cover only *40 hours in a week*. (Ex. 2-A – New Hire Wage Statement). Likewise, Darren Turner's New Hire Wage Statement was left blank on the line for normal hours of work and he specifically recalls that he was verbally told and understood that the day rate was only intended to cover straight time hours up to 40 per week. (D. Turner Decl. ¶¶ 7, 8; Ex. 1-A). After their initial hires, Turner, Brown and other employees regularly complained about overtime pay issues in group staff meetings and in personal discussions with management. (D. Turner Decl. ¶¶ 10, 11; J. Brown Decl. ¶ 11). They were informed on each occasion that the company utilized "Chinese overtime." (D. Turner Decl. ¶ 11; J. Brown Decl. ¶ 12). Despite the fact that both continued employment with Republic, they did not cease their complaints about overtime pay.

Further evidence that Defendants did not intend the day rate to cover overtime hours

can be found in the manner in which they computed partial day pay on certain occasions when an employee worked less than a full day.  For example, on February 12, 2014, Republic paid Turner only $71.00 for 4 hours of work rather than his day rate of $142.00. (Ex. 3-D). In arriving at $71.00 Republic admits it divided Turner's day rate of $142.00 *by 8* ($17.75 per hour) and then multiplied $17.75 times 4 to reach $71.00. (Ex. 5; Defs.' Interrogs. 1) Defendants' choice of *eight* as the denominator is neither arbitrary nor inconsequential.  It is indicative of Republic's understanding and intent that the day rate was only intended to compensate an 8-hour day, five days per week (40 hours total).  This is consistent with the New Hire Wage Statements provided to both Brown and Turner.  (Ex. 1-A; 2-A).

The evidence also demonstrates that when Turner received pay increases from time to time, he was classified as an "hourly employee" and his rate of pay was identified as an hourly figure on Republic's own official Personnel Action Forms.  For example, on April 21, 2014, an official "Personnel Action Form" was completed when Turner received a pay rate adjustment. (Ex. 3-A). The Personnel Action Form notes that his "Current Pay Rate" was **$18.02 per hour** and his new pay rate would **be $19.02 per hour**. *Id.*  His salary class was also noted as "hourly." *Id.*  As Defendants correctly note, "under Section 778.110, when an employee 'is employed solely on the basis of a single hourly rate, the hourly rate is the regular rate' and the overtime rate is one and one-half times this 'regular rate.'" (ECF No. 22 at 19) citing 29 C.F.R. §778.110(a).  Using Defendants' own calculation method for hourly employees set forth under §778.110, the overtime rate for Turner as of April 21, 2014, would have been $28.53 per hour (1.5 x $19.02) if he was considered an "hourly employee," as set forth on his official Personnel Action Form.

To be sure, Turner's Personnel Action Form was not the only place throughout his

personnel file that he was termed an "hourly" employee. Each and every annual performance review he received classified him as an "hourly" employee. (Ex. 3-B). The standard Republic performance review form is entitled "Performance Review Field Operations Hourly Employees." *Id.* The form goes on to state that it should be used for "field Operations hourly roles…For example: Driver, Helper, Laborer, Operator, Security Guard, Sorter, and Spotter." *Id.* Likewise, the official "Paid Time-Off (PTO)/Tardy Standards" corporate policy that all drivers, including Turner, were required to sign states "[h]ourly employees are not eligible to take vacation or personal days until after they have worked 60 days from their hire date." (Ex. 3-C).

In its brief, Defendants offer a sample calculation of Turner's overtime pay for the week ending April 26, 2014. (ECF No. 22 at 7) Defendants' regular rate calculation, again, rests upon the assumption that the day rate paid each day (or non-overtime wages) compensated Turner for *all hours worked*, including those over 40. However, if Turner's overtime pay was calculated based on an alternative finding that the day rate only compensated him for hours up to 40 (and not overtime hours), the result would be different. Using Defendants' example, the correct calculation would appear as follows:

PROPER CALCULATION BASED ON 40-HOUR WEEK NON-OT AGREEMENT

Total Compensation / **40** x 1.5 = OT DUE

$760.65 / **40** = 19.02 (Regular Rate) x 1.5 = 28.52 (OT Rate)

$28.52 (OT Rate) x 12.90 (OT Hours) = $367.96 (OT Due)  - $278.23 (OT Paid) = $89.73 OT Due

The difference between the Parties' calculations is the divisor. In Plaintiff's example, total compensation is divided by 40 based on the facts supporting a finding that the day rate was

only intended to cover up to 40 hours per week and *not* overtime hours.  In Defendants' calculation, total compensation is divided by the total of *all hours worked*, including all overtime hours (52.90 in Defendants' example).  Plaintiff would have been entitled to $89.73 in additional overtime compensation under his calculation and using a divisor of 40.[3]  Thus, the consequence of Republic's failure to achieve a mutual agreement as to what hours the day rate was intended to cover (and the facts that *could* support a finding that this number was 40) is simple – the total compensation should be divided by 40 hours rather than *total hours worked.*

