**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DARREN TURNER, on behalf of himself and others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) BFI WASTE SERVICES, LLC d/b/a ) REPUBLIC SERVICES; REPUBLIC ) SERVICES OF SOUTH CAROLINA, LLC ) d/b/a REPUBLIC SERVICES; and ) REPUBLIC SERVICES, INC., ) ) Defendants. ) ) | No. 2:16-cv-02864-DCN  **ORDER** |

      This matter is before the court on a motion for partial summary judgment filed by defendants BFI Waste Services d/b/a Republic Services, Republic Services of South Carolina, LLC d/b/a Republic Services, and Republic Services Inc. (collectively "Republic") and a motion for conditional class certification pursuant to the Fair Labor Standards Act ("FLSA") filed by plaintiff Darren Turner ("Turner"). For the reasons set forth below, the court denies Republic's motion for partial summary judgment and grants Turner's motion for conditional class certification.

**I.  BACKGROUND**

      Turner is a residential waste disposal driver for Republic. Turner originally worked at Republic's North Charleston, South Carolina location. On April 22, 2014, he transferred to Republic's Concord, North Carolina location. For completing his trash collection route, Turner was paid a "day rate," which was $135.00 per day at the time of his initial hire in North Charleston, South Carolina and $152.13 per day in Concord,

1

North Carolina. ECF No. 44 at 2. In addition to this day rate, Turner was paid on an hourly basis for a variety of required tasks, including: (1) "help pay" for time spent collecting trash on another employee's route, and (2) "downtime" for when his truck was inoperable, when he was attending a safety meeting, or when he was training another driver. The hourly rates were added together with the "day rate" to come to the "total wages" for the week, which was divided by the total number of hours worked during the week to arrive at the "regular rate" of pay. When calculating overtime, Republic would pay half of that regular rate as the overtime premium.

After Turner began his employment at the North Charleston, South Carolina location of Republic, he was allegedly regularly required to work more than 40 hours per week. Turner alleges that he and other drivers received only half-time pay for hours worked over 40, instead of receiving overtime at a rate of time and a half the "regular rate" based on a 40-hour work week. On August 17, 2016 Turner filed suit citing violations of the FLSA's overtime provisions, alleging that: (1) Republic miscalculated his and other drivers' regular rate of pay, paying them overtime at an illegally low rate of pay ("regular rate theory"), and (2) Republic automatically deducted a thirty minute meal break each shift even though drivers regularly worked through the meal period, thus failing to pay all owed overtime ("meal break theory").

Turner filed a motion for conditional certification of a collective action under the FLSA on October 4, 2016, ECF No. 15, to which Republic responded on November 1, 2016, ECF No. 25, and Turner replied on January 16, 2017, ECF No. 44. Republic filed a motion for partial summary judgment on Turner's regular rate claim on November 1, 2016, ECF No. 25, to which Turner responded on January 16, 2017, ECF No. 44, and

2

Republic replied on February 7, 2017. ECF No. 49. The court held a hearing on March 8, 2017. After the hearing, Republic filed supplemental briefing on April 10, 2017 to which Turner responded on April 13, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

### A.  Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a

party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### B.     Motion for Conditional Certification

Under the § 216(b) of the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and other similarly situated employees. The collective action procedures of § 216(b) require similarly situated employees to give their consent before joining a collective action.  Id.  "In order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b)  . . . by facilitating notice to potential plaintiffs.'"  Purdham v. Fairfax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  To obtain the benefits of this court-approved notice procedure, plaintiffs must demonstrate that the proposed class members are "similarly situated" and that notice is "appropriate." Id. at 548.  Notice is "appropriate" where the proposed class members' claims "share common underlying facts and do not require substantial individualized determinations for each class member."  Id.; MacGregor v. Farmers Ins. Exch., No. 2:10-cv-03088, 2012 WL 2974679, at *2 (D.S.C. July 20, 2012).  Ordinarily, the plaintiff's burden at the conditional certification stage is fairly lenient, requiring only a modest factual showing that members of the proposed class are "victims of a common policy or plan that violated

4

the law." Purdham, 629 F. Supp. 2d at 547–48; Regan v. City of Charleston, S.C., No. 2:13-cv-3046, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014) reconsideration denied, 40 F. Supp. 3d 698 (D.S.C. 2014); Essame v. SSC Laurel Operating Co. LLC, 847 F. Supp. 2d 821, 824–25 (D. Md. 2012).

