IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Darren Turner, on behalf of himself and all others similarly situated, | ) ) ) | Civil Action No. 2:16-cv-02864-DCN |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF CONFIDENTIAL SETTLEMENT OF COLLECTIVE ACTION** |
| BFI Waste Services, LLC d/b/a Republic Services; Republic Services of South Carolina, LLC d/b/a Republic Services; and Republic Services, Inc. | ) ) ) ) ) | |
| Defendants. | ) ) | |

Named Plaintiff Darren Turner ("Turner" or "Named Plaintiff") and Opt-In Plaintiffs (collectively referred to as "*Turner* Plaintiffs") and Defendants BFI Waste Services, LLC d/b/a Republic Services; Republic Services of South Carolina, LLC d/b/a Republic Services; and Republic Services, Inc. ("Defendants" or "Republic") (collectively with *Turner* Plaintiffs referred to as the "Parties") hereby file this Memorandum in Support of Plaintiffs' Unopposed Motion for Approval of Confidential Settlement of Collective Action brought under the Fair Labor Standards Act ("FLSA"), requesting that the Court approve the Parties' Confidential Stipulation and Settlement and Release Agreement (the "Agreement.").[1]

The Parties submit that the terms of the Agreement represent the fair, reasonable, and adequate resolution of a *bona fide* dispute as to Defendants' alleged liability under the FLSA to

---

[1] The Confidential Stipulation and Settlement and Release Agreement, Exhibit 1, has been emailed to Chambers for in-camera review.

the *Turner* Plaintiffs (the "Settlement").[2] The Parties respectfully request that the Court: (1) allow the Agreement to be reviewed in-camera; (2) approve the Parties' Agreement as expressed therein (or as the same may be modified by subsequent mutual agreement, in writing, of the Parties), adjudging the terms of the Agreement to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (3) approve the proposed Settlement Letter, submitted for in-camera review, to be distributed to the Plaintiffs and the distribution process as outlined in Section 10(b) of the Agreement; (4) appoint Darren Turner as the Representative Plaintiff; (5) approve Plaintiffs' Counsel request for Plaintiff's Attorneys' Fees and Litigation Costs as outlined in the Agreement; (6) approve the requested Service Awards to Turner and opt-in plaintiffs Jeronica Brown and Chris Montero as outlined in the Agreement; (7) dismiss this civil action with prejudice; and (8) retain jurisdiction over this action and the Parties to administer, supervise, interpret, and enforce the Agreement, until all obligations pursuant to the Agreement are satisfied.[3]

The grounds for this Motion, as discussed in more detail herein, are that the Parties have agreed to the Settlement of this *bona fide* FLSA dispute after considerable discovery, summary judgment proceedings, and following extensive, arm's-length negotiations that included private mediation.  Further, the Parties submit that the Settlement is fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether *Turner* Plaintiffs would be deemed

---

[2] The Agreement also resolves the Named Plaintiff's and Opt-in Plaintiffs' claims under the South Carolina Payment of Wages Act ("SCPWA") on an individual basis as provided in the Agreement. Named Plaintiff previously agreed not to pursue his SCPWA claim on a class-wide basis.

[3] All capitalized terms not defined in this Memorandum are used as defined in the Parties' Agreement. *Ex. 1*, § 1.

similarly situated to each other at the decertification stage, whether *Turner* Plaintiffs would obtain a judgment in their favor, and the risk of possible appeals.

I.     **PROCEDURAL BACKGROUND**

Named Plaintiff filed this lawsuit on August 17, 2016. [ECF No. 1.]  In October 2016, Named Plaintiff filed a motion for conditional certification of the collective action.  [ECF No. 15.]  Later in October 2016, Defendants filed a motion for partial summary judgment on Named Plaintiff's regular rate overtime claim. [ECF No. 22.]  The Parties briefed and argued these motions before the Court. [ECF No. 50.]  On August 7, 2017, the Court granted Named Plaintiff's motion for conditional certification and denied Defendants' motion for partial summary judgment. [ECF No. 54.]  After subsequent motion practice on the form of the collective action notice, Class Counsel sent notice of the Lawsuit to potential collective action members and one hundred twenty-six individuals (including Named Plaintiff) joined the Lawsuit. Also during the Litigation, the Parties engaged in written discovery and document production.

On August 30, 2018, the Parties participated in a day-long mediation with Thomas Wills, an experienced wage and hour mediator.  In advance of the mediation, Defendants produced time and pay records for all *Turner* Plaintiffs.  Class Counsel used the produced time and pay records to conduct a damages analysis based on Plaintiffs' theory of liability. The mediation was adversarial, at arm's length, and successful as a result of the good faith efforts of the Parties, their counsel, and the mediator.  At the mediation, the Parties reached an accord resulting in a formal Agreement, which has been emailed to Chambers for in-camera review.

