IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Darren Turner, on behalf of himself and all others similarly situated, | ) ) ) | Civil Action No. 2:16-cv-02864-DCN |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| BFI Waste Service, LLC d/b/a Republic Services; Republic Services of South Carolina, LLC d/b/a Republic Services, and Republic Services, Inc. | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## CONFIDENTIAL STIPULATION AND SETTLEMENT AND RELEASE AGREEMENT

This Confidential Stipulation and Settlement and Release Agreement ("Agreement") is made and entered into by, between, and among Darren Turner ("Named Plaintiff"), on behalf of himself and all persons who filed consent forms in this lawsuit[1] and Defendants BFI Waste Services, LLC, Republic Services of South Carolina, LLC, and Republic Services, Inc., and all of its subsidiaries or related entities, (collectively "Defendants"), and their respective counsel, and is conditioned upon the Court's approval. This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant action shall be dismissed with prejudice upon approval of this settlement by the Court, with the Court retaining jurisdiction to enforce the terms of the Agreement.

---

[1] This Stipulation and Release does not apply to Jermaille Cavin Grant, Phillip C. Lorrick, or Dervin Summers, who opted in to the action, but never worked or did not work during the period at issue as Residential Drivers.

1.    <u>DEFINITIONS</u>

The following terms, when used in this Agreement, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

(a)    "Administration Costs" means any and all fees and costs of the Settlement Administrator paid or incurred for the administration of the settlement of the Litigation, including but not limited to, preparing affidavits requested by and to be filed with the Court (if any), preparing reports to counsel for the Parties, preparing and mailing of distributions from the settlement funds, preparing all necessary tax documents for *Turner* Plaintiffs and Plaintiffs' Counsel, and Defendants, and/or distribution of any funds associated with any interest earned on funds in the Qualified Settlement Fund to Defendants; and any and all other fees, costs and/or expenses incurred by the Settlement Administrator and determined by the Parties to be an expense reasonably necessary for the administration of the settlement of the Litigation. The Parties agree that the Administration Costs will not exceed $10,000.00. The Administration Costs are to be paid from the Maximum Gross Settlement Amount.

(b)    "Plaintiffs' Attorneys' Fees and Litigation Costs" means all Plaintiffs' attorneys' fees and litigation expenses and costs which were advanced on behalf of the *Turner* Plaintiffs and incurred in the Litigation by Plaintiffs' Counsel, including the Administration Costs set forth above. The requested and Court ordered Plaintiffs' Attorneys' Fees shall not exceed one-third of $900,000.00. The requested and Court ordered Litigation Costs shall not exceed $17,578.97. In no event shall the total distribution and payments made by Defendants, including but not limited to Plaintiffs' Attorneys' Fees and Litigation Costs, exceed the Maximum Gross Settlement Amount. The Plaintiffs' Attorneys' Fees and Litigation Costs are to be paid from the Maximum Gross Settlement Amount.

(c)    "*Turner* Action," "Litigation," "Lawsuit," and "Complaint" means the civil action *Darren Turner v. BFI Waste Services, LLC, et al.,* United States District Court for the District of South Carolina, Charleston Division, Civil Action No. 2:16-cv-02864-DCN.

(d)    "*Turner* Plaintiffs" and "Plaintiffs" means the Named Plaintiff Darren Turner and the one hundred twenty-five (125) individuals who filed consent to join forms in this Lawsuit to become party-plaintiffs and who worked as residential drivers for Defendants after August 17, 2013.[2] *Turner* Plaintiffs are subject to the Agreement by operation of the filing of their consent to join forms in the Litigation, except those previously described in footnotes 1 and 2. Plaintiffs' counsel represent that they are fully authorized to enter into the Agreement and bind these one hundred twenty-six (126) clients to its terms and conditions.

(e)    "Court" refers to the court having jurisdiction of the Litigation, at any subsequent stage, presently the United States District Court for the District of South Carolina, Charleston Division.

(f)    "Defendants" means BFI Waste Services, LLC, Republic Services of South Carolina, LLC, and Republic Services, Inc., including their past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations. Defendants shall be the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1) to the QSF(s) with respect to the amounts transferred.

---

[2] As previously indicated in footnote 1, this Agreement does not apply to Grant, Lorrick, or Summers, who did not work as Residential Drivers during the relevant period.

(g)     "Defendants' Counsel" means Littler Mendelson P.C.

(h)     "Effective Date" means the first date after all of the following events and conditions have been met or have occurred:

(1)     The Court has entered an Approval Order;

(2)     The Court has dismissed the Litigation with prejudice;

(3)     The 30-day deadline for filing an appeal has expired and no appeal has been filed;

(4)     The deadline has passed without action for counsel for the Parties to terminate the Agreement; and

(5)     If there is an appeal of the Court's Order approving the Settlement or another issue, all appeals are resolved in favor of final approval.

No Settlement Payment(s) under this Agreement will be made until after the Effective Date. Named Plaintiff, the *Turner* Plaintiffs and Class Counsel will provide IRS Form W-9's to the Claims Administrator prior to the Effective Date. However, in the event a *Turner* Plaintiff fails to provide an IRS Form W-9 to the Claims Administrator prior to the Effective Date, the settlement payment for such *Turner* Plaintiff will be subject to mandatory back-up withholding of 24%, or such other back-up withholding percentage as the Settlement Administrator provides authority to support and the Settlement Administrator and Parties agree is appropriate.

(i)     "Employer Payroll Taxes" means all taxes an employer is required to make arising out of or based upon the payment of employment/wage compensation in the Settlement Payments, including the employer's portion of FICA, FUTA, and SUTA obligations and applicable state taxes.  The Employer Payroll Taxes do not include any taxes an employee is

required to make arising out of or based upon the payment of employment/wage compensation in the Settlement Payments, including the employee's portion of FICA, FUTA, and SUTA obligations and applicable state taxes.

(j)    "Maximum Gross Settlement Amount" means the Nine Hundred Thousand and No/100ths Dollars ($900,000.00), which is the maximum amount that Defendants agree to pay to fully resolve and settle this Litigation which includes: (1) the Plaintiffs' Attorneys' Fees and Litigation Costs incurred in the Action and approved by the Court; (2) any and all amounts to be paid to *Turner* Plaintiffs, specifically the settlement payments to the *Turner* Plaintiffs; (3) the Administration Costs; and (4) any Court-approved Service Awards. Defendants shall separately pay only the Employer Payroll Taxes outside the Maximum Gross Settlement Amount. Defendants will not under any circumstances be required or called upon to pay or contribute additional monies above the Maximum Gross Settlement Amount, with the sole exception of Employer Payroll Taxes.

(k)    "Named Plaintiff" refers to the individual named in the caption of the complaint and any subsequent amendment thereto filed in the Litigation, *i.e.*, Darren Turner.

(l)    "Net Settlement Fund" means the Maximum Gross Settlement Amount minus: (1) Administration Costs; (2) Court-approved Plaintiffs' Attorneys' Fees and Litigation Costs; and (3) Court-approved Service Awards to the Named Plaintiff and Opt-in Plaintiffs Brown and Montero. The Net Settlement Fund represents the maximum amount that Defendants would pay to *Turner* Plaintiffs pursuant to the Settlement Agreement if every *Turner* Plaintiff timely negotiates his or her settlement check.