Republic has failed to offer any tangible evidence in support of its contention that there was an agreement between the Parties that the day rate was intended to cover all hours worked, including those over 40.  If Republic intended the day rate to cover all hours worked, it certainly could have stated so on the New Hire Wage Statement by indicating a range of hours such as 40-60.  The fact is, it did not. To the contrary, Republic specifically stated on Brown's form that the day-rate was intended to cover *40 hours*.  (Ex. 2-A). Likewise, Turner's form was blank and he was verbally informed that the day rate was only intended to cover 40 hours. (Ex. 1-A). Throughout a plethora of Defendants' own personnel forms, Turner and other drivers are consistently classified as "hourly employees."  (Ex. 3-A; 3-B; 3-C).  Even if Defendants could provide tangible evidence of an agreement between the Parties that the day rate (non-overtime compensation) was intended to compensate Plaintiff for hours worked *over* 40, which it cannot, this would only serve to affirm that a genuine issue of material fact exists as to whether the non-overtime compensation was intended to cover all hours worked or not. When viewing the facts in a light most favorable to the non-moving Party, a reasonable jury

---

[3] The example provided was for a week when Plaintiff only received a day rate each day with no additional incentive hourly compensation (help time, downtime, etc.).  In weeks where Plaintiff received hourly incentive pay, Defendant may be entitled to some offset for the hourly amounts already paid but this is a damages issue and not one before the Court at this time.

could conclude that the Parties intended the non-overtime compensation to only cover straight time hours up to 40.  As such, summary judgment should be denied.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE FACTUAL QUESTIONS EXIST AS TO WHETHER REPUBLIC UTILIZES A VALID DAY RATE PLAN.  29 C.F.R. § 778.112.[4]

### A.    Partial Day Deductions Invalidate the Day Rate.

In 2010, the Fifth Circuit Court of Appeals was tasked with determining whether the District Court's grant of summary judgment to the plaintiff in a day rate case was appropriate. *Solis v. Hooglands Nursery, LLC*, 372 F.Appx. 528 (5th Cir. 2010).  In affirming, the Fifth Circuit concluded that Hooglands Nursery did not pay its employees using a valid day rate plan because the employer docked employees' wages when they did not work a full day.  *Id.*  The plaintiff in Hooglands was Hilda L. Solis, Secretary of the Department of the Labor.  The Department of Labor made it very clear it was the Agency's official position that the day rate method and corresponding half-time overtime pay could not be utilized if an employer paid less than the full day rate when an employee worked less than a full day.[5]  *Id.*  An Agency's interpretation of its own regulation – including in a legal brief (like in *Hooglands*) – is "controlling unless plainly erroneous or inconsistent with the regulation." *Shipbuilders Council of Am., Inc. v. U.S. Cost Guard,* 578 F.3d 234 (4th Cir. 2009) citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *Hooglands* is directly analogous to the case before this Court.

In *Hooglands*, the employer's payroll records demonstrated that employees' wages were docked when they worked less than a full day.  *Hooglands* at 529.  For example, if an employee

---

[4] Although Defendants contend they pay employees under a "hybrid compensation plan" and are not required to comply with §778.112 or *any* of the "examples" set forth in the DOL interpretive guidelines, Plaintiff will analyze Defendants' compensation plan for compliance with the day rate regulation as the day rate is the primary form of compensation Plaintiff receives.

[5] The Department of Labor's appellate brief is attached as Exhibit 6.

worked four hours, he was paid less than he would have been paid had he worked eight hours. *U.S. DOL v. Hooglands Nursery, LLC,* 2008 U.S. Dist. LEXIS 46409 (W.D. La. June 13, 2008). On the other hand, if an employee worked more than 40 hours in a workweek, he was paid straight time (rather than 1.5 times) for the hours worked over 40. *Id.* In granting summary judgment for the plaintiff, the district court concluded that since Hooglands did not pay a flat rate **regardless of the number of hours worked**, Hooglands could not use the day rate plan's method of calculating overtime compensation (half-time pay). *Id.* Instead, Hooglands had to compensate its employees for overtime hours worked at one and one-half times the fixed regular rate. *Id.*

Here, Defendants did <u>not</u> always pay residential drivers a day rate, which is a flat amount for each day worked *regardless of the number of hours worked*. Despite the fact that Republic enjoyed the benefit of the day rate when employees worked more than 8 hours in one day, employees' wages were often docked when they worked partial days. Both Turner and Brown have provided evidence in the form of official payroll records that demonstrate the partial day deductions. (Ex. 2-B; 3-D). Notably, Brown has provided evidence of a minimum of at least six instances in which Republic docked her wages for working a partial day even though Plaintiff has not enjoyed the benefit of opt-in discovery and does not have access to her full payroll records (or the pay records of any other opt-ins). (Ex. 2-B). Republic has admitted to these partial day deductions, although it raises various explanations for the deductions ranging from inclement weather to allegations that the Plaintiff did not complete a full route (with no

supporting evidentiary or disciplinary documentation).[6] (Ex. 4 – Defs.' Interrogs. 1, 2; Ex. 5-Defs.' Req. Admis. 4, 5, 7, 11). Regardless of the excuse, the result remains the same – employees' wages were docked when they were worked less than a full day.  As the court reiterated in *Hooglands,* a day rate plan only exists if an employee is paid a flat sum for a day's work ***without regard to the number of hours worked in the day.*** *U.S. Dept. of Labor v. Hooglands Nursery, LLC*, 2008 U.S. Dist. LEXIS 46409 (W.D. La. June 13, 2008) *citing* 29 C.F.R. 778.112 (emphasis added).