## III.   DISCUSSION

### A.   Motion for Partial Summary Judgment

Republic moves for partial summary judgment on Turner's FLSA claim that Republic failed to pay Turner overtime at a rate not less than one and one-half times his regular rate of pay (the "regular rate claim"). The court finds that there is a genuine issue of material fact sufficient to preclude summary judgment as to whether there was a "clear and mutual understanding" that Turner was truly an hourly employee such that the regular rate for the purpose of overtime calculations should have been Turner's hourly wage.[1]

#### 1.   Calculating Regular Rate of Pay

Although the parties spend most of their copious briefing discussing the many contours of the regular rate claim, the key dispute is over the method that Republic used to calculate Turner's regular rate for overtime purposes—for ease of reference, the court refers to this as the "divisor claim." Republic's first step in calculating the regular rate over a particular week is to total the week's "straight time" pay, calculated using the

---

[1] Republic submitted additional timesheets and briefing under the guise of "supplemental exhibits" on April 10, 2017. ECF No. 51. These supplemental exhibits were filed on April 10, 2017, one month after the motions hearing and many months after the motions were ripe. Republic offered no justification for why these supplemental exhibits were required. The submission of these supplemental exhibits appears to be a second bite at the apple, a practice the court cannot countenance. Accordingly, the court did not consider these supplemental exhibits in rendering its decision.

5

day/job rate, and add-ons, or the additional hourly payments that Turner receives for training, meetings, and other tasks. The parties seem to agree on this total value, but disagree as to the second step—whether this total value should be divided by the "normal workweek" of 40 hours or by the hours actually worked. Republic divided Turner's compensation for the week by the number of hours actually worked. ECF No. 22 at 2. Turner contends that Republic erred by not dividing compensation by a normal workweek of 40 hours. ECF No. 44 at 3. Therefore, the question before the court is whether Republic violated the FLSA by calculating the hourly regular rate by dividing weekly compensation by hours worked rather than by a 40-hour workweek.

The FLSA "generally requires employers to compensate employees at the overtime rate for all work performed over 40 hours per week." Roy v. Cty. of Lexington, 141 F.3d 533, 538 (4th Cir. 1998); see also Flood v. New Hanover Cty., 125 F.3d 249, 251 (4th Cir. 1997) ("As a general rule, the FLSA provides that an employer may not employ an employee for a workweek longer than forty hours unless it pays its employee one and one-half times the employee's 'regular rate' for all hours in excess of forty."). Employees are due overtime compensation regardless of whether they work on an hourly, 29 C.F.R. § 778.110, piece-rate, 29 C.F.R. § 778.111, day or job rate, 29 C.F.R. § 778.112, salary, 29 C.F.R. § 778.113, commission, 29 C.F.R. §§ 778.117 to 778.120, or other basis. A non-exempt employee's "regular rate" of pay provides the basis for calculation of his overtime rate.

The viability of Turner's regular rate claim turns on the purely legal question of whether the regular rate should be calculated by dividing by total hours worked or the number of hours in the employee's regular workweek. A number of courts have ruled on

the divisor issue, interpreting the Department of Labor ("DOL") regulation on calculating overtime pay based on the "regular rate," which states that:

> [T]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109.  In Chavez v. City of Albuquerque, 630 F.3d 1300, 1312 (10th Cir. 2011), the Tenth Circuit found that compensation is divided by total hours worked and not the "normal workweek" of 40 hours.  Similarly, in Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 330 (3d Cir. 2016), the Third Circuit held that the divisor "includes all hours worked."  The court agrees, and holds that the proper divisor for a regular rate claim is hours worked.

To the extent that Turner argues that the FLSA requires that he receive the regular rate for all hours worked and one and one-half of the regular rate for overtime hours, this would lead to Turner receiving two and one-half times his regular rate for overtime hours.  The FLSA does not require this.  The Chavez court found it proper that the employer used a one-half multiplier, where the city first applied the "regular rate" to all hours worked by an employee and then gave one-half of the regular rate as the overtime "premium" for all hours worked over 40.  Chavez, 630 F.3d at 1313.  Similarly here ,a review of Turner's payroll records demonstrates that Republic pays the regular rate, with actual hours worked as the divisor, and an additional one-half of the regular rate for overtime hours.  This use of a one-half multiplier does not violate the FLSA.