## II.     SUMMARY OF THE SETTLEMENT

Defendants agreed to pay monetary settlement as indicated in section 1(j) of the Agreement (the "Maximum Gross Settlement Amount") to settle the FLSA claims of Named Plaintiff and the Opt-Ins and to settle the individual SCPWA claims of the Named Plaintiff and two other individuals who are to receive Service Awards, as set forth in the Agreement. (Ex. 1.) Additionally, Defendants agreed to pay the employer share of payroll taxes outside of and in addition to the Maximum Gross Settlement Amount. (*Id.*) The Parties further agreed that, pending Court approval, the Service Award to Named Plaintiff, as indicated in section 9 of the Agreement, Service Awards to Opt-In Plaintiffs Chris Montero and Jeronica Brown as indicated in section 9 of the Agreement, Plaintiffs' Counsel's attorneys' fees and costs as indicated in section 1(b) of the Agreement, including settlement administration costs as indicated in section 1(a) of the Agreement, shall be deducted from the Maximum Gross Settlement Amount as set forth in the Parties' Agreement.[4] After these deductions are made from the Maximum Gross Settlement Amount and following all appropriate tax withholdings required by law, pursuant to the Agreement and as awarded by the Court, the Settlement Administrator will distribute, after making appropriate tax withholdings, to *Turner* Plaintiffs the remaining amount of the settlement fund pro rata based on individual computations of unpaid overtime wages, based on the criteria set forth in the Agreement.

The Parties agreed that, under no circumstances, will Defendants' settlement liability, other than Defendants' employer payroll taxes, exceed the Maximum Gross Settlement

---

[4] The Parties agreed, upon Court approval, to use Rust Consulting, Inc., or any other firms or successors designated by the Parties and approved by the Court, as the Settlement Administrator responsible for administering the proposed settlement.

Amount. All settlement payments not negotiated by *Turner* Plaintiffs within 120 days from mailing will become null and void and will revert to Defendants.

The Settlement covers only those individuals who affirmatively opted to join in this lawsuit by submitting an approved consent form, barring those individuals specifically identified in the Agreement. (Ex. 1 at n. 1.) The Settlement does not resolve or release the claims of individuals who have not affirmatively consented to join the action by filing a consent to join form with the Court on or before the date of the filing of this Motion.

Additionally, *Turner* Plaintiffs seek this Court's approval of Service Awards to Named and two Opt-In Plaintiffs (Montero and Brown) and Plaintiffs' Counsel's request for Attorneys' Fees and Litigation Costs.[5]  Defendants do not oppose Plaintiffs' request.

This Settlement is inclusive of Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs. Assuming the Court approves the Settlement, Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs will be deducted from the Maximum Gross Fund, along with the requested Service Awards.[6] The Settlement proceeds remaining after these deductions (the "Net Settlement Amount") will be distributed to each of the *Turner* Plaintiffs.

(a)     The Net Settlement Fund will be divided among the *Turner* Plaintiffs *pro rata* based on individual computations of alleged unpaid overtime wages, to determine each Settlement Payment.  Each Settlement Payment shall be calculated according to the following criteria (as requested by *Turner* Plaintiffs for purposes of settlement):

Total Regular Wages ÷ 40 = Regular Rate of Pay;

---

[5] Pursuant to the terms of the Agreement, Defendants take no position as to the attorneys' fees and litigation costs sought by Plaintiffs' counsel or the Service Awards sought by Named Plaintiff or Opt-In Plaintiffs, but do not object to the requested amounts.

[6] Should the Court reduce the amounts sought for attorneys' fees, litigation costs, or Service Award, such reduced amounts will be used to calculate the Net Settlement Fund.

Total Hours Worked – 40 = Overtime Hours Worked;

Overtime Hours Worked * Regular Rate of Pay * 1.5 = Overtime Wages; and

Overtime Wages – Overtime Wages Paid = Settlement Overtime Wages.

Defendants state that this formula is for settlement allocation purposes only and Defendants do not concede the proper divisor is 40 hours or that Class Counsel's allocation formula above is the correct measure of alleged damage or that any damages are due and/or owing to Named Plaintiff and *Turner* Plaintiffs.

(i)    The Net Settlement Fund shall be divided by the sum of all *Turner* Plaintiffs' Total Settlement Overtime Wages.  The quotient, expressed as a percentage, shall represent the "Pro Rata Factor." Each *Turner* Plaintiff's name, Pro Rata Factor, and gross settlement amount is identified on Exhibit C to the Agreement.

(ii)    Each *Turner* Plaintiff's alleged Settlement Overtime Wages shall be multiplied by the Pro Rata Factor to determine each *Turner* Plaintiff's "Settlement Payment."

(b)    Each *Turner* Plaintiff's Settlement Payment shall be delivered in one check by the Settlement Administrator, allocated for purposes of settlement as follows:

(i)    One-half of each Settlement Payment will represent unpaid overtime wages.  Regular employee payroll deductions shall be taken out of this portion of each settlement payment by the Settlement Administrator.  Federal income tax on that amount will be withheld for the *Turner* Plaintiffs at a flat rate of 29.65 percent (22% for federal taxes and 7.65% for social security and Medicare).  State income tax will be withheld according to applicable state withholding requirements at an amount not less than 7.00% for *Turner* Plaintiffs who worked in South Carolina and 5.599% for *Turner* Plaintiffs who worked in North Carolina.  The Settlement

Administrator shall issue each of the *Turner* Plaintiffs who negotiates his or her Settlement Payment an IRS Form W-2 for this portion of the Settlement Payment.