(m)    "Order Approving the Settlement" or "Approval Order" shall mean an order to be approved and entered by the Court, which gives approval to this Confidential Stipulation and

Settlement and Release Agreement, in the form of the "Proposed Order Approving Settlement" attached hereto as Exhibit A.

(n)    "Parties" means the *Turner* Plaintiffs and Defendants in the Litigation and, in the singular, refers to any of them as the context makes apparent.

(o)    "Plaintiffs' Counsel" or "Class Counsel" means Falls Legal, LLC and Werman Salas P.C.

(p)    "Qualified Settlement Fund", "QSF", or "Settlement Account", means the account established under Section 468B of the Internal Revenue Code by the Settlement Administrator for the settlement amount paid by Defendants.  The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Approval Order(s), if any. Interest, if any, earned on any monies in the QSF that Defendants electronically transfer to the QSF will revert back to and be Defendants' sole and exclusive property at the expiration of the time for the *Turner* Plaintiffs to negotiate their settlement checks. Any amount of the Maximum Gross Settlement Amount that is not distributed from the QSF shall remain and be Defendants' sole and exclusive property.

(q)    "Released Parties" means Defendants and each of their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of their past, present, and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, spouses, heirs, assigns, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Defendants, divisions, units, branches, and any other persons or entities acting on their behalf, and any customer of Defendants, including any party that was  named as a defendant in the Litigation and any individual or entity which could

be jointly liable with Defendants and could have been named as a defendant and any other persons or entities acting on their behalf.

(r)    "Released Claims" refers to the released claims set forth in Section 7.

(s)    "Releasing Persons" means each and every *Turner* Plaintiff, except those previously noted in footnotes 1 and 2, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns.

(t)    "Representative Plaintiff" means Darren Turner who, together with Plaintiffs' Counsel, covenant and represent that they are the duly authorized legal agents for all *Turner* Plaintiffs in the Litigation, except those previously noted in footnotes 1 and 2, and they have the legal right and authority to act as the representatives of all *Turner* Plaintiffs, except those previously noted in footnotes 1 and 2, and to make decisions on their behalf concerning the Litigation, the method and manner of conducting the Litigation, and the execution of this Agreement on behalf of all *Turner* Plaintiffs.

(u)    "Service Awards" means the amounts to be approved by the Court for service payment awards to the Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero as set forth in Section 9, below.  Defendants shall not oppose the payment to Plaintiffs Turner, Brown, and Montero of reasonable Service Awards in an aggregate amount not to exceed $20,000, in exchange for which they will each execute a general release of all claims. Service Awards are included in the Maximum Gross Settlement Amount.  Service Awards will be paid only if approved by the Court and only if Plaintiffs Turner, Brown, and Montero execute and return their general release of all claims, attached hereto as Exhibit D before the time for mailing such service payment awards.

(v)     "Service Payment Plaintiffs" means the Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero.

(w)     "Settlement Administrator" shall mean Rust Consulting, Inc., or any other firms or successors jointly designated by the Parties and approved by the Court, which will provide notice to *Turner* Plaintiffs, administer Settlement Payments, calculate and pay all appropriate taxes and comply with all applicable tax reporting obligations including preparing and filing all applicable tax forms, and any other tasks specified in this Agreement and/or by order of the Court. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(l)(2) or any other applicable law on or with respect to the QSF, and in accordance with this Agreement

(x)     "Agreement" means this Stipulation and Settlement and Release Agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Agreement between them, and which is subject to Court approval.

(y)     "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

(z)     "Settlement Payment" means checks issued to each of the *Turner* Plaintiffs from the Net Settlement Fund for their proportionate share of the Net Settlement Fund calculated by Plaintiffs' counsel in accordance with this Agreement.

(aa)     "Settlement Letter" means the letter from Class Counsel and approved by the Court that will be mailed by the Settlement Administrator to each of the *Turner* Plaintiffs with

their Settlement Payment, and that will describe the Settlement, including the *Turner* Plaintiff's settlement amount, release, deadline to negotiate Settlement Payment, tax allocation of the Settlement Payment, and confidentiality obligations. The Settlement Letter is attached to this Agreement as Exhibit B.

2.    <u>LITIGATION AND SETTLEMENT BACKGROUND</u>

Named Plaintiff filed this lawsuit on August 17, 2016. In October 2016, Named Plaintiff filed a motion for conditional certification of the collective action. Later in October 2016, Defendants filed a motion for partial summary judgment on Named Plaintiff's regular rate overtime claim. The Parties briefed and argued these motions before the Court. On August 7, 2017, the Court granted Named Plaintiff's motion for conditional certification and denied Defendants' motion for partial summary judgment. After subsequent motion practice on the form of the collective action notice, Class Counsel sent notice of the Lawsuit to potential collective action members, and one hundred twenty-five Opt-in Plaintiffs and Named Plaintiff joined the Lawsuit. Also during the Litigation, the Parties engaged in written discovery and document production. On August 30, 2018, the Parties participated in a day-long mediation with Thomas Wills, an experienced wage and hour mediator.  In advance of the mediation, Defendants produced to Class Counsel time and pay records for all *Turner* Plaintiffs.  Class Counsel calculated alleged damages based on these time and pay records. The mediation was adversarial, at arm's length, and successful as a result of the good faith efforts of the Parties, their counsel, and the mediator.  At the mediation, the Parties reached an accord resulting in this Agreement.  It is the desire and intention of the Parties that the Agreement shall, for the Releasing Persons, fully, finally, and forever completely settle, compromise, release, and discharge Defendants and the Released Parties from all Released Claims.

3.    <u>REASONS FOR SETTLEMENT</u>

(a)    Class Counsel represent that they have diligently and thoroughly investigated the facts of the Lawsuit, including through formal discovery and informal communications with *Turner* Plaintiffs, and researching the legal issues involved.  In advance of the Parties' August 30, 2018 mediation, Class Counsel evaluated time records and payroll records for each of the *Turner* Plaintiffs.  Class Counsel used those records to calculate the maximum gross amount that Class Counsel believe each of the *Turner* Plaintiffs might recover in the litigation, should the Court not decertify the conditionally certified class and the *Turner* Plaintiffs prevail on the merits.  Based on those calculations, Class Counsel believe that the settlement amount and other terms set forth in this Agreement represent the resolution of a bona-fide dispute between the Parties, are fair and reasonable, and are in the best interests of the *Turner* Plaintiffs.  Class Counsel also have taken into account the uncertainty and risks inherent in any litigation, especially in complex collective actions like this one.

(b)    Released Parties make no admission of liability.  Released Parties expressly deny any liability or wrongdoing of any kind associated with the claims in the Litigation, and Released Parties further deny that the Litigation is appropriate for continued collective treatment for any purpose other than settlement and deny the Rule 23 class certification is appropriate.  Defendants and Released Parties contend they have complied with federal and state laws at all times.

(c)    Although the Parties do not abandon the positions they took in the *Turner* Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that this Agreement is fair, reasonable and the best way to resolve the disputes between and among them.

4.    THIS AGREEMENT IS CONTINGENT ON COURT APPROVAL

(a)    The parties shall request that the Court approve, administer, and implement the Agreement with respect to all actions and claims settled in this Agreement.

(b)    The Agreement is contingent upon the approval of the Court and the satisfaction of the other material terms set forth in this Agreement.  If for any reason the material terms of this Agreement are not approved by the Court, this Agreement will be void and of no force and effect.  Further, nothing from the mediation and settlement process, including documents created or obtained through the mediation and settlement process, shall be admissible as evidence in the *Turner* Action or used in any way contrary to the Parties' respective interests.  Whether or not the Agreement is approved by the Court, neither the Agreement nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to any party.