The consequence of Defendants' failing to implement a valid day rate plan is simple. They are not entitled to utilize the day rate regulation's method of computing half-time overtime and §778.112 does not apply.  Defendants argue that if §778.112 does not apply "that does not mean that Republic violated the FLSA" and rather, "the rule of *Missel, Walling, Chavez, Allen,* and §778.109 would still apply – that is: (a) total wages divided by the total number of hours equals the regular rate…" (ECF No. 22 at 23).  Again, Republic's argument misses the mark.  As previously discussed, *Walling* and its progeny allow for a divisor of total hours worked (as opposed to 40) based on an *agreement* between the parties as to what hours (and tasks) the non-overtime compensation was intended to cover.  Republic may not claim reliance on the day rate regulation only for days when an employee works long hours and then disclaim the same regulation on certain days when the employee works fewer hours.

---

[6] Defendants use the term "day rate" and "job rate" interchangeably throughout their brief. However, there is no written evidence in Turner's personnel file to support a finding that Defendants agreed to pay Plaintiff "by the job," or to complete a set route or "job." Defendants' shifting description of the *mode of payment* only highlights the factual issues underlying the dispute.

**B.**     **"Other Forms of Compensation" Invalidate the "Day Rate."**

Defendants' practice of docking employees' pay for partial days worked is not the only reason that their purported "day rate" payment scheme fails to comply with 29 C.F.R. § 778.112. To be sure, in addition to requiring a flat sum for a day's work regardless of hours worked, the day rate regulation applies only to an employee who "receives no other form of compensation for services." 29 C.F.R. § 778.112. The regulation contains no exceptions or qualifications relating to its prohibition against combining a "day rate" with other forms of compensation. Here, Defendants paid Plaintiff with hourly incentive pay in addition to a flat "day rate."

Defendants argue that their combination of the day rate regulation with hourly pay is wholly permissible. Courts across the country have overwhelmingly held to the contrary. For example, the U.S. District Court for the Southern District of Florida has expressly stated that hourly pay in addition to a purported "day rate" is simply incompatible with the day rate regulation:

> Section 778.112 precludes its application unless the employee "receives no other form of compensation for services." The regulation does not provide definitional contours, nor is there case law to explain the clause. But the most logical and likely reasoning is that the regulation does not apply if one of the other forms of compensation delineated in the surrounding regulations is also utilized, or if the employee is given some other form of compensation separate and apart from the job rate. **For example, if besides a job rate, an employee also receives an <u>hourly rate</u>, salary, or commission, for some of his work, the job rate regulation would not apply.** To do otherwise would mean the employee was working at different rates, calculated in different ways either on the particular job for which a job rate is claimed or for different tasks. It thus might be totally impossible to convert any such time for which an employee was paid or should have been paid into a uniform regular hourly rate. **If another form of compensation is paid or should have been paid to the employee in addition to the supposed job rate, that practice would render the payment method as not being true pay per job, and thereby make Section 778.112 of no utility in computing a regular hourly rate.** That is the apparent concept behind the clause in the regulation.

*Rodriguez v. Carey Int'l, Inc.*, 2004 U.S. Dist. LEXIS 32589, at *21-22 (S.D. Fla. Sept. 10, 2004) (emphasis provided).

The *Carey* court went on to conclude that, because the "day rate" did not satisfy the requirements of § 778.112 since the employees received other forms of compensation, the day/job rate regulation was inapplicable and employees were entitled to time and a half for those overtime hours for which they received no straight time compensation. *Id.* at *22-28.

Likewise, the U.S. District Court for the Middle District of Louisiana has also held that payment of other forms of compensation in addition to a flat "day rate" render § 778.112 inapplicable for purposes of calculating the regular rate of pay. *Winget v. Corporate Green, LLC*, 2010 U.S. Dist. LEXIS 75440 (M.D. La., May 31, 2011). In *Winget*, the employee received a "day rate" and additional compensation for travel time and weekly meetings. The court ruled that such a scenario was "unlike the worker identified in § 778.112" and "thus, § 778.112 is inapplicable." *Id.* at *12. Here, Republic pays Plaintiff on an hourly basis for company meetings and sometimes, this hourly pay is the *only* pay that Plaintiff receives for the day if he attends a meeting.