In line with the plain language of Section 778.109 and cases from other circuits establishing that the proper divisor for calculating the regular rate is hours worked, the court holds that the FLSA hourly regular rate is calculated by dividing the total weekly

7

compensation by the actual hours worked rather than by the "normal workweek" of 40 hours.

### 2. Hybrid Payment Scheme

Turner next contends that summary judgment is precluded because there is a genuine issue of material fact as to whether there was a "clear and mutual agreement" that the day rate was intended to cover only up to 40 hours per week or whether it was also intended to cover all hours worked, including overtime hours. ECF No. 44 at 8. It is unclear that the presence of a mutual agreement regarding daytime hours worked is relevant for calculating the divisor for purposes of calculating the regular rate. Certainly, Turner has cited no caselaw or DOL regulations to support this argument. However, the lack of mutual understanding is certainly important to determine if Republic's self-termed "hybrid compensation scheme" is in actuality a fluctuating pay plan within the meaning of 29 C.F.R. 778.114 such that Turner and other opt-in plaintiffs must have reached a clear and mutual understanding for the method by which Republic calculated the regular rate to be valid under the FLSA.

In itself, a fluctuating pay plan does not violate the FLSA. This is true even though under such a plan, the longer the hours an employee works the less the earnings per hour. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579–80 (1942). "[E]mployees may, in practice, be paid in a variety of other ways." Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 672 (7th Cir. 2010); 29 C.F.R. § 778.109 (stating that "[t]he 'regular rate' under the [FLSA] is a rate per hour" and that section 778.114 and other sections "give some examples of the proper method of determining the regular rate of pay in particular instances"). However, employers cannot construct

compensation plans meant to avoid paying requisite amounts of overtime under FLSA. Chavez, 630 F.3d at 1312 (holding that even though using the "hours worked" divisor causes the overtime bonus to diminish as overtime increases, this result does not violate the FLSA "[a]bsent evidence of an intent to manipulate compensation to avoid FLSA liability"). It is just this "intent to manipulate compensation" in an effort to sidestep the remedial nature of the FLSA that concerns the court in this case.

According to Republic, the "hybrid compensation scheme" under which Turner was paid is a combination of a day rate and additional hourly compensation. Turner's New Hire Wage Statement states that Turner would be paid $135.00 per day at the North Charleston facility, and his transfer offer letter indicates that he would be paid $152.13 per day at the Concord facility. ECF No. 44 at 1–2. But in addition to the day rate, Turner was paid additional amounts on an hourly basis for tasks including shadowing new employees and attending meetings. ECF No. 44 at 4. This alone precludes Republic's argument that Turner is paid under a day rate. The regulation that sets forth how to calculate overtime for employees paid on a day rate basis specifically provides that:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and <u>if he receives no other form of compensation for services</u>, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112 (emphasis added). Furthermore, on days that Turner worked less than an 8-hour day, Republic compensated Turner only for those hours that he worked instead of paying Turner his full day rate. ECF No. 44 at 3. Given that Turner was not

paid the day rate for a partial day of work, it is clear that Turner was not a day-rate employee as the DOL and courts have interpreted the term to mean.  See Dufrene v. Browning–Ferris, Inc., 207 F.3d 264, 266 (5th Cir.) (describing day-rate employees as those employees who "were guaranteed a day's pay, regardless of the hours worked that day"), cert. denied, 531 U.S. 825 (2000) (emphasis added).  Having established that Turner was not paid a day rate, the court turns to whether Republic's hybrid compensation scheme violated the FLSA.