(ii)    One-half of each Settlement Payment will represent non-wage compensation. Payroll deductions and income taxes shall not be taken from this portion of each Settlement Payment, or from the Service Awards, provided that the individual supplies the claims administrator with an IRS Form W-9. The Settlement Administrator shall issue the *Turner* Plaintiffs who negotiate their Settlement Payment an IRS Form 1099 for the non-wage damages portion of each Settlement Payment. The Settlement Administrator shall also issue to the Named Plaintiff and Opt-in Plaintiffs Brown and Montero Form 1099s for Service Awards.

(iii)    The Settlement Administrator shall timely issue tax information returns and appropriate forms to the IRS and appropriate state tax authorities for North Carolina and South Carolina for *Turner* Plaintiffs who negotiate their settlement payments. The Settlement Administrator shall also be responsible for timely making all tax deposits with the IRS and appropriate state tax authorities for North Carolina and South Carolina, including timely filing the required federal form 941 and North Carolina and South Carolina payroll tax returns.

(iv)    Payment of the employee portion of all applicable income and payroll taxes will be the sole responsibility of the *Turner* Plaintiffs negotiating a Settlement Payment or Service Award. Released Parties make no representations and provide no advice, and it is understood and agreed that Released Parties have made no representations and have provided no advice, as to the taxability of any portions of the Settlement Payments to any Plaintiffs, the payment of any costs or award of Plaintiffs' Attorneys' Fees and Litigation Costs, or any Service Award payments. The Settlement Letter mailed to the *Turner* Plaintiffs will advise them to seek their own tax advice prior to acting in response to that Settlement Letter. Neither Plaintiffs'

Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(v)    Defendants shall have no liability or responsibility whatsoever for taxes of the QSF, any *Turner* Plaintiff, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with U.S. Internal Revenue Service or any other taxing authority. Recipients of any payments made pursuant to the Agreement will be solely responsible for all taxes, interest and penalties owed by such recipients with respect thereto, and will indemnify, defend, and hold Defendants and the Settlement Administrator harmless from and against any and all taxes and interest as a result of such recipient's failure to timely pay such taxes.

(vi)    By negotiating a Settlement Payment check, each *Turner* Plaintiff will be bound by the terms as set forth in the Agreement and will release all Released Parties from all Released Claims. However, any failure of the *Turner* Plaintiffs to deposit a check shall not affect the enforceability of the release of all claims in the Complaint as well as federal and state overtime claims, as the Parties agree that valid consideration for same is Defendants paying the Maximum Gross Settlement Amount and the offer of monetary consideration by means of the offer of Settlement and mailing of Settlement Payments. The Settlement Letter mailed to the *Turner* Plaintiffs will contain a definition of the Release.

(vii)    Defendants shall be responsible for the Employer Payroll Taxes. Other than the withholding and reporting requirements herein, which are the responsibility of the Settlement Administrator, the *Turner* Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement.

## III.     THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE UNDER THE FLSA

Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. *See Dunham v. Brevard Cnty. Sch. Bd.,* 401 So. 2d 888, 889 (Fla. 5th DCA 1981) (recognizing state court jurisdiction over FLSA claims); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982) (approving FLSA settlement). The law favors compromise and settlement of class and collective action lawsuits. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement"). The policy favoring settlement is especially relevant in class or collective actions and other complex matters, where the inherent costs, delays, and risks of litigation might otherwise overwhelm any potential benefit the class could hope to attain. *See Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citations omitted) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.").

FLSA settlements are not subject to a two-stage approval process (preliminary approval followed by final approval) like class-action settlements under Rule 23, unless the FLSA settlement is a so-called "hybrid" wage-and-hour settlement that resolves FLSA collective-action and Rule 23 class-action claims simultaneously.[7] *See, e.g.*, *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).") This is

---

[7] Class Counsel has determined that a Rule 23 class is not appropriate under the facts of this case, for a variety of reasons, and hereby withdraws the Rule 23 class allegations.

not a hybrid settlement. Rather, putative opt-in plaintiffs who did not affirmatively join in this action by completing and returning a consent form when notice was issued were and are free to independently pursue their FLSA rights either now or at a later date.

"[B]ecause, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Bozak v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 106042, at *6 (D. Conn. July 31, 2014). Thus, courts do not apply the exacting standards for class action settlement approval under Rule 23 to approval of FLSA settlements. *See, e.g., Faile v. Lancaster Cnty.*, 2012 U.S. Dist. LEXIS 189610, at *11 (D.S.C. Mar. 8, 2012) ("Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements."); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *Woods v. N.V. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class actions that are not present in FLSA collective actions).

Here, because the case is being settled as an FLSA collective action pursuant to 29 U.S.C. § 216(b), the only employees covered by the Settlement are those who, after reviewing the notice form, affirmatively decided to join the Litigation by causing their consent to join form to be timely filed on the docket in this Litigation.

Where, as here, the litigation involves only a private enforcement action under Section 216(b) of the FLSA, approval is warranted where a settlement resolves a bona fide dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arms-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353 n.8; *Bennett*, 737 F.2d at 987 n.9. Typically, courts rely on the

adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* "Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes." *Darlington Cnty.*, 2013 U.S. Dist. LEXIS 172624, at *11 (D.S.C. Dec. 6, 2013).

"Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of [FLSA] settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Edelen v. Am. Residential Servs.*, 2013 WL 3816986, at *10 (D. Md. July 22, 2013).

In making this determination, the district court should examine two issues. First, the settlement must be a product of "contested litigation." *Lynn's Food*, 679 F.2d at 1352-54. Second, the court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.* at 1354. The settlement here easily meets this standard.

### A.    The Proposed Settlement Is the Product of Contested Litigation.

The Settlement is the result of contested litigation given the fact that the Settlement has been reached in the context of this Lawsuit. In his Complaint, Named Plaintiff made detailed factual allegations describing Defendants' allegedly unlawful compensation practices. By engaging in extensive formal and informal discovery and summary judgment proceedings, the

Parties had an opportunity to analyze the pertinent factual and legal issues and to assess the strengths and weaknesses and defenses relating to Named Plaintiff's claims. In other words, the Parties are in a position to evaluate the strengths and weaknesses of their various legal and factual positions. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

**B.    The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A Bona Fide Dispute Between The Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Court should readily conclude that both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

**1.    The Parties Were Engaged in a Bona Fide Dispute.**

*Turner* Plaintiffs alleged that Defendants failed to pay them overtime wages at the proper rate in violation of the FLSA. *Turner* Plaintiffs specifically alleged that Defendants incorrectly calculated their regular rates of pay for overtime pay purposes. More specifically, *Turner* Plaintiffs allege that Defendants paid *Turner* Plaintiffs a flat per-day component, in addition to a per-hour rate. Defendants calculated Plaintiffs' regular rate of pay by dividing all hours worked per workweek by the total compensation paid for the workweek. *Turner* Plaintiffs allege that Defendants improperly calculated their regular rate of pay by using an incorrect divisor of all hours worked per workweek instead of a divisor of forty hours per workweek. *Turner* Plaintiffs' position in the litigation was that Defendants could not permissibly divide by all hours worked without a mutual understanding that their wages were intended to compensate them for all hours worked during each workweek (which Defendants

vigorously dispute). Defendants' position remains that no such mutual understanding requirement applies, and that Defendants have at all times properly paid *Turner* Plaintiffs in compliance with all applicable federal, state, and local laws.

If *Turner* Plaintiffs were successful in establishing the truth of their allegations at trial and successful on appeal, then Defendants would be faced with the prospect of a significant monetary verdict in favor of *Turner* Plaintiffs, as well as the obligation to pay litigation fees and costs. If Defendants were meritorious at trial or on appeal, then *Turner* Plaintiffs faced the risk of a complete defense verdict and no recovery of any kind. Both Parties also risked a lengthy appeal, encompassing additional costs and fees, before a final resolution of this matter.

The Settlement is fair and reasonable when viewed against the risks, expenses, and delays inherent in continued litigation. Here, the Parties had significant legal and factual disputes, which were hotly contested. Accordingly, the Court should conclude that a *bona fide* dispute between the Parties existed.

### 2.    The Proposed Settlement is Fair and Reasonable.

In sum, the proposed Settlement is fair, just, and reasonable. This Settlement was the product of arm's-length negotiations by experienced counsel and has the effect of (1) providing *Turner* Plaintiffs with the opportunity to receive substantial financial remedies for their claims, (2) in exchange for a release of their potential wage claims, and (3) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary

nature of a litigated FLSA case resulting in settlement as indicia of fairness).[8]  Federal courts

within this Circuit routinely approve similar settlements reached in FLSA collective actions.

*See*, *e.g.*, *Irvine v. Destination Wild Dunes Mgmt.*, 2016 U.S. Dist. LEXIS 116128 (D.S.C.

Aug. 30, 2016); *Butler v. DirectSAT USA, LLC*, 2015 WL 5177757 (D. Md. Sept. 3, 2015);

*Latham v Branch Banking & Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014).

> **i.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief**

As outlined above, the Parties disagree about the merits of *Turner* Plaintiffs' claims and

the viability of Defendants' defenses. If the Lawsuit continues, *Turner* Plaintiffs face many

obstacles and uncertainties, including a motion for decertification of the action, additional

motions for summary judgment, and potentially a jury trial. Furthermore, if *Turner* Plaintiffs

prevail on liability, they face additional hurdles regarding the amount of damages *Turner*

Plaintiffs allegedly suffered.

When determining the reasonableness of the settlement award, courts consider a range

that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks

and costs necessarily inherent in taking any litigation to completion." *Morris v. Affinity Health*

*Plan, Inc.* 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (internal citations omitted). Immediate

---

[8] Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11.41; *see also Great Neck Capital Appreciation Inv. P'Ship., LLP v. PriceWaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation."); *Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150, n.6 (N.D. Ill 1997) (same). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *accord Calobrace v. Am. Nat. Can Co.*, 1997 U.S. Dist. LEXIS 3945, at *7 (N.D. Ill. Apr. 1, 1997) ("It is not the court's function, in this review, to try the case on the merits and thereby substitute its judgment for the judgment of the litigants as to the optimal terms for settlement of the case.").

payment of substantial amounts to class members is reasonable "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Gilliam v. Addicts Rehab. Crt. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of LA v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

As explained above, *Turner* Plaintiffs are releasing any and all claims asserted at any time in the Complaint and all federal and state overtime claims against Released Parties, related claims for penalties (including late payment penalties), interest, liquidated damages, Plaintiffs' Attorneys' Fees and Litigation Costs, restitution and equitable relief. The limited nature of the release *Turner* Plaintiffs are providing Defendants in exchange for a settlement payment is another indicia of a fair and reasonable settlement.