(c)    In the event that the Court fails to approve the Settlement and/or this Agreement, the Parties shall proceed as follows: the Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying approval of the Settlement and/or Agreement, or (b) attempt to renegotiate the term or terms (with the exception of the Maximum Gross Settlement Amount, which will not be renegotiated) the Court disapproves of in the Agreement and seek Court approval of the renegotiated settlement and/or Agreement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive (if any), and Defendants shall have no obligations to make any payments under the Settlement or this Agreement and the Litigation will proceed as if no settlement had been attempted.

5.    <u>STATEMENT OF NO ADMISSION</u>

(a)    Defendants make no admission of liability.  Defendants and Released Parties deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the collective and class allegations asserted in the *Turner* Action. Defendants agree to resolve the *Turner* Action via this Agreement, but to the extent this Agreement is not approved by the Court, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted by the *Turner* Plaintiffs in the *Turner* Action upon all procedural and substantive grounds, including without limitation the ability to challenge collective action and class treatment on any grounds and to assert any and all other potential defenses or privileges. The *Turner* Plaintiffs agree that Defendants retain and reserve these rights, and they agree not to take a position to the contrary. Specifically, the Named Plaintiff, *Turner* Plaintiffs and Class Counsel agree that, if the *Turner* Action were to proceed, they will not argue or present any argument, and hereby waive any argument that, based on this settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed or drafted pursuant to or in furtherance of this Settlement or this Agreement, Defendants should be barred from pursuing decertification of the conditionally certified collective action or opposing any Rule 23 class certification motion, or from asserting any and all other potential defenses and privileges. This Agreement shall not be deemed an admission by, or a basis for estoppel against, Defendants that liability or certification pursuant to 29 U.S.C. § 216(b) or Fed. Rule Civ. P. 23 in the *Turner* Action is proper or cannot be contested on any grounds. Additionally, neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any released claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may

12

be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.  However, the provisions of this Agreement may be used by the Parties to enforce the terms of this Agreement, but this Agreement and any term(s) contained herein shall not be used as evidence in any other legal proceeding or for any other purpose whatsoever.

(b)    By entering into the Agreement, the Released Parties do not admit liability or wrongdoing and expressly deny the same. It is expressly understood and agreed by the Parties that the Agreement is being entered into by Defendants solely for the purpose of avoiding the cost and disruption of ongoing litigation and resolving the claims asserted in the Litigation on the terms set forth herein.   Nothing in the Agreement or any motions filed or Orders entered pursuant to the Agreement may be construed or deemed an admission by the Released Parties of any liability, culpability, negligence, or wrongdoing, and the Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Agreement. Furthermore, neither the Agreement, any motions filed, settlement offers and/or proposals, and information and/or documents exchanged by the Parties or Orders entered pursuant to the Agreement, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification was satisfied in the Litigation or any other action, except for the limited settlement purposes pursuant to the terms of the Agreement.

6.    <u>MONETARY TERMS OF SETTLEMENT</u>

(a)    Within ten (10) business days after the Effective Date, Defendants shall transfer the Maximum Gross Settlement Amount into the QSF. No other funds shall be added to or

comingled in the QSF, except additional funds transferred by Defendants to pay Defendants' Employer Payroll Taxes.

(b)     With respect to the Settlement Account, the Settlement Administrator shall: (1) open and administer the Settlement Account in such a manner as to qualify and maintain the qualification of the Settlement Account as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1; (2) calculate, withhold, remit and report each *Turner* Plaintiff's share of applicable payroll taxes in connection with the Settlement Payments; (3) calculate the Employer Payroll Taxes for each *Turner* Plaintiff  in connection with their Settlement Payments and advise Defendants of such amounts and remit such amounts upon payment by Defendants of such amounts to the QSF; (4) satisfy all tax reporting, return and filing requirements with respect to the Settlement Account and any interest or other income earned by the Settlement Account; and (5) satisfy out of the Settlement Account all taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Settlement Account. Fees, expenses and costs incurred in connection with the opening and administration of the Settlement Account shall be treated as and included in the costs of administering the Settlement Account and as Administration Costs.  The Parties and the Settlement Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 C.F.R. § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Settlement Administrator and one another as necessary to effectuate the terms of this Agreement.

(c)     The Settlement Account shall be used to pay:

(i)     Court-approved Settlement Payments to the *Turner* Plaintiffs;

14

(ii)    The Plaintiffs' Attorneys' Fees and Litigation Costs, as awarded by the Court;

(iii)    The Service Awards, as awarded by the Court; and

(iv)    The Administration Costs.

(d)    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement.  The Settlement Administrator will provide reports to counsel for the Parties regarding the status of the mailing of the Settlement Letters and Settlement Payments and undeliverable Settlement Letters and Settlement Payments. The Settlement Administrator shall on a bi-weekly basis compile and transmit to Defendants' Counsel and Plaintiffs' Counsel copies of all negotiated Settlement Payment checks.  The Settlement Administrator will also retain a copy of negotiated Settlement Payments to Defendants.

(e)    Under no circumstance will any payment made by Defendants pursuant to this Agreement exceed the Maximum Gross Settlement Amount, other than Defendants' Employer Payroll Taxes.  Defendants will have no responsibilities or liabilities with respect to the administration of the Settlement Account, including any distribution therefrom and the reporting for such distribution. The responsibility for filing tax returns of the QSF with the U.S. Internal Revenue Service or any other taxing authority, and the provision of tax informational reports to the *Turner* Plaintiffs, is solely the Settlement Administrator's. The Settlement Administrator will indemnify, defend, and hold Defendants harmless for any liability Defendants may incur arising out of the Settlement Administrator's performance of tax withholding and tax reporting duties of the QSF.

(f)     From the Maximum Gross Settlement Amount, the following will be deducted to determine the "Net Settlement Fund":

(i)     Court approved "Service Awards" in the maximum amount of $10,000.00 to Named Plaintiff and $5,000.00 each to Opt-in Plaintiffs Brown and Montero;

(ii)     Court approved "Plaintiffs' Attorneys' Fees," in the maximum amount of $300,000.00;

(iii)     Court approved "Litigation Costs," in the maximum amount of $17,578.97, inclusive of the Settlement Administration Costs set forth in section 6(f)(iv) below; and

(iv)     Settlement "Administration Costs" not to exceed the amount of $10,000.00.

(g)     After the Net Settlement Fund is calculated, the Net Settlement Fund will be divided among the *Turner* Plaintiffs *pro rata* based on Class Counsel's individual computations of allegedly unpaid overtime wages, to determine each *Turner* Plaintiff's individual Settlement Payment.  Each Settlement Payment shall be calculated according to the following criteria:

(i)     For each of the *Turner* Plaintiffs, the following formula shall be applied to determine the gross amount of overtime wages allegedly owed, using time and payroll documents previously produced by Defendants (as described below):

Total Regular Wages ÷ 40 = Regular Rate of Pay;

Total Hours Worked – 40 = Overtime Hours Worked;

Overtime Hours Worked * Regular Rate of Pay * 1.5 = Overtime Wages; and

Overtime Wages – Overtime Wages Paid = Settlement Overtime Wages.