The U.S. District Court for the Western District of Wisconsin, citing to *Winget*, also held that § 778.112 provides no room for interpretation in its prohibition against other forms of compensation. *Espenscheid v. DirectSat USA, LLC*, 2011 U.S. Dist. LEXIS 154706, at *79-80 (W.D. Wis. Apr. 11, 2011). There, the court observed that the day rate regulation "describes a system for calculating regular and overtime wages when an employee 'receives no other form of compensation for services.'" *Id.* at *79. Because the employees in *Espenscheid* received several other forms of hourly compensation in addition to a purported day rate for training time and nonproduction time, the court held that the defendants could not utilize § 778.112 to calculate the regular rate and corresponding overtime wages.

Other courts have noted that a day rate cannot be a *flat sum* if it is paid in conjunction with some other form of compensation.  This would be particularly true if the additional compensation was based directly upon the number of hours worked, as it is in this case. In *Cunningham v. Faerber's Bee Window, Inc.*, 2005 U.S. Dist. LEXIS 45166, at *13-15 (S.D. Ind. Apr. 19, 2005), the District Court for the Southern District of Indiana examined whether a purported day rate compensation plan could comply with § 778.112 if there were factual questions as to whether a true flat day rate was paid to an employee. The court observed that "critical to whether the Court should apply section 778.112 in this case is the existence of evidence to show that Maskell's daily rate was 'without regard to the number of hours worked.'" *Id.* at 13. In *Cunningham*, just as here, the employee asserted that he understood the daily rate "to apply only for the first eight hours of each day during a five-day workweek." *Id.* The court noted that "section 778.112 also requires that the employee be paid *only* 'a flat sum for a day's work' 'no other form of compensation' is allowed under this regulation".[7] *Id.* at 14. The court went on to hold that the question of "whether Maskell and Bee Window set Maskell's daily rate without regard to the number of hours Maskell actually worked is a genuine issue of material fact." *Id.* at 15.

Further it makes sense that a true day rate – "a *flat sum* for a day's work . . . *without regard to the number of hours worked in the day*" – would only exist for an employee "if he receives no other form of compensation for services." 29 C.F.R. § 778.112. Indeed, it would defy

---

[7] In *Cunningham*, the only other form of compensation paid to the employee was a commission. *Id.* at 14. ("In this case, as noted above, in addition to his daily rate Maskell received a commission on sales."). After observing that other forms of compensation are generally strictly disallowed under § 778.112, the court concluded that "despite this, another regulation, 29 C.F.R. § 778.117, does not consider commission an 'other form of compensation,' but rather part of 'a flat sum for a day's work.'" *Id.* at 14-15.  Section § 778.117, entitled "Commission Payments – General," relates solely to commission payments and has no application to hourly pay as is present in this case.

logic to claim that an employee is paid "a flat sum . . . without regard to the number of hours worked" if the same employee is also compensated with incentive pay at an hourly rate. Another "form of compensation" such as hourly pay is just as incompatible with the day rate regulation as it is with the fluctuating workweek regulation, which also prohibits extra hourly payment. Indeed, just last year, this Court invalidated the use of half-time overtime pay under 29 C.F.R. § 778.114 where the employees received hourly premium pay for working on scheduled days off and holidays, as well as for standby time. *Regan v. City of Charleston*, 142 F. Supp. 3d 442, 457-62 (D.S.C. 2015). Specifically, in *Regan*, Judge Patrick M. Duffy held:

> Many courts have held that paying employees extra to work on days they were scheduled to be off-duty is incompatible with the fixed-salary requirement. Such holdings are quite logical. **Paying an employee *more money* to work *more hours* is precisely the opposite of paying the employee a *fixed* weekly salary *regardless of how many hours the employee may work* in a given week.**

*Id.* at 40-41 (internal quotations and citations omitted) (emphasis added).

While the fluctuating workweek regulation relates to a fixed weekly salary as opposed to a fixed daily salary, courts have held that the language prohibiting additional compensation for daily salary employees found in § 778.112 is even stronger than the language to that effect found in § 778.114. For example, the U.S. District Court for the Southern District of Texas, unlike this Court did in *Regan*, stopped short of holding that non-discretionary bonuses invalidate the use of § 778.114, while stating that it *would* prohibit such additional compensation under § 778.112 due to the latter's stronger and unequivocal language prohibiting such other forms of compensation.

*Switzer v. Wachovia Corp.*, 2012 U.S. Dist. LEXIS 120582, at *7-8 (S.D. Tex. Aug. 24, 2012).[8]

Nevertheless, Republic argues that disallowing bonuses under a day rate pay scheme "would

upend how overtime on bonuses or commissions are calculated for employees paid, in whole or

in part, by a job/day rate." (ECF No. 22 at 29). Republic goes on to state "under Turner's logic,

an employee who receives a day rate cannot receive . . . a safety or attendance bonus without

transforming the half-time calculation method into a time and one-half method." *Id.* at 29-30.