The most analogous example to Republic's hybrid compensation scheme is the fluctuating workweek, where an employee's regular weekly or bi-weekly salary is intended to compensate for however many hours are worked during that period, and the hourly rate of pay for a particular week is then determined by dividing the compensation not by a fixed number of hours but by the actual hours worked during that week.  See 29 C.F.R. § 778.114 (explaining the fluctuating workweek scheme).  The fluctuating workweek scheme provides an alternative means by which an employer can determine employees' regular and overtime rates of pay.  Flood v. New Hanover Cty., 125 F.3d 249, 252 (4th Cir. 1997).  This scheme is only appropriate where there is a "clear, mutual understanding" that the employer will pay the employee the fixed weekly salary regardless of the hours worked.  Griffin v. Wake Cty., 142 F.3d 712, 715 (4th Cir. 1998) (internal citations and quotations omitted).  Where there is no evidence in the record that the plaintiff clearly understood that his salary was intended to compensate him for any hours worked, and where the plaintiff introduces evidence that personnel were normally expected to work a 40 hour week, courts have found that the fluctuating workweek method was inapplicable.  See Dingwall v. Friedman Fisher Associates, P.C., 3 F. Supp.

2d 215 (N.D.N.Y. 1998) (finding that where no evidence in record that plaintiff "clearly understood" that salary was intended to compensate him for any hours worked, overtime compensation could not be computed using the fluctuating workweek method).

Here, the New Hire Wage Statement that Turner signed indicated that Turner would be paid $135.00 per day, but the line indicating the "normal hours of work" was left blank. ECF No. 44, Ex. 1 Addendum Turner New Hire Wage Statement. Furthermore, the transfer offer letter for Turner's transfer from the North Charleston facility to the Concord facility did not indicate how many hours the day rate was intended to compensate for. ECF No. 44 at 2. Turner testifies that at the time of his initial hire, he was verbally told by Republic that the $135.00 per day was intended to cover 40 hours per week, and it was his understanding that the day rate was not intended to cover hours over 40. ECF No. 44, Ex. 1, Turner Declaration ¶ 8. While Section 778.114 does not dictate that an employee must understand the manner in which his overtime pay is calculated, it does state that if a fluctuating pay plan is used then the employer and employee must have a clear mutual understanding that the fixed salary—here, the fixed salary is the "day rate" and the additional compensation for the other tasks that Turner worked—is compensation for all hours worked each workweek rather than some fixed weekly work period. That understanding is missing here.

Republic contends that no "clear, mutual understanding" between Turner and Republic was required because it was a "hybrid compensation scheme" as opposed to a "fluctuating workweek" scheme. The court cannot countenance such a position. A review of the payroll records demonstrates that the practical consequence of Republic's hybrid compensation scheme is that Turner worked a larger number of hours for a lower

11

rate of pay. While this is not a per se violation of the FLSA, it raises questions about the validity of the hybrid compensation scheme itself—especially given that Republic repeatedly asserts that it has the flexibility to create such a compensation scheme, but that its scheme is not subject to the "clear, mutual understanding" requirement. From a policy perspective, Republic's "hybrid compensation scheme" appears to be just the type of compensation scheme that undercuts the statutory purposes of the FLSA. A number of internal company documents refer to Turner and other drivers as "hourly" employees, yet Republic calculated overtime in such a way that led to Turner working larger number of hours for an increasingly lower rate of pay. While the FLSA affords considerable flexibility to establish a regular rate so long as the minimum hourly rates are respected, this does not include the "right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes." Walling v. Helmerich & Payne, 323 U.S. 37, 42 (1944).

Ultimately, the court finds that there is a genuine issue of material fact there was "clear mutual understanding" between Republic and Turner on whether the day rate was intended to compensate for 40 hours per week or all hours worked, as well as what type of work his day rate was intended to cover.[2] Accordingly, the court denies summary judgment on the regular rate claim.

---

[2] While the parties do not discuss this at length, the court notes that there is evidence in the record that raises the question of whether Turner was a "hybrid" employee or if he was truly an hourly employee. This evidence is sufficient to raise the question of whether Republic should have been calculating the regular rate based on the hourly rate that Turner was being paid as opposed to its so-called "hybrid compensation scheme."

For example, when Turner received raises, the Personnel Action Forms reflected pay rate adjustments in terms of an "hourly" pay rate as opposed to a day rate. For example, the Personnel Action Form for Turner's April 21, 2014 raise described an

### B.      Motion for Conditional Certification

Turner next moves for conditional class certification, and asks the court to approve his proposed notice to similarly situated residential waste disposal drivers so that such employees may "opt-in" to the suit.[3]  The court grants the motion in full.