## ii.     The Action is Complex, Expensive, and Lengthy

This Action is properly characterized as complex, both in terms of establishing purported liability and in establishing the proper amount of damages, if any, for all *Turner* Plaintiffs. Many complex issues of law and fact remain unanswered and would have to be resolved at or before trial, which would be lengthy, costly, and complex. *Turner* Plaintiffs would need to provide evidence sufficient to establish liability and proof of damages would have required additional discovery. Defendants were certain to move for decertification at the completion of discovery and challenge liability. And, regardless of the outcome at trial, post-

judgment appeals were likely. Accordingly, the complexity and prospective expense and duration of further litigation weigh in favor of approving the Parties' proposed settlement.[9]

### iii.    Plaintiffs' Counsel and the Named Plaintiff Support the Settlement

Plaintiffs' Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well as their experience in numerous similar wage-and-hour collective actions, Plaintiffs' Counsel believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002). Additionally, the Named Plaintiff has indicated his approval of the Agreement. For the foregoing reasons, the Court should approve the Settlement as a fair and reasonable resolution of a *bona fide* dispute between the Parties.

## IV.    PLAINTIFFS' COUNSEL IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS[10]

The FLSA contains a mandatory fee-shifting provision, which provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The goal of a statutory award of attorneys' fees and costs is to "ensure access to the

---

[9] Public policy favors the early resolution of complex wage and hour cases where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

[10] As previously noted, Defendants' do not oppose Plaintiffs' application for attorneys' fees and litigation costs.

judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). For purposes of recovery of attorneys' fees and costs, a "prevailing party" is one who has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id*.

Although payment of attorneys' fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

The Fourth Circuit has also provided clarity as to the standard for determining a reasonable figure for attorneys' fees. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) (adopting factors in *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The factors for attorneys' fee petitions enumerated by the Fourth Circuit in *Barber* have even been expressly incorporated into Local Civil Rule 54.02, D.S.C., which states that "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)." Local Civ. Rule 54.02, D.S.C. As the Fourth Circuit's holding in *Barber* adopted the factors of the Fifth Circuit from the case of *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *Johnson* is relevant in determining an award of fees as well. In *Barber*, the Fourth Circuit held the following factors to be considered in determining a reasonable attorneys' fee:

    (1)    The time and labor expended;
    (2)    The novelty and difficulty of the questions raised;
    (3)    The skill required to properly perform the legal services rendered;
    (4)    The attorney's opportunity costs in pressing the instant litigation;
    (5)    The customary fee for like work;
    (6)    The attorney's expectations at the outset of the litigation;
    (7)    The time limitations imposed by the client or circumstances;
    (8)    The amount in controversy and the results obtained;
    (9)    The experience, reputation and ability of the attorney;
    (10)    The undesirability of the case within the legal community in

which the suit arose;

(11)    The nature and length of the professional relationship between
attorney and client; and

(12)    Attorneys' fees awards in similar cases.

Local Civ. Rule 54.02(A) (D.S.C.); *Barber*, 577 F.2d at 226, n.28.

Local Civil Rule 54.02(A) further states that "these requirements are also relevant when a common fund is created and a percentage-fee method is sought in the application." Local Civil Rule 1.5(a) of the South Carolina Rules of Professional Responsibility provides that "[a] lawyer's fee shall be reasonable." S.C. R. Prof'l Conduct 1.5(a). Reasonableness is likewise the focus of the *Barber* analysis. *Barber*, 577 F.2d at 226. Provided the factors are considered and findings duly made, such determination will not be overturned on appeal "unless under all of the facts and circumstances it is clearly wrong" because "the allowance of attorneys' fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Id.* (internal quotations omitted).

Under these circumstances, reasonableness "essentially boils down to two competing methods of calculation: the lodestar method and the 'percentage of recovery' or ('percentage of the fund' method)." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009); *see also Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 717 (S.D. W. Va. 2009). Using the lodestar method, the Court multiplies the number of hours worked by a reasonable hourly rate, the product of which the Court can then adjust by employing a "multiplier." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 260. A multiplier can be derived from a number of factors, such as the benefit achieved for the class and the complexity of the case. *Loudermilk Servs., Inc.*, 623 F. Supp. 2d at 717. Such a multiplier is within the discretion of the Court to compensate the attorneys for the risk of nonpayment, but "[i]t is an abuse of

discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002). Courts "'have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.'" *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 265 (quoting *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009)).