Defendants state that this formula is for settlement allocation purposes only, and they do not concede the proper divisor is 40 hours or that Class Counsel's calculation formula above is the correct measure of alleged damages or that any damages are due and/or owing to *Turner* Plaintiffs. Plaintiffs' counsel have proposed the above calculation as a method to allocate Settlement Payments between the *Turner* Plaintiffs and Defendants do not oppose allocation based on Plaintiffs' calculations for purposes of settlement only.

(ii)    The Net Settlement Fund shall be divided by the sum of all *Turner* Plaintiffs' Total Settlement Overtime Wages. The quotient, expressed as a percentage, shall represent the "Pro Rata Factor." Each *Turner* Plaintiff's name, Pro Rata Factor, and estimated gross Settlement Payment amount are identified on Exhibit C to the Agreement.

(iii)    Each *Turner* Plaintiff's Settlement Overtime Wages shall be multiplied by the Pro Rata Factor to determine each *Turner* Plaintiff's "Settlement Payment." The total amount of each *Turner* Plaintiff's Settlement Payment shall not exceed the Net Settlement Fund.

(h)    Each *Turner* Plaintiff's Settlement Payment shall be delivered in one check to each *Turner* Plaintiff by the Settlement Administrator, allocated for purposes of settlement as follows:

(i)    One-half of each Settlement Payment will represent alleged unpaid overtime wages. Regular employee payroll deductions shall be taken out of this portion of each Settlement Payment by the Settlement Administrator. Federal income tax on that amount will be withheld for the *Turner* Plaintiffs at a flat rate of 29.65 percent (22% for federal taxes and 7.65% for social security and Medicare). State income tax will be withheld according to applicable state withholding requirements at an amount not less than 7.00% for *Turner* Plaintiffs who

worked in South Carolina and 5.599% for *Turner* Plaintiffs who worked in North Carolina.[3]  For current employees only, the wages amount will be subject to deductions for garnishments, liens, and child support orders, if any.  Defendants' Counsel will supply the claims administrator with information relating to any garnishments, liens, or child support orders for current employees, including a copy of any garnishment, lien, or child support order, within fourteen (14) business days after Court's approval of the settlement. Such information shall also be made available to Plaintiffs' Counsel at the same time. If Plaintiffs' Counsel determines that such deduction or garnishment is inappropriate, the Parties agree to confer in an attempt to resolve the issue prior to disbursement to that individual. The Settlement Administrator shall issue each of the *Turner* Plaintiffs who negotiates his or her Settlement Payment an IRS Form W-2 for this portion of the Settlement Payment.

(ii)     One-half of each Settlement Payment will represent alleged liquidated damages, non-wage compensation.  Payroll deductions and income taxes shall not be taken from this portion of each Settlement Payment, or from the Service Awards, provided that the *Turner* Plaintiffs have provided completed IRS Form W-9s. The Settlement Administrator shall issue the *Turner* Plaintiffs who negotiate their Settlement Payment an IRS Form 1099 for the non-wage damages portion of each Settlement Payment.  The Settlement Administrator shall also issue to the Named Plaintiff and Opt-in Plaintiffs Brown and Montero Form 1099s for the amount of their Court-ordered Service Awards.

(iii)     The Settlement Administrator shall timely issue tax information returns and appropriate forms to the IRS and appropriate state tax authorities for North Carolina and

---

[3]     If the Settlement Administrator determines that different tax withholding rates apply than those provided in this Agreement, the Settlement Administrator shall notify counsel for the Parties in writing. The Settlement Administrator shall use the tax withholding rates it determines are correct, provided counsel for the Parties agree.

South Carolina for *Turner* Plaintiffs who negotiate their settlement payments. The Settlement Administrator shall also be responsible for timely making all tax deposits with the IRS and appropriate state tax authorities for North Carolina and South Carolina, including timely filing the required federal form 941 and North Carolina and South Carolina payroll tax returns.

(iv)    Payment of the employee portion of all applicable income and payroll taxes will be the sole responsibility of the *Turner* Plaintiffs negotiating a Settlement Payment or Service Award. Released Parties make no representations and provide no advice, and it is understood and agreed that Released Parties have made no representations and have provided no advice, as to the taxability of any portions of the Settlement Payments to any *Turner* Plaintiffs, the payment of any costs or award of Plaintiffs' Attorneys' Fees and Litigation Costs, or any Service Award payments. The Settlement Letter will advise *Turner* Plaintiffs to seek their own tax advice prior to acting in response to that Settlement Letter. Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(v)    Defendants shall have no liability or responsibility whatsoever for taxes of the QSF, any *Turner* Plaintiff, any *Turner* Plaintiff receiving a Service Award, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with U.S. Internal Revenue Service or any other taxing authority. Recipients of any payments made pursuant to this Agreement will be solely responsible for all taxes, interest and penalties owed by such recipients with respect thereto, and will indemnify, defend, and hold Released Parties and the Settlement Administrator harmless from and against any and all taxes and interest as a result of such recipient's failure to timely pay such taxes.

Any failure of the *Turner* Plaintiffs to deposit a check shall not affect the enforceability of the release of Released Claims contained in this Agreement, as the Parties agree that valid consideration for the same is Defendants paying the Maximum Gross Settlement Amount and the offer of monetary consideration by means of the offer of Settlement and mailing of the *Turner* Plaintiffs' Settlement Payments.

(i)    Defendants shall be responsible for the Employer Payroll Taxes.  Other than the withholding and reporting requirements herein, which are the responsibility of the Settlement Administrator, the *Turner* Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement.

(j)    To the extent permitted by law, in no event shall any Settlement Payment to any of the *Turner* Plaintiffs or the Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

(k)    The Settlement Administrator shall determine the Employer Payroll Taxes on the taxable portion of the Settlement Payments to the *Turner* Plaintiffs, and shall communicate such amounts to Defendants with a detailed explanation of the calculations within seven (7) calendar days after the Effective Date.  In the event Defendants dispute the calculation of Employer's

Payroll Taxes, Defendants and the Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. Within seven (7) calendar days of the date the Settlement Administrator notifies Defendants of the amount of the employer's share of Employer Payroll Taxes, or within seven (7) calendar days after any dispute related to the amount is finally resolved, or within ten (10) business days after the Effective Date, whichever is later, Defendants shall make any additional payment to the Settlement Account for payroll taxes as may be necessary. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendants agree to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the Employer Payroll Taxes payment required under this Section.

(l)     In the event that it is subsequently determined by a tax authority that any of the *Turner* Plaintiffs owe any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the *Turner* Plaintiff(s) and the tax authorities, and that Released Parties will not be responsible for the payment of such taxes, including any interest and/or penalties.

7.    RELEASE OF CLAIMS

In order to settle the Litigation, and as consideration for Defendants' payment of the Maximum Gross Settlement Amount and the other good and valuable consideration described herein, the *Turner* Plaintiffs agree to release any claims they may have against RELEASED PARTIES as described herein:

(a)     *Turner Plaintiffs (but not the Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero)*

On the Effective Date, the Releasing Persons shall release and discharge the Released Parties of all Released Claims that have accrued from August 17, 2013 through the date Court enters the Approval Order. The Settlement Letter to *Turner* Plaintiffs will include the definition of the Released Claims.