But this is *precisely* what Judge Duffy held in *Regan* as it related to the fluctuating workweek

regulation – that an employer may not utilize the half-time calculation method if it pays bonuses

in addition to a fixed weekly salary and must instead use the time and one-half method. As the

day rate regulation has even stronger language prohibiting "other forms of compensation" than

the fluctuating workweek regulation does, there is no reason for concluding that a daily salary

would be treated any differently than a weekly salary in this regard.

Defendants cite to an unpublished decision from the Eastern District of Michigan that

they contend supports the proposition that the regulation's prohibition on other forms of

compensation does not really mean what it says and may be simply disregarded. (ECF No. 22. at

---

[8] The *Switzer* court stated that unlike § 778.112 (the day rate regulation), § 778.114 (the FWW regulation) "does not expressly preclude payment of such bonuses. Additionally, had the DOL intended to exclude any other payments, it clearly knew how to do so. For example, the DOL regulation relating to day rates and job rates, like the FWW method regulation, provides for overtime compensation at half-time pay. The 'day rate' regulation provides that the method of payment applies if the employee is paid a flat sum for a day's work 'and if he receives no other form of compensation for services.' The FWW regulation however, contains no similar provision precluding all other forms of compensation." *Switzer v. Wachovia Corp.*, 2012 U.S. Dist. LEXIS 120582, at *7-8 (S.D. Tex. Aug. 24, 2012). As set forth above, unlike the *Switzer* court, this Court recently held that such non-discretionary bonuses *would* in fact prohibit the use of the fluctuating workweek regulation even despite § 778.114's lack of language expressly prohibiting the use of "other forms of compensation" as is found in § 778.112. As such, there would be no reason to treat "other forms of compensation" paid in addition to a supposedly "flat" daily salary any differently than the Court has treated "other forms of compensation" paid in addition to a supposed "set" weekly salary as such additional payments are prohibited under *both* regulations.

24-25) (citing *Sexton v. BFI Waste Systems of North America*, 2002 U.S. Dist. LEXIS 26129 (E.D. Mich. Dec. 3, 2002). *Sexton* is distinguishable from this case for several reasons. First, the employee in *Sexton* complained of "special pay" and the court in that case was unable to determine what exactly was meant by that term or whether it was a component of the flat day rate or something else. Second, in this case, the Plaintiff undisputedly received hourly compensation – that is, compensation paid *on the basis of hours worked* – which is unquestionably "another form of compensation" disqualifying Defendants from relying on § 778.112 to calculate overtime owed to Plaintiff. Finally, at least one court has declined to follow *Sexton* under facts that are more analogous to this case than was *Sexton*, as further detailed below. *Rodriguez v. Republic Servs.*, 2013 U.S. Dist. LEXIS 147921, at *3 (W.D. Tex. Oct. 15, 2013).

### The *Rodriguez* and *Serrano* Decisions

Defendants' "hybrid day rate and hourly pay plans" have been analyzed by two separate district courts recently in the cases of *Rodriguez v. Republic Servs.*, 2013 U.S. Dist. LEXIS 147921 (W.D. Tex. Oct. 15, 2013) and *Serrano v. Republic Servs.*, 2017 U.S. Dist. LEXIS 412 (S.D. Tex. Jan. 3, 2017). *See also Rodriguez v. Republic Servs.*, 2013 U.S. Dist. LEXIS 112955 (W.D. Tex. Aug. 12, 2013). Accordingly, a review of the two decisions is in order.

### The *Rodriguez* Decision

The plaintiffs in *Rodriguez* brought a collective action against Republic for improperly utilizing § 778.112 to calculate their overtime pay at the half-time rate. In *Rodriguez*, just as here, Republic paid its *residential* waste disposal drivers on a "hybrid day-rate and hourly compensation plan." *Rodriguez*, 2013 U.S. Dist. LEXIS 112955, at *1-3. Specifically, in *Rodriguez*, Republic paid the drivers a flat purported "day rate" for the five regularly scheduled

work days of the week. Republic also required the employees to perform the same work on some Saturdays at the discretion of their supervisor, but paid them on an hourly basis rather than a day basis these days. In addition, Republic provided the employees with "incentive payments" of $10 for each day worked, including both the regularly scheduled weekdays and on the Saturdays that they worked.

Both parties filed cross motions for summary judgment on the employees' regular rate claim. Defendants' motion for summary judgment was denied and Plaintiffs' motion for summary judgment was granted. The *Rodriguez* court **twice** ruled against Republic for improperly paying its employees only half-time overtime under § 778.112 without complying with the clear language of the regulation.

In the first order, the court denied Republic's motion for summary judgment on the regular rate claim. Republic argued, just as it argues in this case, that hybrid payment plans that combine flat day rate pay with hourly and incentive pay did not violate the FLSA or § 778.112 because § 778.115 permits an employer to pay two different types of pay for two different types of work. After a brief discussion of § 778.112 and § 778.115, the court explained that § 778.115 was inapplicable to the case, because the employees had performed the same type of work at the two different rates and, therefore, could not substantiate the hourly pay on this ground. The court analyzed and disposed of Republic's three remaining arguments as well, all of which Republic now makes to this Court.