---

increase in Turner's pay rate from "$18.12 per hour" to "$19.12 per hour."  ECF No. 44, Ex. 1, Turner Declaration ¶ 4; ECF No. 44, Ex. 3-A, Republic Services Personnel Action Form.  Additionally, Turner's annual performance reviews referred to drivers—which the performance review specifically lists Turner's job title as—as "field operations hourly employees."  ECF No. 44, Ex. 3-B, Republic Services 2013 Performance Review; Republic Services 2014 Performance Review; Republic Services 2015 Performance Review.  Finally, the Republic policy regarding paid time-off and tardiness standards that Turner signed states that "hourly employees are not eligible to take vacation or personal days until after they have worked 60 days from their hire date."  ECF No. 44, Ex. 3-C, Republic Services Paid Time Off/Tardy Standards.  Even in the face of these internal human resources documents that refer to Turner as an "hourly" employee, Republic continues to refer to him, and other drivers, as "hybrid" employees and payroll production work sheets demonstrate that pay is calculated per day.
     The court pressed Republic on this during the hearing, asking if a rational jury could find, based on Turner's paperwork and how his raise was calculated, that he was—or at least believed that he was—an hourly employee.  Tr. 18:11–14.  Republic responded that "what some documents would refer to the [] employee as" was irrelevant in the determination of whether Turner was an hourly employee.  Tr. 18:15–21.  That may be, but at the very least, these internal personnel documents referring to Turner as an hourly employee contributes to the lack of "clear and mutual understanding" between Republic and Turner that Republic would pay Turner his fixed salary even where he worked less than a full-time schedule on a particular day.
     Of course, if Turner and other drivers like him are truly "hourly employees," then Republic's method of calculating the regular rate is improper.  Under the FLSA, an employee's regular rate is calculated as an hourly rate.  29 C.F.R. § 778.109; see also Urnikis–Negro, 616 F.3d at 673 ("For purposes of the overtime calculation, an employee's regular rate of pay is the amount of compensation he receives per hour." (citing 29 C.F.R. § 778.109)).  If Republic had calculated Turner's regular rate of pay as an hourly employee, a review of the payroll records attached to Turner's motion for summary judgment demonstrate that Turner would almost certainly be owed overtime under the FLSA.  In any event, if Turner is an "hourly" employee, then Republic should have calculated Turner's hourly rate as the regular rate for his work.  Since the court denies summary judgment on the "clear and mutual understanding" ground, it does not make a finding on this ground.
     [3] During the hearing, Turner clarified that the conditional class would consist only of residential waste disposal drivers, as opposed to the class of "residential, industrial, and commercial drivers" referred to in the briefing.  Tr. 22:21–25.

13

### 1. Conditional Class Certification under FLSA

Turner moves for conditional collection action certification under FLSA. Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and other employees. Section 216(b) of the FLSA states that:

> [a]n action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Collective action certification occurs in two stages: the "notice stage" and an optional final stage. Id. "During the "notice stage," which is the subject of the current motion, the court reviews the pleadings and affidavits to determine whether plaintiffs have sufficiently demonstrated that they are "similarly situated" to other putative members in an FLSA action. See Steinberg v. TQ Logistics, Inc., 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011). If the court finds that the proposed class members are "similarly situated," the court will conditionally certify the class and permit notice. Id. The second stage of collective action certification occurs after discovery if the defendant moves for decertification. It is during this stage that the court applies a "heightened fact-specific standard to the 'similarly situated' analysis." Id. at *2. At the notice stage, plaintiffs must simply demonstrate that there is "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." Heagney v. Eur. Am. Bank, 122 F.R.D. 125, 127 (4th Cir. 1988); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008) ("[P]laintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees.").

14

Republic offers extensive briefing on the merits of the meal break theory in opposing the motion for conditional action certification, even attaching eighteen driver declarations to support its position that potential members of the proposed collective action differ in whether they routinely worked through their meal breaks. ECF No. 25 at 2. Republic's theory opposing class certification appears to be that drivers who worked through their meal breaks did so, if at all, because of enforcement decisions of individual supervisors as opposed to a company-wide policy or plan directing those enforcement decisions. Id.