The percentage of fund method provides for an award based on a percentage of the recovery obtained in light of multi-factor analysis undertaken by the Court. *Id.* The factors for consideration are substantially identical to the *Barber* factors discussed above and need not be laid out and analyzed separately from the *Barber* factors. *See id.* at 261, n.6. In the context where a common fund is created, "other districts within this Circuit[] and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees." *Id.* at 261. "One of the main advantages of using a percentage of fund method is that it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorney." *Loudermilk Servs., Inc.*, 623 F. Supp. 2d at 717-18 (internal quotations omitted). By "using the percentage of fund method and supplementing it with the lodestar cross-check," the Court "take[s] advantage of the benefits of both methods." *Id.*

Courts have routinely awarded attorneys' fees based on a percentage fee approach in wage and hour settlements. For example, in *Kidrick v. ABC Television & Appliance Rental, Inc.*, 1999 WL 1027050 (N.D. W. Va. May 12, 1999) a district court in this Circuit applied the percentage-of-the-benefit approach to a similar wage and hour settlement and concluded that a fee award representing 30.6% of total settlement value was reasonable. In *Johnson v. Brennan,*

2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011), the Court determined that "public policy favors a common fund attorneys' fee approach" in wage and hour class actions and found that a fee award of 33 1/3% of total settlement fund was reasonable. *Id.* at *18-19; *see also Prescott*, 2011 WL 6662288, at *2 (percentage of the benefit "mimics" the market); *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *7 (S.D.N.Y. Dec. 13, 2011) (awarded 33 1/3% of fund); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (the settlement amount is "in-line with the 33-40% contingency that is typically charged in FLSA cases."); *In Re: Milos Litig.*, 2011 WL 6015705, at *2 (S.D.N.Y. Sept. 8, 2011) (33 1/3%); *Williams v. Aramark Sports*, LLC, 10-1547, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%).

## A.    The Attorneys' Fees Requested Are Fair, Reasonable, and Appropriate under *Barber*.

The *Barber* factors are required to be considered by the Court under Local Civil Rule 54.02(A) D.S.C., and accordingly, the following analysis references these factors by number. As explained by an opinion from a district court in this Circuit, the *Barber* factors are so similar to the factors evaluated under a percentage of recovery analysis that laying out and analyzing both sets of factors separately is unnecessary. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 261, n.6.

### 1.    Time and Labor Required (the First *Barber* Factor)

As to the first *Barber* factor, the time and labor expended, Plaintiffs' Counsel has spent considerable time and labor in litigating this case. Indeed, for this portion of the litigation, Plaintiffs' Counsel has expended more than 935 hours total in this effort and has a lodestar

total of $309,317.58.[11] Accordingly, the time and labor devoted to this action for this portion of the litigation justifies an attorney fee award as indicated in section 1(b) of the Agreement.

### 2.    Novelty and Difficulty of the Issues (the Second *Barber* Factor)

This case involved novel and complex issues. To be sure, this FLSA collective action presented unique issues relating to calculation of the regular rate of pay for non-exempt employees paid by a hybrid compensation methodology which included a per-day component in addition to hourly pay. Few plaintiffs' lawyers are willing to undertake these types of collective actions on behalf of employees because of the unique area of the law and the amount of resources needed to pursue a collective action of this nature. The novelty and difficulty presented by this case is appropriately reflected in the hours submitted by Plaintiffs' Counsel. *See McClaran v. Carolina Ale House Operating Co., LLC*, 2015 U.S. Dist. LEXIS 112985, at *8-9 (D.S.C. Aug. 26, 2015) (noting that the difficulty of the case is reflected in the hours expended by counsel).

### 3.    Skill Required: The Experience, Reputation, and Ability of the Attorneys (the Third and Ninth *Barber* Factors)

As South Carolina District Court has held, "[e]mployment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law." *DeWitt v. Darlington Cnty.*, 2013 U.S. Dist. LEXIS 172624, at *31 (D.S.C. Dec. 6, 2013). Plaintiffs' Counsels' law practices focus exclusively on plaintiff-side employment cases, including FLSA collective actions and class action cases.  Plaintiffs' Counsels' efforts in bringing this litigation to a successful conclusion confirm the experience and ability of the attorneys involved. The professional standing and expertise of opposing counsel also is an important factor in evaluating

---

[11] Detailed time and billing records, as well as records of costs incurred, are available at the Court's request.

the quality of services rendered by Plaintiffs' Counsel and "should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005). The national law firm representing Defendants is highly respected for its expertise in matters such as these. Defendants' counsel is experienced, respected, and highly skilled. Plaintiffs' Counsel's resolution of this matter despite formidable legal opposition further confirms the quality of their representation.

### 4.    Preclusion of Other Employment (the Fourth *Barber* Factor)

Plaintiffs' Counsel has been precluded from accepting and/or working on non-contingency fee matters as a result of the substantial time and resources devoted to the investigation, litigation, and negotiation required to achieve and implement the settlement.  As previously noted, Plaintiffs' Counsel has spent a significant amount of time litigating this case. Such a vast time commitment represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which Plaintiffs' Counsel could have worked. In addition, Class Counsel also agreed to advance the costs of this litigation on a contingency basis, since Named Plaintiff did not have the financial ability to pay the costs associated with this case. Plaintiffs' Counsel was not able to accept several other contingency cases during the pendency of this action due to limited resources in advancing litigation costs. Further, Plaintiffs' Counsel has not had the use of the operating funds used to advance the costs in this matter during the pendency of the case. Accordingly, this factor further supports the requested fee.