The "Released Claims" shall mean the following:  Effective on the Effective Date, the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge Defendants and the Released Parties from any and all claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Releasing Person has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation that occurred at any time through the date Court enters the Approval Order.   The claims released include: (1) any and all claims asserted at any time in the Complaint; and (2) all federal and state overtime claims against Released Parties, related claims for penalties (including late payment penalties), interest, liquidated damages, Plaintiffs' Attorneys' Fees and Litigation Costs, restitution and equitable relief.

(b)      *Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero*:

In exchange for their Service Awards, on the Effective Date, Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero shall release and discharge the Released Parties from:

(i)      all Released Claims that have accrued from August 17, 2013 through the date Court enters the Approval Order; (1) any and all claims asserted at any time in the Complaint; (2) all federal and state overtime claims against Released Parties; (3) all federal and state overtime claims, related claims for penalties (including late payment penalties), interest, liquidated damages, Plaintiffs' Attorneys' Fees and Litigation Costs, restitution and equitable relief; (4) damages including but not limited to back pay and liquidated damages, or relief of any kind under any federal, state, local, or other applicable law, including but not limited to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and any and all claims under any federal, state, local, or other applicable law for wages, overtime, minimum wages, miscalculated wages, improper deductions, hours worked, and/or missed or interrupted meal breaks, including any claims for breach of express contract, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, promissory estoppel, equitable estoppel, fraud, negligent misrepresentation, conversion, and failure to keep accurate records, and any other claims under tort, contract, or quasi-contract theories; and (5) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations whether or not stated in the Complaint. Nothing in this Release of Claims shall release any claims under state workers' compensation laws or any claims that cannot be released as a matter of law.

(ii)      Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero on behalf of themselves and the Releasing Persons[4] further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay,

---

[4] "Releasing Persons" in this Paragraph means Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero and Named Plaintiff and Opt-in Plaintiffs Jeronica Brown and Christopher Montero's respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns.

liquidated damages, other damages, penalties, or any other form of relief based on any of the Released Claims or any claims asserted or settled in the Complaint which may arise out of, or in connection with any other individual, representative, collective, class, administrative, or arbitral proceeding pursued by any individual(s), class, union, or any federal, state or local governmental agency against any of the Released Person.[5] Releasing Persons further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement and Settlement Agreement that Releasing Persons have, had, might have or might have had against Defendants and/or any of the Released Persons based on any act or omission that occurred up to and including the Effective Date.  Releasing Persons will not file, cause to be filed, or affirmatively join or opt in, as a collective or class member, beneficiary or other participant in any lawsuit with respect to the subject matter of the Complaint or any other claim released under the Release of Claims and, if involuntarily joined in any lawsuit against any Released Persons with respect to the subject matter of the Complaint or any other claim released under the Release of Claims, Releasing Persons agree to waive their right to any recovery that may result from such lawsuit or proceeding, and not to pursue claims on her/his own behalf. Notwithstanding the foregoing, nothing prevents or limits Releasing Persons from filing a charge or participating in an investigative proceeding of the Equal Employment Opportunity Commission or other governmental agency.

---

[5] "Released Persons" in this Paragraph refers to Defendants and their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Defendants, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was named as a defendant in the above-captioned Litigation and any individual or entity which could be jointly liable with Defendants and could have been named as a defendant and any other persons or entities acting on their behalf.

(c)     The Releasing Persons further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages, penalties, or any other form of relief based on any of the Released Claims or any claims asserted or settled in the Litigation which may arise out of, or in connection with any other individual, representative, collective, class, administrative, or arbitral proceeding pursued by any individual(s), class, union, or any federal, state or local governmental agency against any of the Released Parties. Releasing Persons further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement and Agreement that Releasing Persons have, had, might have or might have had against Defendants and/or any of the Released Parties based on any act or omission that occurred up to and including the date Court enters the Approval Order. Releasing Persons will not file, cause to be filed, or affirmatively join or opt in, as a collective or class member, beneficiary or other participant in any lawsuit with respect to the subject matter of the Litigation or any other claim released under the Release of Claims and, if involuntarily joined in any lawsuit against any Released Party with respect to the subject matter of the Litigation or any other claim released under the Release of Claims, Releasing Persons agree to waive their right to any recovery that may result from such lawsuit or proceeding, and not to pursue claims on her/his own behalf. Notwithstanding the foregoing, nothing prevents or limits Releasing Persons from filing a charge or participating in an investigative proceeding of the Equal Employment Opportunity Commission or other governmental agency.

(d)     Class Counsel and Named Plaintiff, for themselves and on behalf of the *Turner* Plaintiffs represent and warrant that nothing that would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to

any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigations, or any related action.

(e)    *Turner* Plaintiffs are bound by the terms and conditions of the Agreement, the Court's Approval Order, the judgment and the applicable release(s) set forth herein.

8.    <u>PLAINTIFFS' ATTORNEYS' FEES AND LITIGATION COSTS</u>

(a)    In their motion seeking approval of the Agreement, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Maximum Gross Settlement Amount as an award of their Attorneys' Fees in the Litigation.  In addition, Plaintiffs' Counsel shall also seek reimbursement of reasonable actual Litigation costs and expenses from the Maximum Gross Settlement Amount not to exceed $17,578.97.  These amounts shall constitute full satisfaction of any claim for Plaintiffs' Attorneys' Fees and Litigation Costs, and *Turner* Plaintiffs agree that they shall not seek, nor be entitled to, any additional Plaintiffs' Attorneys' Fees and Litigation Costs under any theory or from any source, incurred in relation to the *Turner* Action. Defendants will not oppose such application. If the Court awards less than one-third of the Gross Settlement Amount to Plaintiffs' Counsel for Attorneys' Fees or awards less than Plaintiffs' Counsel's requested Litigation Costs, then Named Plaintiff reserves the right to file an appeal only as to the allocation of Class Counsel's Attorneys' Fees and Litigation Costs and/or the Service Awards.

(b)    The substance of Plaintiffs' Counsel's application for Attorneys' Fees and Litigation Costs is not part of this Joint Stipulation and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Joint Stipulation.  The outcome of any proceeding related to Plaintiffs' Counsel's application for Attorneys' Fees and Litigation Costs shall not terminate this Joint Stipulation or otherwise affect the Court's ruling on the motion for settlement approval.  In the event that the

Court (or any appellate court) awards less than the requested amounts of Plaintiffs' Attorneys' Fees and Litigation Costs, only the awarded amounts shall be paid from the Maximum Gross Settlement Fund and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.

(c)    Named Plaintiff and Class Counsel understand and agree that any Plaintiffs' Attorneys' Fee and Litigation Costs payments made under Section 8 of this Agreement will be the full, final, and complete payment of all Plaintiffs' Attorneys' Fees and Litigation Costs arising from or relating to the representation of the Named Plaintiff, *Turner* Plaintiffs, or any other Plaintiffs' Attorneys' Fees and Litigation Costs associated with the investigation, discovery, and/or prosecution of the *Turner* Action.  As an inducement to Defendants to enter into this Agreement, and as a material condition thereof, Named Plaintiff, *Turner* Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendants and Released Parties for Attorneys' Fees and Litigation Costs arising from or relating to the individuals and matters identified in this Section 8.  As a further inducement to Defendants to enter into this Agreement, and as a material condition thereof, Named Plaintiff, *Turner* Plaintiffs, and Class Counsel further understand and agree that the Plaintiffs' Attorneys' Fees and Litigation Costs payments made pursuant to this Section 8 will be the full, final, and complete payment of all Plaintiffs' Attorneys' Fees and Litigation Costs that are released, acquitted, or discharged under this Agreement.  As further inducement to Defendants to enter into this Agreement, and as a material condition thereof, Named Plaintiff, *Turner* Plaintiffs, and Class Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for Plaintiffs' Attorneys' Fees and Litigation Costs, including, but not limited to, bills of costs or requests for

Plaintiffs' Attorneys' Fees and Litigation Costs arising out of the *Turner* Action, and Named Plaintiff, *Turner* Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendants and Released Parties of any liability for such fees and/or costs.  Furthermore, Named Plaintiff, *Turner* Plaintiffs, and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the *Turner* Action, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the *Turner* Action.  Nothing in this Section shall preclude the Named Plaintiff from appealing the allocation of Class Counsel's Attorneys' Fees and Litigation Costs and/or the Service Awards should the sum awarded by the Court fall below that requested.