The *Rodriguez* court first rejected Republic's reliance on the same 1967 DOL opinion letter that it presents in this case. The *Rodriguez* court, however, distinguished the DOL letter because the employees there performed two different types of work and the employees in the case essentially performed the same type of work – collecting and disposing of waste – at both

pay rates. Republic next argued "that, when viewed in the proper context, the DOL regulation supports BFI's 'hybrid' compensation plan." *Rodriguez*, 2013 U.S. Dist. LEXIS 112955, at *12. The court once again rejected Republic's argument by pointing out that §778.115 applied only to employees undertaking different *kinds of work* at different rates of pay. *Id.* Finally, the court rejected Republic's argument that, even if its pay plan did not comply with § 778.112, it complied with § 778.111 – the regulation relating to employees compensated on a piece rate basis – which Republic asserted "endorsed" a hybrid pay plan such as its own. *Id.* at *14-15. "The Court [was] not persuaded by Defendants' analogy between BFI's hybrid compensation plan and the arrangement described in the piece rate regulation." *Id.* The court explained that the arrangement described in the piece rate regulation was distinguishable from Republic's "hybrid compensation plan" because the scenario in the regulation related to employees receiving a flat piece rate wage for their regular duties as well as an hourly rate to compensate them for *waiting time*. Accordingly, Judge Rodriguez denied Republic's motion for summary judgment on the regular rate claim and took plaintiffs' cross motion for summary judgment under advisement. *Id.*

Thereafter, Republic filed a motion for reconsideration of the order denying their motion for summary judgment on the regular rate claim. *Rodriguez v. Republic Servs.*, 2013 U.S. Dist. LEXIS 147921 (W.D. Tex. Oct. 15, 2013). In its second order, the court denied Republic's motion for reconsideration and granted plaintiffs' still pending motion for summary judgment on the regular rate claim. Using even stronger language the second time around, the court stated "[t]his Court is troubled by Defendants' argument" because the FLSA "dictates that the general rule is that an employee should receive overtime wages at one and one-half times the regular rate at which he is employed." *Id.* at *5. The court proceeded to point out that Republic's argument "flips the general rule onto its head allowing for any number of payroll methods to be employed

in order to pay overtime at only the half-rate, rather than one and one-half times." *Id.* at *5-6. The court went on to state:

> In this case the parties appear to agree that if Plaintiffs only worked Monday through Friday and Defendants had merely paid the Plaintiffs their day rate, section 778.112 would apply. In this scenario, rather than receiving overtime at one and one-half times the regular rate, Plaintiffs would only receive overtime at half-time the regular rate. For whatever business reasons, the employer here employed two additional compensation methods in the payroll system. To acquiesce to this system, however, the court would have to rewrite section 778.112 as follows: If the employee is paid a flat sum for a day's work ... without regard to the number of hours worked in the day . . . , ~~and if he receives no other form of compensation for services~~, his regular rate is determined by totaling all the sums received at such day rates . . . in the workweek  and dividing by the total hours actually worked.
>
> *Id.* at *6-7 (citing *Rodriguez v. Carey Intern., Inc.*, 2004 U.S. Dist. LEXIS 32589, at *22).

In granting the plaintiffs' motion for summary judgment, "the Court conclude[d] that Defendants improperly relied upon Section 778.112 in calculating the Plaintiffs' regular rate and that pursuant to 29 U.S. C. § 207(a), Plaintiffs should have received overtime compensation at a rate not less than one and one-half times the regular rate at which they were employed."[9] *Id.* at *7.

Republic argues that this Court should simply disregard the *Rodriguez* decision because it is factually distinguishable and "because it was wrongly decided." (ECF No. 22 at 30-32). In regards to Republic's former argument, they contend that, unlike the drivers in *Rodriguez*, Plaintiff received hourly pay for work that was *different* than the work for which he received day rate pay. *Id.* at 31. Plaintiff, however, collected and disposed of residential waste when paid at

---

[9] Although not directly raised by the parties or the court in *Rodriguez*, the argument that the employees were only paid hourly on Saturdays (as opposed to a flat day rate) is the same argument that has been raised in this litigation. That is – when an employee's pay is docked for working less than a full day (and he is paid only by the hour), the employee is ***not*** "paid a flat sum for a day's work . . . without regard to the number of hours worked in the day" as is required by § 778.112.

the day rate *and* when he received hourly pay for "help time," thus Defendants' argument in this regard is unclear because Plaintiff's job duties were *exactly the same*. To the extent that Republic's argument is that picking up waste in the afternoon is a "different type of work" than picking up waste in the morning for purposes of applying § 778.115, this argument was rejected by the *Rodriguez* court and should be rejected by this Court as well.