In its briefing opposing class certification, Republic never argues that Turner has failed to show that he was similarly situated to other drivers in the way that Republic calculated his regular rate of pay. Now, Republic does drop a footnote in its reply on the motion for partial summary judgment on the regular rate claim stating that "conditional certification is not appropriate on the regular rate claim because it would require individualized inquiries regarding 'many different facts in determining whether there was a clear mutual understanding' between each [putative collective action member] and Republic." ECF No. 49 at 2. Simply put, this footnote in an entirely different motion does not serve as an argument that Turner has failed to satisfy his burden to send notice on the regular rate theory. However, it is unclear if Republic objects to collective action certification on the regular rate claim or solely on the meal break claim. Certainly, its briefing focuses on the meal break claim. In any event, Turner's FLSA overtime claim is premised on two adequate and independent grounds—first, that Republic improperly calculated the regular rate for the payment of overtime, and second, that Republic improperly instructed drivers to routinely work through their meal breaks. Since the

court denies Republic summary judgment on the regular rate ground, Turner's theory that Republic improperly calculated the regular rate because there was no "clear, mutual understanding" that compensation was for hours worked each workweek is enough for the survival of the FLSA overtime claim. The court need not delve into the merits of the meal break claim.

Turner has submitted sworn declarations and other evidence to establish that he and other drivers were similarly situated in the way that Republic calculated their regular rate for overtime purposes. ECF No. 15, Ex. 1, Turner Declaration; Ex. 2, Brown Declaration; Ex. 3, Moreno Declaration. This satisfies the modest factual burden of showing that the proposed class of residential waste disposal drivers are similarly situated. Given the fairly lenient standard at this first stage, the court grants conditional certification. After plaintiffs have the benefit of opt-in discovery, if Republic chooses to file a motion to decertify the class, the court will at that point examine the claims in-depth to determine if the regular rate claim would require too many individualized inquiries to withstand class certification. The level of scrutiny that Republic asks the court to apply to Turner's claims at this initial notice stage of certification is inappropriate.

### 2. Proposed Method of Distributing Notice

Turner moves for court-authorized notice, and details its proposed notice and consent to join. ECF No. 15 at 9. Specifically, Turner asks the court to enter an order: (1) requiring Republic to provide Turner's counsel with the full name, dates of employment, location of employment, division of employment, email address, and latest known mailing address for every residential, commercial, or industrial waste disposal

16

driver employed by Republic in South Carolina or North Carolina at any point in the last three years; (2) authorize the mailing of the proposed notice and consent to join through U.S. Mail; (3) authorize the emailing of the proposed notice and consent to putative class members; (4) require defendants to provide the last four digits of the social security number of any potential collective action member for whom the mailed notice is returned as undeliverable so that Turner's counsel can obtain a more current address for potential opt-in; and (5) authorize a follow-up email notice reminder 30 days after the initial notice is sent to all potential collective action members who have not yet opted into the case. ECF No. 15 at 10–11.

Plaintiffs' requested methods of providing notice to potential collective action members are appropriate, and Republic's consternation that the court should modify the proposed notice to ensure that "potential plaintiffs can make informed decisions about whether to participate" is largely illusory. However, the court agrees with Republic that the proposed notice should be modified to advise prospective opt-in plaintiffs that they could be subject to Republic's costs of defending the case if Republic ultimately prevails. The court finds persuasive the reasoning in Garcia v. Elite Labor Serv., Ltd., 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996), where the court modified the notice to include a statement that "if you do not prevail on your claim, court costs and expenses may possibly be assessed against you." Finally, Republic claims that distributing notice through email and sending a reminder email notice is inappropriate because Republic does not have a database of email addresses for drivers. ECF No. 25 at 34. If Republic does not have a cache of email addresses for its drivers, requiring notice and reminder notices to be sent out through email may be futile. The parties did not discuss the notice

issue at the hearing, and the court trusts that the parties can work out the logistics amongst themselves.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Republic's motion for partial summary judgment and **GRANTS** Turner's motion for conditional class certification. Further, the court approves with modifications Turner's proposed methods of distributing notice.

**AND IT IS SO ORDERED**.

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**August 7, 2017**
**Charleston, South Carolina**