### 5.    The Customary Fee for Like Work (the Fifth and Twelfth *Barber* Factors)

The requested fee award is fair, reasonable, and appropriate under the South Carolina Rules of Professional Conduct and when compared to similar fee awards based on percentage of

the fund and lodestar analyses. Notably, Plaintiffs' Counsel's requested fee is well within the average in the private marketplace, where contingency fee arrangements ranging from 33.33 to 40 percent of the gross recovery are standard. *In re Pub. Serv. Co. of N.M.*, No. 91-0536M, 1992 WL 278452, (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee . . . is to simulate the market.").

Accordingly, the requested fee of 33.33 percent of the gross settlement compares favorably with other court-approved awards, which fact should weigh in favor of the requested fee under the fifth and twelfth *Barber* factors. *Barber*, 577 F.2d at 226, n.28; *see also Kidrick*, 1999 WL 1027050, at *1 (30.6%); *Johnson*, 2011 WL 4357376, at *18-19 (33 1/3%); *Matheson*, 2011 WL 6268216, at *7 (33 1/3%); *In Re: Milos Litig.*, 2011 WL 6015705, at *2 (33 1/3%); *Williams v. Aramark Sports, LLC*, 2011 WL 4018205, at *10 (33 1/3%). The requested fees are reasonable for an FLSA collective action case in the District of South Carolina.

**6.    Whether the Fee Is Fixed or Contingent (the Sixth *Barber* Factor)**

Courts also have consistently recognized that the attorneys' contingent fee risk should be "a major factor" in determining the fee award. *Schwartz*, 2005 WL 3148350, at *24; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.3d at 1008 ("It is an abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky."). The Named Plaintiff agreed to a contingent fee arrangement with Plaintiffs' Counsel that would allow attorneys' fees in an amount equal to

23

one-third of the gross amount of any recovery or the court-awarded fees, whichever is greater. Additionally, Plaintiffs' Counsel has incurred significant expenses and invested substantial amounts of time in prosecuting this case and, to date, have received no remuneration while facing a significant risk of no recovery for this portion of the litigation. Therefore, this factor easily supports Plaintiffs' Counsel's fee request as well.

### 7. Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)

Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); *see also Doucet ex rel. Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1262 (M.D. Ala. 1999). The very nature of employment cases requires long and intense hours, great risk of no payment of attorneys' fees, or, under the best of circumstances, late payment received long after the work has been accomplished. The amount of time required by the circumstances of this case are discussed in connection with items 1 and 4 above. Finally, the potential for any wage litigation defendant to argue the statute of limitations places an importance on moving as quickly as possible to develop and file a case.

### 8. The Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)

The Fourth Circuit has held that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). As Judge Seymour recently held, "[i]n evaluating the results obtained for the class, courts have considered whether plaintiffs would receive a substantial percentage of their back pay amount."

*McClaran*, 2015 U.S. Dist. LEXIS 112985, at *9. The proposed settlement is well within the range of reasonable recoveries.[12] Here, the gross settlement amount represents approximately 52% of the total overtime wages Plaintiffs were allegedly owed.

Further, the Settlement also does not prejudice anyone who did not choose to opt-in to this case. Finally, the Settlement achieves a monetary recovery for *Turner* Plaintiffs in a complex action that likely would have been cost prohibitive for them to pursue individually.

### 9.    The Undesirability of the Case (the Tenth *Barber* Factor)

As Judge Harwell has observed when approving a settlement and attorney's fees request in an FLSA class action, "employment cases do not appear to be eagerly sought out by the majority of the plaintiff's bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved." *DeWitt v. Darlington Cnty.*, 2013 U.S. Dist. LEXIS 172624, at *27 (D.S.C. Dec. 6, 2013). Courts have also recognized that the financial burden and time demands of complex or novel cases make them in some sense "undesirable" to be undertaken on a full contingency fee basis. *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). As noted, this case, like almost all complex or novel cases, has provided no immediate or guaranteed income. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in *Turner* Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). Moreover, given the substantial hurdles to recovery, there has been a

---

[12] *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

substantial risk that the *Turner* Plaintiffs, and thus Plaintiffs' Counsel, would recover nothing at all for this portion of the litigation.

The foregoing risks must be assessed as they existed at the time counsel undertook the case and not in light of the settlement achieved. *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (holding that the riskiness of a case must be judged *ex ante* not *ex post*). Therefore, Plaintiffs' Counsel knowingly undertook a significant risk by prosecuting this case, and this, too, supports the fee request. *See Omnivision*, 559 F. Supp. 2d at 1047 (noting that nationwide, plaintiffs have "won only three of eleven such cases to reach verdicts since 1996").

### 10. Nature and Length of the Professional Relationship between Attorney and Client (the Eleventh *Barber* Factor)

Plaintiffs' Counsel has represented *Turner* Plaintiffs throughout the course of this Litigation. This is the first matter for which *Turner* Plaintiffs' counsel has provided any legal services to any Plaintiff in this case, so this factor does not have much application in this Motion.