(d)    Plaintiffs' Counsel agree to provide the Settlement Administrator with any information required to effectuate the payment of the Plaintiffs' Attorneys' Fees and Litigation Costs and tax reporting obligations related to the same. Payments of Plaintiffs' Attorneys' Fees and Litigation Costs pursuant to this Agreement shall be made without tax withholdings, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide a form W-9 for this purpose, on an IRS form 1099. In addition, a pro rata portion of the Plaintiffs' Attorneys' Fees and Litigation Costs shall be reported to the *Turner* Plaintiffs, without tax withholdings on an IRS Form 1099.

9.    SERVICE AWARDS

In their motion seeking approval of the Settlement and Agreement, Class Counsel will move for Service Awards of $10,000.00 for the Named Plaintiff and $5,000 each for Opt-in Plaintiffs Jeronica Brown and Christopher Montero for their service to the *Turner* Plaintiffs. These Service Awards are subject to approval by the Court.  Defendants agree not to oppose the request for Service Awards in the amount of $20,000 total.   The Service Awards and any

requirements for obtaining any such payment are separate and apart from, and in addition to Named Plaintiff's and Opt-in Plaintiffs Brown's and Montero's Settlement Payment from the Net Settlement Fund. The substance of the Named Plaintiff's application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of this Agreement. If the Court awards less than the requested amount of $20,000 in Service Award payments, the remainder will be added to the Net Settlement Fund described in Section 6(g). Any reduction by the Court in the Service Award awarded will not be a basis for rendering the entire Agreement voidable or unenforceable. Any Service Award pursuant to this Agreement and in the amount to approved by the Court shall be made without any taxes or withholdings and be reported to the IRS, Named Plaintiff, and Opt-in Plaintiffs Brown and Montero under the their respective names and social security numbers on an IRS form 1099. Signature of the general release attached as Exhibit D by a prospective Service Award recipient is a prerequisite to that individual receiving his or her Service Award.

10. <u>SETTLEMENT TIMELINE</u>

The Parties agree to follow the following timeline for the completion of the settlement process and the dismissal of this Action:

(a)    <u>Settlement Approval</u>: On or before November 14, 2018, Plaintiffs' Counsel shall file a Motion for Settlement Approval in the *Turner* Action requesting that the Court approve this Agreement. Plaintiffs' Counsel will provide Defendants with a draft of the Motion for Settlement Approval for review and comment before submitting it to the Court, and Defendants will provide Plaintiffs with their comments within a reasonable amount of time after receiving the draft Approval Motion. Among other things, the Motion for Settlement Approval will ask the Court to: (1) allow this Agreement to be reviewed in-camera; (2) approve the Parties' Confidential Stipulation and Settlement and Release Agreement as expressed therein, submitted

for in-camera review as Exhibit 1 (or as the same may be modified by subsequent mutual agreement, in writing, of the Parties), adjudging the terms of the Confidential Stipulation and Settlement and Release Agreement to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (3) approve the proposed Settlement Letter, submitted for in-camera review as Exhibit B, to be distributed to the *Turner* Plaintiffs and the distribution process as outlined in Section 10(b) of the Confidential Stipulation and Settlement and Release Agreement; (4) appoint Darren Turner as the Representative Plaintiff; (5) approve Plaintiffs' Counsel request for Plaintiffs' Attorneys' Fees and Litigation Costs as outlined in the Confidential Stipulation and Settlement and Release Agreement; (6) approve the requested Service Awards to Turner and opt-in plaintiffs Jeronica Brown and Chris Montero as outlined in the Confidential Stipulation and Settlement and Release Agreement; and (7) retain jurisdiction over this action and the Parties to administer, supervise, interpret, and enforce the Confidential Stipulation and Settlement and Release Agreement, until all obligations pursuant to the Confidential Stipulation and Settlement and Release Agreement are satisfied. Plaintiffs' Counsel will not file or attach as an exhibit to the Motion for Settlement Approval a copy of the Agreement and will not include in the Motion for Settlement Approval any material terms of the Agreement, including, but not limited to, the monetary terms of the Settlement.

(b)     <u>Issuance of Settlement Payments, Service Award And Fees to Class Counsel</u>: The Settlement Administrator shall make the following payments:

(i)     Within thirty-one (31) days after the Effective Date, the Settlement Administrator will mail the Settlement Letter, a copy of the Approval Order, and Settlement Payment checks to the *Turner* Plaintiffs. Nothing other than the documents listed in this paragraph shall be included in this mailing.

(ii)        Prior to the mailing referenced in Paragraph 10(b)(i) herein, the Settlement Administrator shall attempt to confirm the accuracy of the addresses of Plaintiffs through the United States Post Office's National Change of Address ("NCOA") database.  All mailings by the Settlement Administrator shall be by first class mail, except the service award payments, which will be sent via Fed Ex.  If a mailing is returned as undeliverable, the Settlement Administrator will perform one skip trace and resend by first class mail the Court-authorized Settlement Letter, and Settlement Payment checks once only to Plaintiffs for whom it obtains more recent addresses.

(iii)        Plaintiffs' Counsel shall not be barred by this Settlement Administrator from communicating with or responding to inquiries they receive from Plaintiffs.  Nothing in this Agreement shall be construed to prevent Defendants from communicating with any of its employees, except for Opt-In's in this case, regarding any matter, including this Litigation or this Agreement.

(iv)        The Settlement Payment checks shall be negotiable by the *Turner* Plaintiffs for 120 days from the date they were issued and mailed by the Settlement Administrator.  The face of each check sent to the *Turner* Plaintiffs shall clearly state that the check must be cashed within 120 days of the date it was issued.

(v)        If any Settlement Notice mailing is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will notify Plaintiffs' Counsel and Defendants' Counsel and Plaintiffs' Counsel will attempt to contact the *Turner* Plaintiff to obtain a valid address.  However, the deadline to negotiate the Settlement Payment checks will not be extended beyond the 120-day period commencing the date on which the Settlement Administrator originally mailed the Settlement Payment checks in the Settlement Notice mailing.

(vi)     Should any settlement payment be negotiated by a person other than a *Turner* Plaintiff for whom it was intended, such negotiation shall be the sole responsibility of the Settlement Administrator or Class Counsel.  Defendants shall have no responsibility and shall incur no liability arising from each such occurrence.