### The *Serrano* Decision

The plaintiffs in *Serrano* were waste disposal drivers in Texas who brought a collective action against Republic under the FLSA for failure to properly calculate their overtime wages. The parties filed cross motions for summary judgment on the plaintiffs' regular rate claim. The *Serrano* plaintiffs were compensated through various combinations of day, piece (e.g., per cubic yards or tons of waste collected, per haul, per home, etc.), and hourly rates, with the amount of pay received varying depending on the type of work. *Serrano v. Republic Servs.*, 2016 U.S. Dist. LEXIS 180801, at *12 (S.D. Tex. Oct. 26, 2016). The drivers analyzed in the Magistrate's Report and Recommendation ("R&R") were *industrial drivers and commercial drivers*. *Id.* at *12-14. The industrial drivers were paid in either one of two ways: (1) a piece rate amount of pay for each "haul" based upon the number of hauls made, a set "day rate," and an extra $10 per haul on Saturdays; or (2) a piece rate amount per "haul," a set "day rate," and "hourly pay for downtime in certain circumstances." *Id.* The commercial drivers were paid a piece rate amount per "lift" based upon the number of "lifts" made, a set "day rate," and "non-incentive" pay at a set rate for working one "non-incentive" hour. *Id.* at 14-15. In addition to arguing that their overtime pay had been miscalculated, the plaintiffs also subsequently filed a supplemental brief alleging that they had not been paid for all hours worked because they had to work more hours than defendants anticipated when the day rate amounts were determined. *Id.* at *16 n.3; *23 n.4.

28

Plaintiffs argued that the poor estimates of time covered by the day rate resulted in questions of fact regarding the number of hours worked or whether the compensation was intended to cover all of the time worked.

The Magistrate Judge issued an R&R granting summary judgment for the defendant and denying summary judgment for the plaintiffs. *Id.* In so ruling, the Magistrate differentiated the pay plan in *Rodriguez*, which related to *residential* drivers paid on a day rate and hourly basis, from the pay plans described in the *Serrano* case, which related to *industrial* and *commercial* drivers paid on a per haul/load piece rate basis. The Magistrate held that he "disagree[d] with Plaintiffs' contention that the *Rodriguez* case compels a ruling in Plaintiffs' favor." *Id.* at *35. In regards to the plaintiffs' argument that they had not been compensated for all hours worked due to the defendants' calculation of day rates using an estimate of non-production hours rather than the actual non-production hours worked, the Magistrate rejected this claim because he found the plaintiffs to have admitted that they were compensated for all hours worked in their responses to requests for admission and were thus bound to this purported admission.[10] *Id.* at *16 n.3; *23 n.4.

The plaintiffs filed an objection to the Magistrate's R&R on two grounds: (1) that the combination pay methodology was improper; and (2) that Defendants' pay calculations failed to account for on-the-clock, "non-production time." *Serrano v. Republic Servs.*, 2017 U.S. Dist. LEXIS 412 (S.D. Tex. Jan. 3, 2017). U.S. District Judge Nelva Ramos overruled plaintiffs' first objection and sustained the second objection. *Id.*

---

[10] The Magistrate also apparently believed that such claims had already been settled as part of a prior settlement between the parties as to plaintiffs' "off-the-clock" and unpaid lunch break claims. *Id.* at *16 n.3; *23 n.4. ("Since it is this Court's understanding that the parties have settled all 'off-the-clock,' the Court will construe Plaintiffs' claim as supporting its contention that Defendants acted willfully rather than as a new claim.") *Id.* The District Judge rejected the Magistrate's finding in this regard.

Judge Ramos rejected the plaintiffs' argument that the pay plan necessarily had to be analyzed as a day rate plan pursuant to § 778.112 and instead found that the pay plan in that case was more akin to a piece rate methodology and should thus be analyzed under § 778.111. *Id.* at *140-41. Judge Ramos determined that the piece rate regulation was more appropriate to the *Serrano* plaintiffs' hybrid piece rate compensation plan stating "it may not be a perfect fit because of the particular combination of pay rates Defendants use. **However *each of the exemplar Plaintiffs is paid*, in part, *with a piece rate*** and it is the closest analogous scenario in the regulatory examples." *Id.* at *141. (emphasis provided). Judge Ramos differentiated the pay plan utilized in *Rodriguez* with those utilized in *Serrano* on this basis because, unlike the plaintiffs in *Serrano*, the plaintiffs in *Rodriguez* were *not* paid, in whole or in part, with a piece rate. *Id.* at *143-45. The same distinction is present in this case because unlike the plaintiffs in *Serrano*, the Plaintiff in *this* case was *not* paid, in whole or in part, with a piece rate. To be sure, unlike the *Seranno* plaintiffs, Turner – a *residential* driver – did not receive piece rate pay on a "per-haul," "per-lift," or other piece basis as the *Serrano* commercial and industrial drivers did. Thus, *Serrano* is distinguishable in this respect as Defendants have only moved for partial summary judgment as to Plaintiff Turner. Another crucial distinction between *Serrano* and the underlying case is that there was no allegation in *Serrano* that the plaintiffs' pay had been docked for working partial days. Thus, there was no analysis or discussion of the *Hooglands* decision or the effect of partial day deductions.