### B. The Requested Reimbursement of Litigation-Related Costs and Expenses Is Fair, Reasonable, and Appropriate

Plaintiffs' Counsel also requests reimbursement for the reasonable and necessary litigation expenses and costs that they have advanced to prosecute this case. An award for reasonable litigation costs and expenses is warranted where, as here, *Turner* Plaintiffs' counsel's efforts result in the creation of a common fund for the class.

Here, *Turner* Plaintiffs' Counsel requests reimbursement for reasonable litigation expenses and costs that were incurred, and which counsel has advanced, in the prosecution of the case in the amount indicated in section 1(b) of the Agreement. Courts have held that it is beyond question that such expenses are properly chargeable to the settlement fund. *See, e.g.*,

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (finding that non-duplicative charges for "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel" were appropriate). Accordingly, *Turner* Plaintiffs' Counsel respectfully requests litigation costs as indicated in section 1(b) of the Agreement including administration costs as indicated in section 1(a) of the Agreement be deducted from the Maximum Gross Settlement Amount.

## V.    NAMED PLAINTIFF AND OPT-INS BROWN AND MONTERO ARE ENTITLED TO SERVICE AWARDS[13]

Named Plaintiff Turner seeks a Service Award for his contribution to this litigation as described in section 9 of the Agreement. (Ex. 1.) Opt-In Plaintiffs Montero and Brown seek Service Awards for their contributions to this litigation as described in section 9 of the Agreement. (*Id.*) Turner, Montero, and Brown seek these service payment awards in recognition of the efforts they expended to pursue the claims raised in this action not just on behalf of themselves but on behalf of all Plaintiffs. These individuals came forward with information necessary to file the Complaint (despite the risks that doing so could have caused to their prospects of future employment in the waste collection industry), provided further factual information to Plaintiffs' Counsel and otherwise assisted Plaintiffs' Counsel with the prosecution and resolution of the litigation, which has resulted in a favorable Settlement for all *Turner* Plaintiffs. These service payments are being sought in recognition of efforts these three individuals made in support of this action on behalf of all *Turner* Plaintiffs.

---

[13] As previously noted, Defendants do not oppose Named Plaintiff Tuner's and Opt-Ins Montero's and Brown's requests for Service Awards.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998). This is especially true in employment litigation. *See Faile v. Lancaster Cnty.*, 2012 U.S. Dist. LEXIS 189610, at *41-42 (D.S.C. Mar. 8, 2012) ("Service or incentive payments are especially appropriate in employment litigation, where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)).

"To determine whether such a payment is warranted, the Court must consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Irvine v. Destination Wild Dunes Mgmt.*, 204 F. Supp. 3d 846, 850-51 (D.S.C. 2016) (quoting *Edelen v. Am. Residential Servs., LLC*, 2013 U.S. Dist. LEXIS 102373, at *16 (D. Md. July 22, 2013) (internal quotations omitted).

As another court in this district has observed "[c]ourts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions." *Faile*, 2012 U.S. Dist. LEXIS 189610, at *42. Courts in this district have awarded service payments in wage and hour collective and class actions in amounts significantly more than the amount requested by Named Plaintiff herein. *Id.* (approving service awards of $67,500.00, with lead Plaintiffs receiving awards of $18,000.00 each and steering committee members receiving $9,600.00 each). Likewise, the requested service payments here are well within the range of awards that courts around the country regularly and

routinely grant under these circumstances in wage and hour class cases. *See, e.g., Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000); *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, *9 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards to seven named plaintiffs in hybrid class/collective action involving unpaid overtime); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 U.S. Dist. LEXIS 60790, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs where there were no objections to these payments); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case); *Frank*, 228 F.R.D. at 187 (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund).

In light of the results obtained, the *Turner* Plaintiffs substantially benefited from the actions of Turner, Montero, and Brown. Without the efforts of these individuals, this settlement would not have been achieved. As a result of these efforts, and the attendant risks, the requested service payments are amply justified.

## CONCLUSION

The Parties reached this Settlement as the result of contested litigation, and it provides a fair and reasonable resolution of a *bona fide* dispute between the Parties. The Parties engaged in extensive discovery and analysis of pertinent information and resolved the issues between them with the assistance of a mediator with substantial expertise in this area. The Settlement provides the *Turner* Plaintiffs with an opportunity to receive significant monetary relief in a contested

matter. For these reasons, the Parties request that the Court enter the Parties' proposed order and approve the Settlement.

FALLS LEGAL, LLC

s/ J. Scott Falls
J. Scott Falls
Federal I.D. No.  10300
E-mail:  scott@falls-legal.com
Ashley L. Falls
Federal I.D. No. 12083
E-mail:  ashley@falls-legal.com
245 Seven Farms Drive, Suite 250
Charleston, South Carolina 29492
Telephone: (843) 737-6040
Facsimile: (843) 737-6140

WERMAN SALAS P.C.
Douglas M. Werman
Admitted *pro hac vice*
E-mail:  dwerman@flsalaw.com
Zachary C. Flowerree
Admitted *pro hac vice*
E-mail:  zflowerree@flsalaw.com
77 W. Washington Street, Suite 1402
Chicago, IL  60602
Telephone: (312) 419-1008
Facsimile:  (312) 419-1025

*Counsel for Plaintiff Darren Turner, on behalf of himself and all others similarly situated*

November 14, 2018
Charleston, South Carolina