(vii)     If any settlement check is not negotiated within the 120-day period, that settlement check will be voided, and a stop-payment will be placed on the settlement check.  Any individual final settlement payment or portion thereof that remains unclaimed for any reason one hundred twenty (120) calendar days following the mailing of the final settlement payment shall be deemed unclaimed.  In such event, the *Turner* Plaintiffs will be deemed to have irrevocably waived any right in or claim to a final settlement payment, but this Agreement and release of claims contained herein nevertheless will be binding upon them. Unless otherwise required by the relevant state escheatment laws, one hundred percent (100%) of such unclaimed funds shall revert to Defendants and remain the exclusive property of Defendants.  Neither counsel for Defendants, Plaintiffs' Counsel, nor the *Turner* Plaintiffs shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks.  Without limiting the foregoing, in the event a *Turner* Plaintiff notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check.  If the settlement check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check, from which the fees associated with the stop payment order will first be deducted. If the settlement check in question has been negotiated prior to the stop payment order, the *Turner* Plaintiff shall be responsible for reimbursing the Settlement Administrator for the fees associated with the stop payment order, and no additional

payment shall be made unless such stop payment order is effective. If any settlement check is not

negotiated in that period of time, that settlement check will be voided.  Unless otherwise required

by the relevant state escheatment laws, one hundred percent (100%) of such unclaimed funds

shall be retained by Defendants. The Settlement Administrator will make a final accounting of

the QSF and send any reversionary funds to Defendants within ten (10) days of the end of the

120-day period, unless applicable state escheatment laws require otherwise.

(viii)    Within fifteen (15) business days after the Effective Date or, if the Court

awards less than Plaintiffs' Counsels' request for Attorneys' Fees and Litigation Costs, within

fifteen (15) business days after the deadline to appeal such Order or an appeal of such Order is

complete, whichever occurs last, the Settlement Administrator shall transfer electronically or by

check, as Class Counsel directs, Plaintiffs' Attorneys' Fees and Litigation Costs.

(ix)    The payment from the Settlement for any Court-approved Service

Awards to Named Plaintiff and Opt-in Plaintiffs Brown and Montero will be sent by the

Settlement Administrator to Named Plaintiff and Opt-in Plaintiffs Brown and Montero via

overnight delivery within fifteen (15) business days after the Effective Date.

(x)    In the event that any amount of the Maximum Gross Settlement Amount

remains in the Settlement Account after the Settlement Administrator makes all payments as

identified in this Section 10 and after expiration of the 120-day period identified in this Section

10(b)(iv) above, such funds shall be returned by the Settlement Administrator to Defendants

within twenty (20) business days after the expiration of the 120-day period identified in this

Section 10(b)(iv) above.

(c)    Dismissal of Actions:  The Court's Approval Order shall dismiss the Litigation

with prejudice, and such will be binding on all *Turner* Plaintiffs regardless of whether the

33

Settlement Payments are negotiated.   Notwithstanding the foregoing, the Court shall retain jurisdiction to enforce the terms of this Joint Stipulation.

11.     <u>NON-DISCLOSURE, NO MEDIA CONTACTS AND CONFIDENTIALITY</u>

(a)     The Named Plaintiff, Opt-in Plaintiffs Brown and Montero, Plaintiffs' Counsel, Defendants, Defendants' Counsel shall not: (1) issue a press release or otherwise notify the media about the terms of the Agreement; or (2) advertise or make any public statements regarding any of the terms of the Agreement through written, recorded or electronic communications or by website posting. The Settlement Letter will instruct the remaining *Turner* Plaintiffs not to do the same.

To the extent that Plaintiffs' Counsel or Defendants' Counsel is contacted by the media about this Agreement, they shall be permitted to respond to such inquiries by stating that the Parties have reached a settlement subject to court approval, and that the Parties believe they have reached a fair and reasonable settlement of the disputed claims.  Provided, however, if the *Turner* Plaintiffs notify or disclose any of the terms of the Agreement to any members of the media, Defendants may respond to such inquiries as it deems appropriate.  Named Plaintiff, Opt-in Plaintiffs Brown and Montero, Plaintiffs' Counsel, Defendants, and Defendants' Counsel may not disclose to any members of the media any of the specific terms of the Agreement.

(b)     Nothing in this Agreement shall prevent Defendants from filing any required regulatory disclosures regarding the Litigation or settlement or complying with its obligations under the law.

(c)     The Parties mutually agree that their counsel will notify counsel for the other Party within five (5) business days of their receipt of any demand or compulsion by law to disclose the negotiations leading to this Agreement or the terms of this Agreement, and will

cooperate fully with the other Party if either Party decides to challenge the demand or legal compulsion to disclose this information.

12.     <u>PARTIES WILL SEEK TO HAVE THE AGREEMENT REVIEWED IN CHAMBERS</u>

The Parties agree to cooperate and take all steps necessary and appropriate to obtain the Court's approval of the terms of the Agreement, to effectuate all aspects of the Agreement and to dismiss the Litigation with prejudice upon approval of the terms of the Agreement and by operation of the Agreement. Further, the Parties agree to seek in camera review of the Agreement and avoid its public filing if the Court will permit them to do so. The Parties agree that being permitted to seek in chambers review of the Agreement is not a material term of the Settlement.

13.     <u>NO     COMMUNICATION     WITH     NON-*TURNER*     PLAINTIFFS     AND CONFIDENTIALITY OF RETAINED MATERIALS</u>

All information, documents and data obtained from Defendants by Plaintiffs' Counsel during the Litigation will be kept strictly confidential by Plaintiffs' Counsel and will not be used for any purpose, including, but not limited to, in other proceedings against Defendants or Released Parties.  Plaintiffs' Counsel agrees not to initiate contact with any individuals who were on the list of potential collective action members produced by Defendants (the "List") in this lawsuit but who did not opt-in to the lawsuit.  Plaintiffs' Counsel will retain all information, documents and data, including, but not limited to, the List, solely for the purposes of record retention and will not use for any reason or share such information, documents or data with any person or any entity.

14.     <u>MUTUAL FULL COOPERATION</u>

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to

effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure Court approval of this Agreement.

15.    <u>CONSTRUCTION</u>

The terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between and among the Parties. Accordingly, this Agreement is not to be construed in favor of or against any party by reason of the extent to which any party or its counsel participated in the drafting of the Agreement.

16.    <u>FORM AND CONTENT</u>

The Parties agree they must reach agreement on the form and content of the Agreement and its exhibits, the Motion for Approval, and the Approval Order.

17.    <u>INTEGRATION</u>

This Agreement contains the entire agreement between the Parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. There are no undisclosed side agreements between the Parties or their counsel. It is understood and agreed by each party that this Agreement specifically supersedes any and all prior agreements and understandings, written or

oral, express or employed, between Defendants and Class Counsel. No rights hereunder may be waived except in writing.

18.    BINDING ON SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

19.    MODIFICATION

This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Agreement may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

20.    APPLICABLE LAW

The terms of this Agreement shall be governed by and construed in accordance with South Carolina law, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

21.    RETENTION OF JURISDICTION

The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

22.    COUNTERPARTS, PHOTOGRAPHIC/FACSIMILE COPIES, AND ELECTRONIC SIGNATURES

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Photographic or facsimile copies of any such signed

counterparts may be used in lieu of the original for any purpose. The Parties may sign electronically through DocuSign or a comparable program that enables the signer to draw a unique signature.