While Judge Ramos found *Rodriguez* to be distinguishable because the *Serrano* plaintiffs were more akin to piece rate workers for whom § 778.111 should apply, the application of the piece rate regulation to the plaintiffs created additional dilemmas for Republic. Judge Ramos overruled the Magistrate's conclusion that summary judgment should be granted on the issue of

30

whether the "day rate" was intended to cover all hours worked in the day. *Id.* at *147-48. Judge Ramos found that there were factual issues as to whether defendants' pay calculations and estimation of hours for which the "day rate" was intended to cover fully compensated plaintiffs for *all* of their *actual hours worked* – as opposed to only their *estimated* hours – including all nonproduction time, such as downtime and time spent at the landfill. *Id.* at *147-48. The case is scheduled for trial on February 13, 2017.

### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE IT DOES NOT UTILIZE A VALID PIECE RATE PLAN.  29 C.F.R. § 778.111.[11]

Republic's "hybrid pay plan" is no more compliant with the piece rate regulation codified at 29 C.F.R. § 778.111 than it is with the day rate regulation. The piece rate regulation expressly requires a mutual agreement that the "piece rate" will compensate the employee for all hours worked, including nonproductive hours, in order to pay overtime at the half-time rate. 29 C.F.R. 778.318(c); *See also Espenscheid*, 2011 U.S. Dist. LEXIS 154706, at *81.   In the absence of such an agreement, the employee is owed compensation "at a rate at least one and one-half times the [regular] rate for hours in excess of 40." *Espenscheid* at *81 (citing 29 C.F.R. 778.318(b); 29 U.S.C.  207(a)(1)); *See also Brasfield v. Source Broadband Servs., LLC*, 2010 U.S. Dist. LEXIS 84411, at *10 (W.D. Tenn. Aug. 16, 2010);  *Schmidt v. DIRECTV, LLC*, 2016 U.S. Dist. LEXIS 16410, at *9 (D. Minn. Jan. 22, 2016) ("Where there is no agreement between the employer and employee that the piece-rate pay includes productive and non-productive hours, the FLSA is not satisfied." (citing 29 U.S.C. § 207(g); 29 C.F.R. §778.318)).

---

[11] Defendants have never articulated exactly what they contend the "piece" of the piece rate plan to be.  Plaintiff has never received payment via a "piece" nor do any of the employment records indicate that his payment is made by the "piece."  Unlike the plaintiffs in the *Serrano* case who were paid on a "piece" rate, Turner was not.  Thus, the piece rate regulation has little, if any, application to the underlying litigation.

Part of the "agreement" requirement relates to payment for nonproduction time, or time worked by an employee that is not directly related to the "production" of the "piece." This distinction between payment for productive time and payment for nonproductive time is a unique aspect of the piece rate regulation. Here, there is no evidence that Plaintiff and Republic had such an agreement. Republic stated in its discovery responses that the purported "day rate" amount covered not only Turner's "daily route," but also "all related/predicate/corresponding duties necessary to perform his route." (Ex. 5 - Defs.' Interrogs. 1). Thus, it seems as though Defendants' position is that all work, including nonproduction work, is compensated as part of the "day rate."   An agreement to this effect, however, is required between employer and employee pursuant to 29 C.F.R. § 778.318(c) in order for this to be so. Republic has not alleged, much less produced evidence to support, the existence of any such agreement as to whether all, some, or none of Plaintiff's nonproduction time would be compensated by and through the "piece" rate.

## <u>CONCLUSION</u>

Even assuming, *arguendo,* that Republic is "free to choose from an infinite array of compensation arrangements," any such arrangements must be premised upon a mutual understanding as to the basis of all *non-overtime* wages.  If the calculation of the non-overtime wages and corresponding regular rate is incorrect, the calculation of the resulting overtime rate is incorrect as well.  Here, Plaintiff has submitted ample evidence that the day rate was only intended to compensate residential drivers for up to 40 hours per week and that straight time wages were not calculated correctly at all times.  Republic has wholly failed to address how Turner's total non-overtime wages provide compensation for all hours worked in a workweek

(including hours over 40).  That is because Republic knows these issues are grounded in fact. As such, summary judgment should be denied.

FALLS LEGAL, LLC


s/ J. Scott Falls
J. Scott Falls
Federal I.D. No.  10300
E-mail:  scott@falls-legal.com
Ashley L. Falls
Federal I.D. No. 12083
E-mail:  ashley@falls-legal.com
245 Seven Farms Drive, Suite 250
Charleston, South Carolina 29492
Telephone: (843) 737-6040
Facsimile:  (843) 737-6140


WERMAN SALAS P.C.

Douglas M. Werman
IL Bar No.: 6204740
E-mail:  dwerman@flsalaw.com
Zachary C. Flowerree
IL Bar No.: 6305935
E-mail:  zflowerree@flsalaw.com
77 W. Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
Facsimile:  (312) 419-1025

**Counsel for Plaintiff Darren Turner on behalf of himself and all others similarly situated**

Charleston, South Carolina

January 16, 2017