23.    <u>TERMINATION OF THE AGREEMENT</u>

(a)    This Confidential Stipulation and Settlement and Release Agreement may be terminated on the following grounds:

(i)    Class Counsel or Defendants' counsel may terminate the Agreement if the Court declines to enter an Approval Order or judgment in the form submitted by the Parties, or the Agreement does not become final for any other reason.  To terminate this Agreement on this ground, the terminating Counsel (*i.e.*, Class Counsel or Defendants' Counsel) shall give written notice to the opposing Counsel no later than 15 business days after the Court acts or no later than 15 business days following resolution of an appeal of the Court's Order approving the Settlement or another issue and the appeal is not resolved in favor of final approval; or

(ii)    Defendants' counsel may terminate the Agreement if the Agreement is not effective as to Named Plaintiff and all of the *Turner* Plaintiffs (i.e., Named Plaintiff and all of the 125 Opt-in Plaintiffs must settle, comply with, and be bound by the Agreement or Defendants' counsel may terminate the Agreement).

(b)    In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, pursuant to this Paragraph, or the settlement of the Litigation is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court:

(i)    The Agreement shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(ii)     In the event the Agreement is terminated, Defendants shall have no obligation to make any payments to any party, any of the *Turner* Plaintiffs, or Class Counsel;

(iii)     Any Approval Order and/or judgment shall be vacated;

(iv)     The Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(v)     Neither this Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever unless used to resolve breach of this Agreement; and

(vi)     Defendants reserve the right to move to decertify the FLSA collective action and oppose Rule 23 class certification should the Agreement not become final for any reason.

24.     PARTIES' AUTHORITY

(a)     The signatories hereto represent and warrant that they are fully authorized to enter into this Agreement and bind the respective Parties to its terms and conditions.

(b)     Named Plaintiff and Class Counsel, covenant and represent that they are the duly-authorized legal agents for all of the *Turner* Plaintiffs, with respect to the Litigation and this Agreement, and that they have the legal right and authority to act as representatives of all of the *Turner* Plaintiffs and to make decisions on behalf of all of the *Turner* Plaintiffs concerning the method and manner of conducting the Litigation and the execution of this Agreement.

(c)     Named Plaintiff and Class Counsel acknowledge that they are fully authorized to bind themselves and all of the *Turner* Plaintiffs to all terms and conditions set forth in this Agreement.

(d)    The Settlement Letter and Approval Order will advise all of the *Turner* Plaintiffs of the binding nature of the release, and that the release will have the same force and effect upon all of the *Turner* Plaintiffs as if the Agreement were executed by each of the *Turner* Plaintiffs individually.

25.    <u>NOTICES</u>

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To *Turner* Plaintiffs:

Scott Falls
Ashley L. Falls
Falls Legal, LLC
245 Seven Farms Drive, Suite 250
Charleston, SC 29492
Telephone: (843) 737-6040
scott@falls-legal.com
ashley@falls-legal.com

To Defendants:

Jerry H. Walters, Jr.
Admitted pro hac vice
LITTLER MENDELSON, P.C.
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
jwalters@littler.com

26.    <u>MISCELLANEOUS TERMS</u>

(a)    Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(b)     No Assignment.  Plaintiffs' Counsel and Plaintiff Turner, for themselves and on behalf of the *Turner* Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.  Upon the Effective Date of this Agreement, Plaintiffs' Counsel and Named Plaintiff shall be deemed to have given this warranty.

(c)     Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(d)     Waivers, Modification, Amendments to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(e)     Common Meaning of Words.  To the extent necessary to effectuate the terms of this Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

(f)     Calculation of Time Periods.  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.   In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the observance of New Year's, the birthday of Dr. Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal or a South Carolina state holiday on which the Court is closed.

(g)     Intent. This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims by Named Plaintiff and *Turner* Plaintiffs.

(h)     Inconsistencies Between Settlement Letter and This Agreement.  To the extent that there are matters not covered in the Settlement Letter that are covered in the Agreement or which are inconsistent with the Agreement, the Agreement shall govern.

(i)     Signatories.   This Agreement is valid and binding if signed by Defendants' authorized representative, Defendants' Counsel, the Named Plaintiff, and Plaintiffs' Counsel. However, Opt-in Plaintiffs Jeronica Brown's and Christopher Montero's signatures, respectively, on Exhibit D are a prerequisite to receipt of that individual's Service Award.

Signed this _14th_ day of November, 2018.

By:  _____
J. Scott Falls
Ashley L. Falls
Falls Legal, LLC
245 Seven Farms Drive, Suite 250
Charleston, SC 29492
Telephone: (843) 737-6040

_____
Douglas M. Werman
Zachary C. Flowerree
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

**COUNSEL FOR THE _TURNER_ PLAINTIFFS**

_____
Darren Turner, Named Plaintiff

By:  _____
Jerry H. Walters, Jr.
Admitted pro hac vice
jwalters@littler.com
LITTLER MENDELSON, P.C.
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

Amy M. Palesch
D.S.C. Federal Bar No. 12480
apalesch@littler.com
LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326.4803
Telephone: 404.233.0330
Facsimile: 404.233.2361

**COUNSEL FOR DEFENDANTS**

43

DocuSign Envelope ID: A2A2589B-24C0-41A7-B551-C39EE7F0F40C

11/14/2018

Signed this ___ day of November, 2018.

By:    _____

J. Scott Falls
Ashley L. Falls
Falls Legal, LLC
245 Seven Farms Drive, Suite 250
Charleston, SC 29492
Telephone: (843) 737-6040


_____

Douglas M. Werman
Zachary C. Flowerree
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

**COUNSEL FOR THE *TURNER* PLAINTIFFS**

_____

Darren Turner, Named Plaintiff



By:    _____

Jerry H. Walters, Jr.
Admitted pro hac vice
jwalters@littler.com
LITTLER MENDELSON, P.C.
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

Amy M. Palesch
D.S.C. Federal Bar No. 12480
apalesch@littler.com
LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326.4803
Telephone: 404.233.0330
Facsimile: 404.233.2361

**COUNSEL FOR DEFENDANTS**

Signed this ___ day of November, 2018.

By:    /s/_____
       J. Scott Falls
       Ashley L. Falls
       Falls Legal, LLC
       245 Seven Farms Drive, Suite 250
       Charleston, SC 29492
       Telephone: (843) 737-6040


       /s/_____
       Douglas M. Werman
       Zachary C. Flowerree
       Werman Salas P.C.
       77 West Washington, Suite 1402
       Chicago, Illinois 60602
       Telephone: (312) 419-1008


       **COUNSEL FOR THE *TURNER* PLAINTIFFS**


       /s_____
       Darren Turner, Named Plaintiff


By:    /s/ _Amy M Palesch_
       Jerry H. Walters, Jr.
       Admitted pro hac vice
       jwalters@littler.com
       LITTLER MENDELSON, P.C.
       100 North Tryon Street, Suite 4150
       Charlotte, NC 28202
       Telephone: 704.972.7000
       Facsimile: 704.333.4005

       Amy M. Palesch
       D.S.C. Federal Bar No. 12480
       apalesch@littler.com
       LITTLER MENDELSON, P.C.
       3344 Peachtree Road N.E., Suite 1500
       Atlanta, GA 30326.4803
       Telephone: 404.233.0330
       Facsimile: 404.233.2361


       **COUNSEL FOR DEFENDANTS**

/s _____

_Vice President_
Position

**ON BEHALF OF**

BFI Waste Services, LLC, Republic Services of
South Carolina, LLC, and Republic Services, Inc.

44